**FILED**
IN CLERK'S OFFICE
U.S. DISTRICT COURT, E.D.N.Y.

★ SEP 1 1 2006 ★

BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------x

In re: ZYPREXA
PRODUCTS LIABILITY LITIGATION

MEMORANDUM
ORDER &
JUDGMENT
REGARDING
LIENS AND
DISBURSEMENT
PROCEDURES
04-MD-1596 (JBW)

------------------------------------------------------------x

THIS DOCUMENT RELATES TO:

ALL ACTIONS

------------------------------------------------------------x

APPEARANCES:

For the Plaintiffs:    SEEGER WEISS, LLP
                       One William Street
                       New York, New York 10004
                       BY:   CHRISTOPHER A. SEEGER
                             DONALD A. ECKLUND

                       MILBERG WEISS
                       One Penn Plaza
                       New York, New York 10119
                       BY:   MELVYN I. WEISS

                       DOUGLAS & LONDON
                       111 John Street
                       New York, New York 10038
                       BY:   MICHAEL A. LONDON

                       THE GARRETSON LAW FIRM
                       9545 Kenwood Road
                       Cincinnati, Ohio 45242
                       BY:   MATT L. GARRETSON

                       HERSH & HERSH
                       2080 Opera Plaza
                       601 Van Ness Avenue
                       San Francisco, Ca. 94102
                       BY:   NANCY HERSH

1

RICHARDSON, PATRICK WESTBROOK
      & BRICKMAN, LLC
1037 Chuck Dawley Blvd
Post Office Box 1007
Mt. Pleasant, South Carolina 29464
BY:   H. BLAIR HAHN
        THOMAS D. ROGERS

LAINER LAW FIRM, PLLC
126 East 56th Street, 6th Floor
New York, New York 10022
BY:   RICHARD D. MEADOW

ABRAHAM, WATKINS, NICHOLS, SORRELS,
      MATTHEWS & FRIEND
800 Commerce Street
Houston, Texas 77002
BY:   DAVID P. MATTHEWS

HENINGER GARRISON DAVIS LLC
2224 1st Avenue North
Birmingham, Alabama 35203
BY:   LEW GARRISON

BURG SIMPSON ELDREDGE HERSH JARDINE, PC
40 Inverness Drive East
Englewood, Colorado 80112
BY:   SETH A. KATZ
        MICHAEL BURG

FIBICH, HAMPTON & LEEBRON, LLP
Five Houston Center
1401 McKinney Street, Suite 1800
Houston, Texas 77010
BY:   TOMMY FIBICH

REICH & BINSTOCK
4266 San Felipe Suite 1000
Houston, Texas 77027
BY:   DEBORAH LEPOW ZIEGLER

PARKER & WAICHMAN
111 Great Neck Road
Great Neck, New York 11021
BY:    JASON MARK
       JERROLD S. PARKER
       HERBERT L. WAICHMAN

ALEXANDER HAWES, & AUDET, LLP
221 Main Street
Suite 1460
San Francisco, California 94105
BY:    WILLIAM M. AUDET

HAGENS BERMAN SOBOL SHAPIRO LLP
One Main Street
Cambridge, Massachusetts 02142
BY:    THOMAS M. SOBOL

SIMMONS COOPER LLC
707 Berkshire
East Alton, Illinois 62024
BY:    ERIC TERRY
TOR A. HOERMAN

MILLER & ASSOCIATES
105 North Alfred Street
Alexandria, Virginia 22314
BY:    MICHAEL MILLER
       CHRISTOPHER IDE

LEVIN, PAPANTONIO
316 South Baylen Street Suite 600
Pensacola, Florida 32502
BY:    KIMBERLEY LAMBERT
       TROY RAFFERTY

THE BEASLEY FIRM
The Beasley Building
1125 Walnut Street
Philadelphia, Pennsylvania 19107
BY:    NANCY G. RHOADS

WEITZ & LUXENBERG
180 Maiden Lane
New York, New York 10038
BY:   DAVID L. ROSENBAND
        PERRY WEITZ

WHATLEY DRAKE & KALLAS, LLC
2323 2nd Avenue North
Birmingham, Alabama 35203
BY:   W. TODD HARVEY

BAILEY PERRIN BAILEY LLP
440 Louisiana Street Suite 2100
Houston, Texas 77002
BY:   MICHAEL W. PERRIN

HOLLIS & WRIGHT, PC
1750 Financial Center
505 North 20th Street
Birmingham, Alabama 35203
BY:   KATHRYN S. HARRINGTON

HANLY CONROY BIERSTEIN SHERIDAN
        FISHER & HAYES, LLP
112 Madison Avenue
New York, New York 10016
BY:   JAYNE CONROY

ASHCRAFT & GEREL
2000 L Street NW Suite 400
Washington, D.C. 20036
BY:   MICHAEL HEAVISIDE

ROBINSON, CALCAGNIE & ROBINSON
620 Newport Center Drive 7th Floor
Newport Beach, California 92660
BY:   MARK ROBINSON

LOPEZ, HODES, RESTAINO, MILMAN
        & SKIKOS
450 Newport Center Drive 2nd Floor
Newport Beach, California 92660
BY:   RAMON ROSSI LOPEZ

For the Defendant:                 PEPPER HAMILTON, LLP
3000 Two Logan Square
Eighteenth & Arch Sts.
Philadelphia, Pennsylvania 19103
BY:    ANDREW R. ROGOFF
        GEORGE A. LEHNER
        NINA GUSSACK

MCCARTER & ENGLISH
245 Park Avenue
New York, New York 10167
BY:    SAMUEL J. ABATE, JR

For the Federal Government:  OFFICE OF THE UNITED STATES
        ATTORNEY
Eastern District of New York
BY:    MICHAEL GOLDBERGER

CENTERS FOR MEDICARE AND
        MEDICAID SERVICES
BY:    BARBARA WRIGHT

For the States:               STATE OF ALASKA
BY:    JEFF STONE

ARKANSAS DEPARTMENT OF HEALTH
        AND HUMAN SERVICES
P.O. Box 1437
Little Rock, Arkansas 72203
BY:    RICHARD DAHLGREN

CALIFORNIA DEPARTMENT OF HEALTH
        SERVICES
BY:    DIANA GHILARDUCCI
        DAVID R. MILLER

STATE OF CALIFORNIA DEPARTMENT
    OF JUSTICE
Office of the Attorney General
Bureau of Medi-Cal Fraud & Elder Abuse
110 West "A" Street Suite 1100
San Diego, California 92101
BY:   ELISEO SISNEROS
      BRIAN V. FRANKEL

STATE OF CONNECTICUT
BY:   ROBERT B. TEITELMAN

DISTRICT OF COLUMBIA MEDICAID
    FRAUD CONTROL UNIT
BY:   JANE DRUMMEY
      JOEL ARMSTRONG

OFFICE OF THE FLORIDA ATTORNEY
    GENERAL
Medicaid Fraud Control Unit
Plaza Level-01, The Capitol
Tallahassee, Florida 32399-1050
BY:   MARK S. THOMAS

STATE OF INDIANA ATTORNEY GENERAL
Medicaid Fraud Control Unit
Indiana Government Center South, Fifth Floor
302 West Washington Street
Indianapolis, Indiana 46204
BY:   EDWARD A. MILLER
      DANIEL MILLER

KANSAS HEALTH POLICY AUTHORITY
Landon State Office Building, Room 900-N
900 SW Jackson
Topeka, Kansas 66612-1220
BY:   ROBERT R. HILLER, JR.

OFFICE OF THE KENTUCKY ATTORNEY
    GENERAL
1024 Capital Center Drive, Suite 200
Frankfort, Kentucky 40601-8204
BY:   C. DAVID JOHNSTONE

LOUISIANA DEPARTMENT OF HEALTH
    AND HOSPITALS
Bureau of Legal Services
BY:   LAVON RAYMOND-JOHNSON
      WELDON HILL II

MARYLAND DEPARTMENT OF HEALTH
    AND MENTAL HYGIENE
300 W. Preston Street, Suite 302
Baltimore, Maryland 21201
BY:   LORIE MAYORGA

OFFICE OF THE ATTORNEY GENERAL
    OF MICHIGAN
P.O. Box 30758
Lansing, Michigan 48909
BY:   BILL MORRIS

OFFICE OF THE MISSISSIPPI ATTORNEY
    GENERAL
Counsel for the Division of Medicaid
Robert E. Lee Building, Suite 801
239 North Lamar Street
Jackson, Mississippi 39201-1399
BY:   CHUCK QUARTERMAN

NEW YORK STATE DEPARTMENT OF
    HEALTH
Bureau of Medicaid Law
Nelson A. Rockefeller Empire State Plaza
Albany, New York 12237
BY:   GREGOR N. MACMILLAN

NEW YORK STATE OFFICE OF THE
    ATTORNEY GENERAL
120 Broadway
New York, New York 10271
BY:   MARIE SPENCER

STATE OF NORTH CAROLINA
Department of Health and Human Services
Division of Medical Assistance
P.O. Box 629
Raleigh, North Carolina 27602
BY:   SUSANNAH P. HOLLOWAY

OHIO ATTORNEY GENERAL
Health Care Fraud Section
150 East Gay Street 17th Floor
Columbus, Ohio 43215
BY:    DREW DUFFY

OHIO DEPARTMENT OF JOBS AND
          FAMILY SERVICES
BY:    JULIANE BARONE
          KATHERINE BENEDICT

OREGON DEPARTMENT OF JUSTICE
BY:    MARILYN K. ODELL

PUBLIC CONSULTING GROUP
BY:    KATHERINE BENEDICT

SOUTH CAROLINA DEPARTMENT OF
          HEALTH AND HUMAN SERVICES
BY:    GEORGE BURNETT

TENNESSEE ATTORNEY GENERAL'S
          OFFICE
P.O. Box 20207
Nashville, Tennessee 37202
BY:    MICHAEL K. BASSHAM
          PETER COUGHLAN

COMMONWEALTH OF VIRGINIA OFFICE
          OF THE ATTORNEY GENERAL
Medicaid Fraud Control Unit
900 East Main Street
Richmond, Virginia 23219
BY:    ERICA JOANNA BAILEY
          TRACEY STITH
          ANGELA BENJAMIN-DANIELS

WISCONSIN DEPARTMENT OF JUSTICE
P.O. Box 7857
Madison, Wisconsin 53707-7857
BY:    RICHARD A. VICTOR

For the Special Masters:    KENNETH R. FEINBERG
The Feinberg Group
The Willard Office Building
1455 Pennsylvania Avenue, NW
Suite 390
Washington, DC 20004-1008

Jack B. Weinstein, Senior United States District Judge:

**TABLE OF CONTENTS**:

I.      INTRODUCTION ..................................................................................12

II.     FACTS AND PROCEDURAL BACKGROUND ..........................................13

     A.     Procedural Background ...............................................................13

     B.     Allegedly Related Medical Costs Paid by Medicare and Medicaid ....................14

     C.     Medicare and Medicaid Liens ..........................................................15

III.    MEDICARE AND MEDICAID LIENS ON TORT SETTLEMENTS ...........................18

     A.     Medicare Liens ...................................................................18

     B.     Medicaid Liens ...................................................................23

     C.     *Arkansas Department of Health and Human Services v. Ahlborn* ....................27

IV.    GLOBAL RESOLUTION OF THE MEDICARE LIENS ................................29

V.     GLOBAL AND "TRADITIONAL" RESOLUTION OF THE MEDICAID LIENS .......33

     A.     Global Resolution ................................................................33

     B.     Traditional Resolution ...........................................................33

     C.     Resolution of the Remaining States' Liens ..........................................35

VI.    START OF PAYMENTS .................................................................36

VII.   DISBURSEMENT PROCEDURES .........................................................37

VIII.  CONTESTED ISSUES RELEVANT TO THE MEDICAID LIENS ..............................40

     A.     Payment of Attorneys' Fees ........................................................40

           1.     States Agreeing to Pay a Share .................................................40

           2.     States Not Agreeing to Pay a Share .............................................41

           3.     All States Must Pay a Share ...................................................42

B.    Medicaid Liens ...............................................................................................48

C.    Delay of Entry .............................................................................................50

APPENDIX: STATUS OF LIEN RESOLUTION.......................................................................51

## I.    INTRODUCTION

Settlement of mass tort litigations for personal injuries have become extraordinarily complex and difficult as a result of the attempts by the United States to collect on Medicare liens and of the states to enforce their Medicaid liens. The settlement techniques utilized in the instant litigation may provide a model for the handling of Medicare and Medicaid liens in future mass actions on a uniform, national basis. Although complete uniformity was not achieved, the parties, the federal government, and many of the states demonstrated that they can work together for the benefit of taxpayers, injured plaintiffs, and industry. The experience in this case suggests the desirability of a more uniform statutory approach to lien resolution in the Medicaid program, either by uniform individual state legislation devised by the Commission on Uniform State Laws or others, or by national legislation.

In this mass tort multidistrict litigation, a unique series of agreements have been reached among the Plaintiffs' Steering Committee ("PSC") and representatives of the federal government and twenty-three states to resolve outstanding Medicare and Medicaid liens on the recoveries of plaintiffs who have entered into a settlement of their claims. Payments to settling plaintiffs who received neither Medicare nor Medicaid, who received only Medicare, and who received Medicaid from these twenty-three states have begun. Payments will continue expeditiously until all are paid.

The Medicaid liens of twenty-seven states, the District of Columbia, and Puerto Rico remain partially or completely unresolved, because of disputes over (1) the amount of the liens; (2) the division of attorneys' fees and costs between the settling plaintiffs and the states seeking to recover Medicaid disbursements from those plaintiffs; and (3) whether the cost of the drug Zyprexa should be included in the states' liens. Payments to settling plaintiffs who received

Medicaid from these jurisdictions have not yet begun.

This memorandum and order describes the terms of the agreements entered into by the PSC, the federal government, and the states. It rules on two disputed issues, holding: (1) all states, regardless of specific state policies on the matter, shall pay a portion of the settling plaintiffs' attorneys' fees and costs; and (2) the cost of Zyprexa shall not be included in the states' Medicaid liens. The method of disbursement of funds is specified.

## II.   FACTS AND PROCEDURAL BACKGROUND

### A.   Procedural Background

In April 2004, pre-trial proceedings were consolidated in actions against defendant Eli Lilly & Company ("Lilly") for injuries alleged to have been caused by the prescription drug Zyprexa. *See* letter of April 14, 2004 from the Multidistrict Litigation Panel to the Clerk of the Eastern District of New York. After discovery and negotiations overseen by a court-appointed special discovery master and four special settlement masters, in November 2005 the defendant, without conceding liability, entered into a settlement covering some 8,000 individual plaintiffs. *See In re Zyprexa Prods. Liab. Litig.*, No. 04-MD-1596, 2005 WL 3117302 (E.D.N.Y. Nov. 22, 2005). As a result of the settlement agreement, a significant sum was placed in an escrow account to be paid to settling plaintiffs.

The complex claims processing procedure set forth in the master settlement agreement and in a series of court orders has now been completed. All individual awards have been fixed by the special settlement masters. *See* letter of August 18, 2006 from special master Kenneth R. Feinberg setting forth awards for each settling plaintiff.

13

An attorneys' fees structure has been ordered, capping fees at 20% of recovery in certain smaller, lump-sum claims and at 35% of recovery in all other claims. *See In re Zyprexa Prods. Liab. Litig.*, 424 F. Supp. 2d 488 (E.D.N.Y. 2006). Costs related to the individual cases and charged to the individual settling plaintiffs are limited to 1% of each plaintiff's recovery. *See In re Zyprexa Prods. Liab. Litig.*, No. 04-MD-1596, 2006 WL 2443248 (E.D.N.Y. Aug. 24, 2006). Costs and fees for work done on behalf of all plaintiffs by the PSC are to be paid out of a "common benefit" fund. The magistrate judge will audit all of the PSC's claims on this fund. *See* Order for Set Aside for the Common Benefit Fund for Members of the Former Plaintiffs' Steering Committee dated August 24, 2006; *In re Zyprexa Prods. Liab. Litig*, No. 04-MD-1596, 2006 WL 2458878 (E.D.N.Y. Aug. 22, 2006) (referring oversight of the PSC's claims to the magistrate judge).

### B.     Allegedly Related Medical Costs Paid by Medicare and Medicaid

Zyprexa is an atypical antipsychotic medication whose on-label uses include treatment of schizophrenia, bipolar mania, and bipolar disorder. Almost all of the plaintiffs in the present action are mentally ill, some severely so. Some are completely unable to work, and a large number have very limited resources. Many of the plaintiffs suffer from numerous physical ailments in addition to the serious medical problems—including diabetes and pancreatitis—that were allegedly caused by Zyprexa.

Approximately 61% of the over 8,000 settling plaintiffs received state Medicaid benefits. Approximately 55% received Medicare benefits. Approximately 32% of all settling plaintiffs are "dual beneficiaries," having received both Medicare and Medicaid. *See* Status Report of the Garretson Law Firm dated July 19, 2006 at 4.

14

## C.    Medicare and Medicaid Liens

Because the federal Medicare and joint federal-state Medicaid programs paid health care costs allegedly associated with injuries the plaintiffs claim were caused by their ingestion of Zyprexa, the administrators of these programs now assert their right to reimbursement of their disbursements out of the settling plaintiffs' recoveries. *See* 42 U.S.C. § 1395y(b)(2)(B)(ii)-(iv); 42 U.S.C. § 1396a(a)(25). *See also In re Zyprexa Prods. Liab. Litig.*, No. 04-MD-1596, 2006 WL 1662610 (E.D.N.Y. June 15, 2006) (setting initial conference regarding a possible holdback to satisfy Medicare and Medicaid liens).

In order to determine the amount of their liens on a beneficiary's settlement with a third party, Medicare and Medicaid authorities typically conduct an extensive examination of the beneficiary's claims history to determine the amount expended by the program on health care specifically related to the injury at the heart of the settlement. By reason of the many thousands of individuals involved in the present case and their complicated medical histories—many of the plaintiffs have significant pre-existing conditions not attributable to Zyprexa—the traditional "one-at-a-time" method of review of Medicare and Medicaid claims and lien demands would be time-consuming and costly, wasting needed resources and the time of governmental agencies, the court, and the litigants. It would inordinately delay recovery for the settling plaintiffs, many of whom are in desperate need of prompt assistance.

In an effort to facilitate cost-effective and timely reimbursements to Medicare and Medicaid while protecting the settling plaintiffs' right to compensation for their injuries, the PSC engaged an independent law firm—the Garretson Law Firm ("Garretson")—with experience in damage evaluation to design and implement models that could be used for a global resolution of the federal and state claims. The resulting models were designed to determine the likely course

probability of a [settling] plaintiff . . . progressing from node-to-node on a medical decision tree from the date of . . . ingestion to the date of settlement." Status Report of the Garretson Law Firm dated July 19, 2006 at 3. By plugging in the federal Medicare and state Medicaid procedure codes and reimbursement rates, the models can be used to generate a reasonable lien recovery for each agency

The federal government quickly and sensibly agreed to a global resolution of its Medicare claims. *See* Tr. of July 24, 2006 Conf. 24-33; Stipulation and Order dated Aug. 21, 2006 (describing and approving Medicare lien agreement between the federal government and the PSC). In support of the proposed Medicaid process, the federal Centers for Medicare and Medicaid Services ("CMS") issued a letter to the state Medicaid agencies "strongly" encouraging them to participate in global settlements of their liens in mass tort litigations. *See* Ctrs. for Medicare and Medicaid Servs., Pursuing Medicaid Reimbursement in Global Settlements 1 (2006). According to CMS' letter, given the burdens involved in establishing the amount of Medicaid's recovery, it might prove reasonable for the states to "agree to be bound by a settlement which compensates [them] for a reasonable estimate of the medical expenses incurred . . . on behalf of Medicaid recipients involved in the settlement." *Id.* at 3. CMS assured the states that were they to decide to participate in a global resolution of their liens in a mass tort litigation, they would not be found to be in violation of federal regulations preventing the states from compromising the federal share of their Medicaid liens. *Id. See* part III.B, *infra*.

At conferences on June 29 and July 24, 2006, the court heard from the special masters,

16

those issues. Tr. of Aug. 21, 2006 Conf. at 93.

On August 24, 2006, two orders were issued providing for the start of payments to specific categories of settling plaintiffs whose Medicare or Medicaid liens had been completely resolved and whose recoveries were unaffected by the two issues still pending. *See In re Zyprexa Prods. Liab. Litig.*, No. 04-MD-1596, 2006 WL 2443217 (E.D.N.Y. Aug. 24, 2006) (ordering payments to begin); *In re Zyprexa Prods. Liab. Litig.*, No. 04-MD-1596, 2006 WL 2443249 (E.D.N.Y. Aug. 24, 2006) (establishing disbursement procedures). The terms of these orders—including the procedures ordered for disbursement of the settlement funds—are described below. *See* parts VI-VII, *infra*. As a result of the August 24 orders, payments have begun to thousands of settling plaintiffs.

A separate sealing order protected the settling plaintiffs' privacy. *See In re Zyprexa Prods. Liab. Litig.*, No. 04-CV-1596, 2006 WL 2551842 (E.D.N.Y. Sept. 5, 2006).

To understand the nature of the problems involved in attempts to resolve Medicare and Medicaid liens in a mass tort settlement such as the instant one, it is necessary to understand the status of these liens under federal and state law, a subject discussed below.

## III. MEDICARE AND MEDICAID LIENS ON TORT SETTLEMENTS

### A. Medicare Liens

The Medicare program was established in 1965 as Title XVIII of the Social Security Act. *See* 42 U.S.C. § 1395 *et seq.* Medicare is a social insurance program funded entirely by the United States government. It provides coverage for certain types of medical services to individuals who are more than 65 years of age, those who have received Social Security disability benefits for at least 24 months, and those with end stage renal disease. *See* 42 U.S.C. §

1395c; 42 U.S.C. § 1395o.

From 1965 to 1980 Medicare was the primary payer of health care costs for most eligible individuals. *See, e.g., Health Ins. Ass'n of Am. v. Shalala*, 23 F.3d 412, 414 (D.C. Cir. 1994). *Cf.* S.S.R. 69-8 (1969) (because Medicare is in the nature of social insurance, there is nothing inconsistent with simultaneous reimbursement under Medicare and from other sources). The Medicare Secondary Payer Act of 1980 ("MSP") sought to lower Medicare's expenses by making Medicare the "secondary payer" after any other entity obligated to pay for an individual's primary health care (the "primary payer"), including group health plans, workers' compensation, or an automobile or other liability policy or plan. 42 U.S.C. § 1395y(b)(2). If payment for covered services has been or is reasonably expected to be made by someone else, Medicare does not have to pay. *Id.* If Medicare does pay for a service that was or should have been covered by a primary payer, Medicare is empowered to recoup its outlay. 42 U.S.C. § 1395y(b)(2)(B)(ii)-(iv).

For many years courts were divided about the propriety of the federal government's attempts to recover Medicare expenditures under the MSP in cases involving settled tort claims. *Compare Thompson v. Goetzmann*, 337 F.3d 489 (5th Cir. 2003) (government could not recover from an individual beneficiary's settlement of a products liability claim with a manufacturer); *In re Orthopedic Bone Screw Prods. Liab. Litig.*, 202 F.R.D. 154, 163-69 (E.D. Pa. 2001) (government could not recover under the MSP from the settlement of a class action tort claim against an orthopedic bone screw manufacturer), *rev'd on other grounds sub nom. Fanning v. United States*, 346 F.3d 386 (3d Cir. 2003); *In re Diet Drugs Prods. Liab. Litig.*, Nos. MDL 1203, CIV. A. 99-20593, 2001 WL 283163 (E.D. Pa. Mar. 21, 2001) (government could not recover under the MSP from a mass tort settlement fund, because the government's "MSP cause

of action arises when the 'primary plan' is obligated to pay for the primary care at issue under a contract of insurance, not when the payment obligation arises out of tort litigation") *with United States v. Baxter Int'l, Inc.*, 345 F.3d 866, 885-93 (11th Cir. 2003) (reversing the district court's dismissal of the government's claim for recovery out of a class settlement fund of medical bills it paid on behalf of Medicare beneficiaries who received treatment related to silicone breast implants); *Estate of Urso v. Thompson*, 309 F. Supp. 2d 253, 256-59 (D. Conn. 2004) (the MSP gives the government the right to recover its share of an individual Medicare beneficiary's tort settlement); *Brown v. Thompson*, 252 F. Supp. 2d 312 (D. Va. 2003) (the MSP confers on the government the right to reimbursement from beneficiary's medical malpractice settlement for Medicare payments received for services related to the malpractice), *aff'd*, 374 F.3d 253, 256 (4th Cir. 2004).

In December 2003, amendments to the MSP were adopted that were designed to resolve this dispute. *See* Medicare Prescription Drug, Improvement, and Modernization Act of 2003, Pub. L. No. 108-173, § 301, 117 Stat. 2066, 2221 (2003) (hereinafter "MMA"); *see also* H.R. Rep. No. 108-178(II) at 189 (explaining that the "Secretary's authority to recover payment from any and all responsible entities" under the MSP "would be clarified" as a result of the amendments in the MMA); H.R. Rep. No. 108-178(II) at 189-90 (stating that one reason for the amendments was to remedy the effects of "recent court decisions" that would allow "firms that self-insure for product liability" to be "able to avoid paying Medicare for past medical payments related to the claim"). The amendments to the MSP enacted in the MMA removed the two elements of the MSP that had resulted in courts' conflicting interpretations of the law. *Brown v. Thompson*, 374 F.3d 253, 258 (4th Cir. 2004); *Glover v. Philip Morris*, 380 F. Supp. 2d 1279, 1284-85, 1295-98 (M.D. Fla. 2005). As amended, the MSP "plainly entitles Medicare to

20

reimbursement of any payment it makes for medical services if a primary plan later pays for those medical services as part of a settlement agreement." *Brown*, 374 F.3d at 258.

Although Medicare's recovery from the proceeds of a tort settlement is protected by statute, in several instances a reduction or waiver of this recovery may be obtained. Federal regulations require Medicare to reduce the amount of its recovery "to take account of the cost of procuring the judgment or settlement . . . if: (i) [p]rocurement costs are incurred because the claim is disputed; and (ii) [t]hose costs are borne by the party against which [Medicare] seeks to recover." 42 C.F.R. § 411.37(a). If the Medicare lien is less than the amount of the settlement, the reduction for attorneys' fees and expenses is equal to the ratio of the attorneys' fees and expenses to the total recovery. 42 C.F.R. § 411.37(c). If Medicare's lien equals or exceeds the amount of the settlement, the regulations provide that Medicare will recover the full amount of the lien less the attorneys' fees and expenses. 42 C.F.R. § 411.37(d).

Medicare may also reduce or waive its recovery if either "the probability of recovery, or the amount involved, does not warrant pursuit of the claim." 42 C.F.R. § 411.28. Medicare may decide to compromise a claim because: the Medicare beneficiary is unable "to pay the full amount within a reasonable time"; the federal government is unable "to collect . . . in full within a reasonable time"; "the cost of collecting . . . does not justify the enforced collection of the full amount"; or "there is significant doubt concerning the [g]overnment's ability to prove its case in court." 31 C.F.R. § 902.2(a). *See also* 42 C.F.R. § 405.376; 20 C.F.R.§ 404.515. The amount accepted in compromise "may reflect an appropriate discount for the administrative and litigative costs of collection, with consideration given to the time it will take" to collect. 31 C.F.R. § 902.2(e).

Medicare may waive its recovery completely when the beneficiary was not at fault and

the parties, the states, and the federal government regarding the resolution of the Medicare and Medicaid liens. A number of states objected to the use of the global damages model to resolve their Medicaid claims. *See* Tr. of June 29, 2006 Conf.; Tr. of July 24, 2006 Conf. After reminding all those involved of the importance of a speedy resolution that would permit payments to begin promptly, the court ordered the states and the PSC to continue negotiating. *See* Tr. of July 24, 2006 Conf; *In re Zyprexa Prods. Liab. Litig.*, No. 04-MD-1596, 2006 WL 2095728 (E.D.N.Y. July 28, 2006).

The PSC reached partial or complete agreement with twenty-nine of the states on August 15, 2006. This agreement was approved on the same day. *In re Zyprexa Prods. Liab. Litig.*, No. 04-MD-1596, 2006 WL 2385230 (E.D.N.Y. Aug. 15, 2006) (describing and approving Medicaid lien agreements between certain states and the PSC). The PSC later reached agreement with sixteen more states.

To finalize the details of the Medicaid agreements and the earlier Medicare agreement and to discuss the status of negotiations with those states that had not yet agreed to resolve their liens, a conference was held on August 21, 2006. The only material issues remaining unresolved as of the August 21 conference were: (1) how attorneys' fees and costs should be divided between the settling plaintiffs and some of the states seeking to recover their Medicaid disbursements from those plaintiffs; and (2) whether the cost of Zyprexa itself should be included in the amount of the states' Medicaid liens. *See* Tr. of Aug. 21, 2006 Conf; *In re Zyprexa Prods. Liab. Litig.*, No. 04-MD-1596, 2006 WL 2385232 (E.D.N.Y. Aug. 16, 2006) (describing concerns about fee division); Status Update From the States of Ohio, Mississippi, Virginia, and the District of Columbia dated August 21, 2006 at 6-7 (describing some states' position that the cost of Zyprexa should be included in their liens). Briefing was ordered on

17

recovery would defeat the purposes of the Medicare Act or be against "equity and good conscience." 42 U.S.C. § 1395gg(c); 42 C.F.R. § 405.358. *See also, e.g., Fanning v. United States*, 346 F.3d 386, 401 (3d Cir. 2003). The regulations explain that the purposes of the Medicare Act would be defeated if recovery would deprive a person of income required for ordinary and necessary expenses. 20 C.F.R. § 404.508. An individual's "ordinary and necessary expenses" include: "[f]ixed living expenses, such as food and clothing, rent, mortgage payments, utilities, maintenance, insurance . . ., taxes, installment payments, etc."; "[m]edical, hospitalization, and other similar expenses"; "[e]xpenses for the support of others for whom the individual is legally responsible"; and "[o]ther miscellaneous expenses which may reasonably be considered as part of the individual's standard of living." 20 C.F.R. § 404.508(a)(1)-(4).

The flexibility and compassion reflected in the Medicare lien regulations explains why the parties, with court approval, were able to quickly resolve the Medicare lien problems in this mass tort in a sensible way that took adequate account of the needs of the settling plaintiffs, the federal government, and the attorneys responsible for the recoveries against which the liens apply.

Medicare is paid for out of funds contributed to by those covered by the program. By contrast, Medicaid is paid for out of state and federal taxpayer-funded accounts. The Medicaid program generally covers less affluent members of society than does Medicare. Some of the states take a harsher view towards Medicaid liens than the federal government takes towards Medicare liens. To understand the reason, at least in part, it is necessary to turn to the subject of Medicaid.

## B.  Medicaid Liens

The Medicaid program was established in 1965 as Title XIX of the Social Security Act. *See* 42 U.S.C. § 1396 *et seq.* Medicaid is a needs-based entitlement program providing joint federal and state funding of medical care for specified classes of individuals found to be unable to pay their own medical costs. 42 U.S.C. § 1396d. All of the states voluntarily participate in the Medicaid program.

Between 50% and 83% percent of each state's patient-care-related Medicaid costs are paid for by the federal government—the exact percentage for a particular state (the "federal medical assistance percentage") is calculated pursuant to a formula tied to the state's per capita income. *See* 42 U.S.C. § 1396d(b); 42 C.F.R. § 433.10. The state pays its portion of the costs and complies with federal requirements for determining eligibility and administering the program. *See* 42 U.S.C. § 1396a. *See also Arkansas Dep't of Health and Human Servs. v. Ahlborn*, 126 S. Ct. 1752, 1758-59 (2006) (describing the structure and administration of the Medicaid program).

As a condition of participating in the Medicaid program, states are required to "take all reasonable measures to ascertain the legal liability of third parties . . . to pay for care and services available under the [state's Medicaid] plan." 42 U.S.C. § 1396a(a)(25)(A). If third party liability is found after the state has provided medical services to a beneficiary and "the amount of reimbursement the [s]tate can reasonably expect to recover exceeds the costs of such recovery," the state is required to "seek reimbursement . . . to the extent of such legal liability." 42 U.S.C. § 1396a(a)(25)(B). To this end, states must require Medicaid recipients to assign to the state their rights to seek and collect payment for medical care from a responsible third party. 42 U.S.C. § 1396k(a)(1)(A) (a state plan for medical assistance shall "provide that, as a

23

condition of eligibility for medical assistance under the [s]tate plan to an individual who has the legal capacity to execute an assignment for himself, the individual is required to assign the [s]tate any rights, of the individual . . . to payment for medical care from any third party"); 42 U.S.C. § 1396a(a)(25)(H) ("to the extent that payment has been made under the [s]tate plan for medical assistance in any case where a third party has a legal liability to make payment for such assistance, the [s]tate has in effect laws under which, to the extent that payment has been made under the [s]tate plan for medical assistance for health care items or services furnished to an individual, the [s]tate is considered to have acquired the rights of such individual to payment by any other party for such health care items or services"). *See also* 42 C.F.R. § 433.137-433.154.

If a state Medicaid agency receives reimbursement from a liable third party for care or services, it does not receive federal financial participation ("FFP") for the relevant Medicaid expenditures. 42 C.F.R. § 433.140(a)(2). Likewise, if the state could have received reimbursement from a third party but failed to comply with federal regulations requiring it to attempt to establish liability and pursue reimbursement from that third party, *see* 42 C.F.R. § 433.138-433.139, the state does not receive FFP in its Medicaid expenditures. 42 C.F.R. § 433.140(a)(1). If a state that has already received FFP in its Medicaid expenditures later receives third party reimbursement for those expenditures, the state must pay the federal government "a portion of the reimbursement determined in accordance with the [federal medical assistance percentage] for the [s]tate." 42 C.F.R. § 433.140(c). *See also* 42 U.S.C. § 1396k(b) (any reimbursement "shall be retained by the [s]tate as is necessary to reimburse it for medical assistance payments made on behalf of an individual with respect to whom such assignment was executed" . . . with "appropriate reimbursement of the [f]ederal [g]overnment to the extent of its participation in the financing of such medical assistance"); 42 C.F.R. § 433.154 (when the state

receives reimbursement from a third party, it keeps an amount equal to its own "Medicaid expenditures for the individual on whose right the collection was based," distributes to the federal government "the [f]ederal share of the [s]tate Medicaid expenditures," and gives the remainder to the beneficiary).

If, despite having pursued third-party reimbursement in compliance with federal requirements, a state receives less than full reimbursement for its Medicaid expenditures, the federal share of the recovery is reduced pro rata. The same protection accrues to the state if it voluntarily reduces or waives its recovery because it determines that it is not cost-effective to attempt to recover the full amount of its Mediciad expenditures. *See* 42 U.S.C. § 1396a(a)(25)(B); 42 C.F.R. § 433.139(f); Ctrs. for Medicare and Medicaid Servs., State Options for Recovery Against Liability Settlements in Light of the U.S. Supreme Court Decision in *Arkansas Department of Human Services v. Ahlborn* 4 (2006). Practical aspects of transactional costs in attempted recoveries are thus recognized explicitly by the system. A judgment call and some discretion on the part of the state in assessing costs and benefits is required.

States may voluntarily reduce or waive their recovery for reasons other than cost-effectiveness, but if they do, they will not receive FFP in the relevant Medicaid expenditures. If a state that has already received FFP voluntarily reduces or waives its claim to recovery for a reason other than cost-effectiveness, the federal share of that recovery is not reduced pro rata and the state must reimburse the federal government. *See, e.g., In re Washington State Dep't of Soc. & Health Servs.*, No. A-95-159, 1996 WL 157123 (H.H.S. Dep't. App. Bd. Feb. 7, 1996); *In re California Dep't of Health Servs.*, No. A-94-114, 1995 WL 66334 (H.H.S. Dep't App. Bd. Jan. 5, 1995). Except within the confines of the "cost-effectiveness" exception described above, states are not permitted to compromise the federal government's share of any reimbursement.

25

*See Ahlborn*, 126 S. Ct. at 1765 (describing the Departmental Appeals Board's determination in the *California* and *Washington* cases that "a state is free to allow recipients to retain the state's share of any recovery, so long as it does not compromise the [f]ederal [g]overnment's share"); Ctrs. for Medicare and Medicaid Servs., Pursuing Medicaid Reimbursement in Global Settlements 3 (2006) (describing CMS' "no compromise" rule).

Some states have enacted laws allowing waiver of Medicaid liens where recovery would work an undue hardship on the beneficiary or defeat the purposes of the program. *See, e.g.*, Cal. Welf. & Inst. Code § 14124.71(b) (allowing waiver if recovery "would result in undue hardship"); Tex. Hum. Res. Code Ann. § 32.033(f) (allowing waiver if recovery "would tend to defeat the purpose of public assistance"). *Cf.* N.C. Gen. Stat. § 108A-57 (limiting the amount of medical assistance liens to 33.3% of the beneficiary's gross recovery). In addition, a number of state courts have relied on state subrogation law to limit the amount of the state Medicaid agency's recovery in particular cases. *See, e.g., Smith v. Alabama Medicaid Agency*, 461 So. 2d 817 (Ala. Civ. App. 1984) (allowing full recovery because the percentage was fair in the particular case, but cautioning that Medicaid's recovery was subject to equitable reduction); *State v. Cowdell*, 421 N.E.2d 667 (Ind. Ct. App. 1981) (state Medicaid agency's recovery may be reduced under equitable principles of subrogation); *White v. Sutherland*, 92 N.M. 187 (N.M. Ct. App. 1978) (state Medicaid agency's recovery may be reduced under equitable principles of subrogation). *Cf. Davis v. City of Chicago*, 59 Ill. 2d 439 (Ill. 1974) (upholding a provision of Illinois law that explicitly granted the court power to apportion a settlement between Medicaid and the beneficiary). *But see, e.g., Copeland v. Toyota Motor Sales*, 136 F.3d 1249 (10th Cir. 1998) (because the Kansas Medicaid reimbursement statute contains other express limitations on the agency's subrogation rights, the court would not impose additional, implied limitations on

26

recovery based on general equitable principles); *Coplien v. Dep't of Health & Social Servs.*, 119 Wis. 2d 52 (Wis. Ct. App. 1984) (full recovery allowed on grounds that relevant Wisconsin law specifically provided that normal principles of subrogation were not to be applied to reimbursement of medical assistance payments).

### C.     *Arkansas Department of Health and Human Services v. Ahlborn*

When a beneficiary's settlement with a third party is for less than her total damages, a majority of the states and the federal government maintain that federal laws governing reimbursement in both Medicare and Medicaid entitle them to full recovery of the amount of their liens, regardless of the classification of the settlement proceeds. *See, e.g.*, *Sullivan v. County of Suffolk*, 174 F.3d 282, 286 & n.5 (2d Cir. 1999); *Zinman v. Shalala*, 67 F.3d 841 (9th Cir. 1995); *Houghton v. Dep't of Health*, 57 P.3d 1067 (Utah 2002); *Richards v. Georgia Dep't of Comty. Health*, 604 S.E.2d 815 (Ga. 2004); *Wilson v. State*, 10 P.3d 1061 (Wash. 2000); *Calvanese v. Calvanese*, 710 N.E.2d 1079 (N.Y. 1999); *Share Health Plan of Illinois v. Alderson*, 674 N.E.2d 69 (Ill. App. Ct. 1996). Under this approach, when the amount of the Medicare or Medicaid lien exceeds the portion of the settlement that represents medical costs, satisfaction of the lien "requires payment out of proceeds meant to compensate the [beneficiary] for damages distinct from medical costs, such as pain and suffering, lost wages, and loss of future earnings." *Ahlborn*, 126 S. Ct. at 1756.

Federal Medicare and state Medicaid administrators justify a "full reimbursement" approach on the ground that "the required apportionment of [settlement proceeds] short of a decision on the merits would [otherwise] allow beneficiaries and personal injury attorneys to reduce or eliminate . . . reimbursements by weighing claims in favor of items of damage other

than medical expenses." *Denekas v. Shalala*, 943 F. Supp. 1073, 1080 (S.D. Iowa 1996). Yet full reimbursement deprives poor and injured individuals of needed compensation for their pain and suffering, lost wages, and other non-medical damages.

Moreover, although the policy provides Medicare and Medicaid with the maximum possible recovery in individual cases, it could adversely affect the programs' overall ability to obtain repayment of their costs from third party tortfeasors. Because it may deprive them of any compensation for their injuries, the full reimbursement approach gives many beneficiaries little incentive to pursue valid claims or, if they do, to accept otherwise reasonable settlement offers, thereby tending to push them into uncertain litigation that burdens the courts and may result in little or no recovery for either the beneficiaries or for Medicare or Medicaid. The comparison with workers' compensation claims in New York, which are settled on a reasonable basis, eliminating unnecessary litigation in this district's federal court, suggests why such an "all-or-nothing" approach may be self-defeating.

In May 2006, the Supreme Court, in a unanimous decision, rejected the full reimbursement approach in the Medicaid program, holding that the federal Medicaid statute only permits a state to recover its Medicaid expenditures from the portion of a settlement attributable to medical costs. *Alhborn*, 126 S. Ct. at 1767. The Court first held that the assignment provisions of federal Medicaid law—requiring states to enact laws providing for assignment of Medicaid beneficiaries' rights to seek and collect payment for medical care from a responsible third party—only provide for a limited assignment from the recipient to the state for payment for medical items and services from a liable third party. *Id.* at 1760-62. It then concluded that any state statute providing for a greater assignment or lien would be inconsistent with the Medicaid "anti-lien" statute, 42 U.S.C. § 1396p, which prohibits states from placing liens against or

28

seeking recovery of benefits from a Medicaid beneficiary before her death. *Id.* at 1762-64. According to the Court, while the assignment provisions create an exception to the anti-lien statute for recovery of payments that constitute reimbursement for medical costs paid by Medicaid, any recovery by the state of settlement funds intended to reimburse the Medicaid beneficiary for pain and suffering, lost wages, or other non-medical damages would constitute an impermissible lien on the beneficiary's property. *Id.* at 1763-64.

## IV.  GLOBAL RESOLUTION OF THE MEDICARE LIENS

The federal government and the PSC have agreed that the federal government's Medicare liens are to be resolved through the use of a global damages model designed and implemented by Garretson. *See* Stipulation and Order dated Aug. 21, 2006 (describing and approving Medicare lien agreement between the federal government and the PSC). Having applied the global damages model to each of the "signature injuries" alleged to have been caused by Zyprexa, the parties have agreed upon uniform reimbursement amounts for Medicare's outlays for diagnosis and treatment of most of these injuries. Where agreement has not yet been reached as to a particular type of injury—or where highly individualized Extraordinary Injury Fund ("EIF") awards are involved—a specified percentage of each award will be temporarily held back while a final agreement is negotiated. *Id.* The reimbursement and holdback amounts and other key terms of the federal government's agreement with the PSC are described below. Reimbursement is to be facilitated by Garretson, and will comply with court-ordered procedures. *See In re Zyprexa Prods. Liab. Litig.*, No. 04-MD-1596, 2006 WL 2443249 (E.D.N.Y. Aug. 24, 2006) (disbursement procedures).

The following amounts will be withheld to resolve the federal government's Medicare

liens:

- Settling "Track A" plaintiffs who have not filed a claim with the EIF and are Medicare beneficiaries will have $191.14 of their awards withheld for reimbursement of the federal government's Medicare outlays.

- Settling "Track B" plaintiffs categorized as having developed diabetes mellitus who did not require any medication and who have not filed a claim with the EIF and are Medicare beneficiaries will have $827.85 of their awards withheld.

- Settling "Track B" plaintiffs categorized as having developed non-insulin dependent diabetes mellitus who have not filed a claim with the EIF and are Medicare beneficiaries will have $1,987.43 of their awards withheld.

- Settling "Track B" plaintiffs categorized as having developed insulin dependent diabetes mellitus who have not filed a claim with the EIF and are Medicare beneficiaries will have $4,310.85 of their awards withheld.

- Settling plaintiffs in any of the above injury categories who are Medicare beneficiaries and who have filed a claim with the EIF will have an additional 15% of their awards withheld. Any portion of this 15% that is not needed to satisfy Medicare's lien on a particular EIF award will be disbursed to the settling plaintiff at a later date in accordance with court-

ordered disbursement procedures.

- Settling "Track B" plaintiffs who were Medicare beneficiaries who died within a specified time frame ("death matrix") and on whose behalf no claim has been filed with the EIF will have 10% of their awards withheld until a final agreement can be reached between the federal government and the PSC regarding Medicare's claims on these plaintiffs' recoveries. Settling "Track B" death matrix plaintiffs who were Medicare beneficiaries and have filed a claim with the EIF will have an additional 10% of their awards withheld. Any portion of either the 10% or 20% holdback that is not needed to satisfy Medicare's lien on a particular EIF and/or death matrix award will be disbursed to the settling plaintiff at a later date in accordance with court-ordered disbursement procedures.

- Settling "Track B" plaintiffs whose pre-existing diabetes was allegedly aggravated ("aggravation") who have not filed a claim with the EIF and are Medicare beneficiaries will have 15% of their awards withheld until a final agreement can be reached between the federal government and the PSC regarding Medicare's claims on these plaintiffs' recoveries. Settling "Track B" aggravation plaintiffs who are Medicare beneficiaries and have filed a claim with the EIF will have an additional 10% of their awards withheld. Any portion of either the 15% or 25% holdback that is not needed to satisfy Medicare's lien on a particular EIF and/or aggravation

31

award will be disbursed to the settling plaintiff at a later date in accordance with court-ordered disbursement procedures.

- Settling plaintiffs who are categorized as having developed pancreatitis and are Medicare beneficiaries will have the full amount of their awards withheld until a final agreement can be reached between the federal government and the PSC regarding Medicare's claims on these plaintiffs' recoveries. Any portion of a withheld pancreatitis award that is not needed to satisfy Medicare's lien will be disbursed to the settling plaintiff at a later date in accordance with court-ordered disbursement procedures.

*See* Stipulation and Order dated Aug. 21, 2006 (describing and approving Medicare lien agreement between the federal government and the PSC); *In re Zyprexa Prods. Liab. Litig.*, No. 04-MD-1596, 2006 WL 2443249 (E.D.N.Y. Aug. 24, 2006) (disbursement procedures).

All of the amounts agreed upon have been offset to take account of the federal government's obligation to pay its proportionate share of the settling plaintiffs' attorneys' fees and other costs in procuring the settlement. This reflects an appropriate and equitable sharing of the expenses and burdens of litigating these claims. *See* 42 C.F.R. § 411.37 (requiring fee-sharing in Medicare lien recoveries); *In re Zyprexa Prods. Liab. Litig.*, No. 04-MD-1596, 2006 WL 2443217, at *1 (E.D.N.Y. Aug. 24, 2006) (describing Medicare lien agreement between the federal government and the PSC); Tr. of Aug. 21, 2006 Conf. at 28.

# V.  GLOBAL AND "TRADITIONAL" RESOLUTION OF THE MEDICAID LIENS

## A.  Global Resolution

Eleven states—Alabama, Arizona, Colorado, Maine, Maryland, Massachusetts, Minnesota, Missouri, Nebraska, Pennsylvania, and Utah—have agreed to resolve their Medicaid liens through the application of a global model patterned after the model used to resolve the federal government's Medicare liens.  *See In re Zyprexa Prods. Liab. Litig.*, No. 04-MD-1596, 2006 WL 2385230 (E.D.N.Y. Aug. 15, 2006) (describing and approving Medicare lien agreements between certain states and the PSC); *In re Zyprexa Prods. Liab. Litig.*, No. 04-MD-1596, 2006 WL 2443217 (E.D.N.Y. Aug. 24, 2006) (describing Medicare lien agreements between certain states and the PSC).

## B.  Traditional Resolution

Thirty-two states—Alaska, Arkansas, California, Delaware, Florida, Georgia, Hawaii, Idaho, Illinois, Indiana, Iowa, Kansas, Kentucky, Louisiana, Michigan, Montana, Nevada, New Hampshire, New Jersey, New Mexico, New York, North Dakota, Oklahoma, Oregon, South Carolina, South Dakota, Tennessee, Texas, Vermont, Washington, West Virginia, and Wyoming—have agreed to satisfy their Medicaid liens using a "traditional" case-by-case approach to lien resolution that will not exceed 30% of the individual plaintiff's gross recovery. *See In re Zyprexa Prods. Liab. Litig.*, No. 04-MD-1596, 2006 WL 2385230 (E.D.N.Y. Aug. 15, 2006) (states that had agreed as that date); Tr. of Aug. 21, 2006 Conf. at 33-76 ("roll call" of the states, the District of Columbia, Puerto Rico, and the Virgin Islands).

Under this agreement, the 30% from which the states will satisfy their Medicaid liens will be withheld from each affected plaintiff's settlement.  Any balance of the 30% remaining

after the states have satisfied their Medicaid liens will be disbursed to the plaintiff at a later date.

By agreement with the PSC, in no event will a state that has selected the traditional-holdback method of recovery seek any Medicaid reimbursement from an individual claimant beyond this 30% holdback. *In re Zyprexa Prods. Liab. Litig.*, No. 04-MD-1596, 2006 WL 2385230, at *1 (E.D.N.Y. Aug. 15, 2006); *In re Zyprexa Prods. Liab. Litig.*, No. 04-MD-1596, 2006 WL 2443217, at *2 (E.D.N.Y. Aug. 24, 2006).

Connecticut has also agreed to resolve its liens using the traditional approach combined with a percentage holdback. *See* Tr. of Aug. 21, 2006 Conf. at 38-39. Because Connecticut law already provides that the state is entitled to no more than 50% of a Medicaid beneficiary's recovery after payment of attorneys' fees and costs, *see* Conn. Gen. Stat. § 17B-94, the holdback for Connecticut will be 50% of each affected plaintiff's *net* recovery; this works out to about 32.5% of each plaintiff's *gross* recovery. *See* Tr. of Aug. 21 Conf. at 38-39. Any balance of the 32.5% remaining after Connecticut has satisfied its Medicaid liens will be disbursed to the plaintiff at a later date. *See In re Zyprexa Prods. Liab. Litig.*, No. 04-MD-1596, 2006 WL 2443249 (E.D.N.Y. Aug. 24, 2006) (disbursement procedures); part VII, *infra*.

North Carolina has not yet determined whether it will resolve its liens through the global or traditional method. *See* Br. of North Carolina on the Issue of Medicaid Lien Hold-Back Amount, Attorneys' Fees, and Including the Cost of Zyprexa ("Br. of North Carolina") at 5; Tr. of Aug. 21 Conf. at 50-56. North Carolina has, however, requested a percentage holdback in order to allow payments to begin going out to its settling plaintiffs as soon as possible. *See* Br. of North Carolina at 1; letter of August 10, 2006 from North Carolina Assistant Attorney General Susannah P. Holloway to the court. Because North Carolina law already provides that the state is entitled to no more than 33.3% of a Medicaid beneficiary's gross recovery, *see* N.C.

Gen. Stat. § 108A-57(a), the holdback for North Carolina will be 33.3% of each affected plaintiff's gross recovery. Additionally, North Carolina will "pro-rate" its Medicaid lien with Medicare's, so as to guarantee that the total amount deducted from each plaintiff's recovery for satisfaction of both liens is no more than 33.3% of the recovery. *See* N.C. Gen. Stat. § 108A-57(a); letter of August 10, 2006 from North Carolina Assistant Attorney General Susannah P. Holloway to the court. Any balance of the 33.3% remaining after North Carolina has satisfied its Medicaid liens will be disbursed to the plaintiff at a later date. *See In re Zyprexa Prods. Liab. Litig.*, No. 04-MD-1596, 2006 WL 2443249 (E.D.N.Y. Aug. 24, 2006) (disbursement procedures); part VII, *infra*.

### C. Resolution of the Remaining States' Liens

As of the date of this memorandum and order, five states—Ohio, Mississippi, Rhode Island, Virginia, and Wisconsin—along with the District of Columbia and Puerto Rico have failed to reach any agreement with the PSC regarding resolution of their Medicaid liens. *See* Tr. of Aug. 21, 2006 Conf. at 33-76 (roll call of the states, the District of Columbia, Puerto Rico, and the Virgin Islands). The court encourages these states to work with the PSC to resolve their liens as quickly as possible in accordance with the legal conclusions embodied in part VIII of this memorandum and order.

While the court understands that the states are under an obligation to the state taxpayers and to the federal government to collect on their Medicaid liens, the five remaining states, the District of Columbia, and Puerto Rico will—like the states who have already agreed to a resolution of their liens—have the protection of a national and fair inquiry, an arms-length negotiation, oversight by experienced special masters, the explicit encouragement of the federal

government, and approval by the court to fall back on. *See* Ctrs. for Medicare and Medicaid Servs., Pursuing Medicaid Reimbursement in Global Settlements (2006) (strongly encouraging the states to participate in global settlements). This should assure those responsible for administration of these jurisdictions' Medicaid programs of the need for flexibility to achieve a lien resolution that is fair to all concerned. They undoubtedly have in mind their obligation not only to the public fisc, but also to their own citizens who are entitled to and need relief now.

## VI. START OF PAYMENTS

On August 24, 2006, an order was issued providing for the start of payments to four classes of settling plaintiffs: (1) all settling plaintiffs who received neither Medicare or Medicaid; (2) all settling plaintiffs who received only Medicare and whose liens are therefore covered by the global resolution agreed to by the federal government and the PSC; (3) all settling plaintiffs who received Medicaid from a state that has agreed to the resolution of its liens by means of the Medicaid global model; and (4) all settling plaintiffs who received Medicaid from a state that has agreed to use the traditional-holdback method of lien resolution and to bear some portion of the attorneys' fees and costs. *In re Zyprexa Prods. Liab. Litig.*, No. 04-MD-1596, 2006 WL 2443217 (E.D.N.Y. Aug. 24, 2006). *See* part V, *supra* and part VIII.A.1, *infra*. States whose Medicaid-beneficiary plaintiffs are included in categories (3) and (4) are: Alabama, Alaska, Arizona, California, Colorado, Florida, Indiana, Kansas, Maine, Maryland, Massachusetts, Michigan, Minnesota, Missouri, Nebraska, Pennsylvania, South Dakota, Tennessee, Texas, Utah, Washington, West Virginia, and Wyoming. *See id.*; Tr. of Aug. 21, 2006 Conf. at 33-76.

Payments have not begun to settling plaintiffs who received Medicaid from states that

those states that have agreed to resolve their liens but have not explicitly agreed to pay a share of the plaintiffs' attorneys' fees and costs. These "no-fee" states include both those that have expressed opposition to fee-sharing—Arkansas, Connecticut, Kentucky, Louisiana, Nevada, New Hampshire, New York, North Carolina, Oregon, and South Carolina—and those that have not yet contacted either the PSC or the court to state their position regarding fee-sharing— Delaware, Georgia, Hawaii, Idaho, Illinois, Iowa, Montana, New Jersey, New Mexico, North Dakota, Oklahoma, and Vermont. *See id. See also* part VIII.A.2, *infra.*

Payments to the settling plaintiffs are unaffected by the dispute over inclusion of the cost of Zyprexa in the amount of the states' Medicaid liens—the states using the global model have agreed that the cost of the drug will not be included and the states using a traditional method have agreed to a set holdback regardless of the total amount of their liens. The court ordered Garretson to refrain from making disbursements to those states claiming the cost of Zyprexa until the court rules on this issue. *In re Zyprexa Prods. Liab. Litig.*, No. 04-MD-1596, 2006 WL 2443245 (E.D.N.Y. Aug. 24, 2006). The court rules on this issue in part VIII.B, *infra.*


## VII. DISBURSEMENT PROCEDURES

The court-ordered procedures for disbursement of the settlement funds are as follows:


1. The amount to be withheld for liens under the approved agreements with the federal government and the states shall be deducted by Garretson from

the amount awarded to the settling plaintiff by the Special Masters.

2.      The amount left after withholding shall be remitted to the settling

plaintiff's attorney on the direction of Garretson. Before receiving funds

for payment a plaintiff's attorney shall file a certificate with the court

indicating: (1) that the funds will be deposited in the firm's escrow

account and; (2) that the attorney is of the opinion that the firm's

insurance policy protects the funds against despoliation from within the

firm. A copy of this certificate shall be forwarded to Garretson.

3.      Upon receipt of settlement proceeds, the attorney shall retain the amount

of the attorney's fees and costs in accordance with the court's orders of

March 28 and August 24, 2006 setting a fee schedule and allowing up to

1% for actual costs that are not being absorbed by the PSC in its

application for reimbursement. *See In re Zyprexa Prods. Liab. Litig.*, 424

F. Supp. 2d 488 (E.D.N.Y. 2006) (setting fee schedule); *In re Zyprexa*

*Prods. Liab. Litig.*, No. 04-MD-1596, 2006 WL 2443248 (E.D.N.Y. Aug.

24, 2006) (allowing up to 1% for non-common benefit costs to be taxed to

the individual plaintiffs' recoveries).

4.      The attorney shall disburse the settling plaintiff's net proceeds to the

plaintiff within 21 days of receipt of applicable funds. Failure to comply

with this time limit because of the claimant's disappearance, death, or

other such reason shall be promptly disclosed to the court and Garretson, with the amount due the claimant being kept in the firm's escrow account pending further order of the court.

5.  From the amount withheld for liens, Garretson shall remit directly to the state and federal lien holders the amounts required to pay the liens, as determined by the global models or the "traditional" case-by-case approach agreed to by the federal government and the states. States will be added to this category as they reach agreement on the percentage of Medicaid liens to be withheld.

6.  Any amount from the lien holdback not required to pay the liens under the approved agreements shall be remitted by Garretson to the settling plaintiff's attorney. The plaintiff's attorney shall disburse these "leftover" amounts to the settling plaintiff within 21 days of receipt, except as provided in paragraph 4, where failure to comply with this time limit results from the claimant's disappearance, death, or other such reason.

7.  Garretson and the attorneys shall report to the court in writing under seal the name and the amount remitted within ten days of disbursements to any disbursee.

See In re Zyprexa Prods. Liab. Litig., No. 04-MD-1596, 2006 WL 2443249 (E.D.N.Y. Aug. 24, 2006).

# VIII. CONTESTED ISSUES RELEVANT TO THE MEDICAID LIENS

### A.    Payment of Attorneys' Fees

Federal Medicaid regulations allow states to deduct the costs of obtaining recovery, including attorneys' fees, before reimbursement to the federal government for its financial participation in the state's Medicaid costs; if costs are deducted, the amount of the federal government's share is determined with reference to the reduced rather than the original recovery by the state. *See* Ctrs. for Medicare & Medicaid Servs., Dep't of Health & Human Servs., State Medicaid Manual § 3907. As a result, there is sufficient flexibility built into the reimbursement system to permit a reasonable sharing of the expenses of litigation against third parties among the states, the federal government, and Medicaid beneficiaries.

### 1.    States Agreeing to Pay a Share

Twenty-three of the states involved in the current litigation have taken advantage of this flexibility and have, like the federal government, agreed to pay a share of the settling plaintiffs' attorneys' fees and costs. While many of these states have done so in response to state laws that explicitly provide for fee-sharing, *see, e.g.*, Tenn. Code Ann. § 71-5-117h, others of them have no such laws. *See, e.g.*, Minn. Stat. § 256B.042(5).

Fifteen of the twenty-three states—Alabama, Alaska, Arizona, Colorado, Maine,

40

Maryland, Massachusetts, Minnesota, Missouri, Nebraska, Pennsylvania, Tennessee, Utah, Washington, and West Virginia—are paying a proportionate share of the fees and costs. Because the Medicaid global model contains an offset to take account of the states' responsibility to pay a proportionate share of the expenses involved in procuring the settlement, *see In re Zyprexa Prods. Liab. Litig.*, No. 04-MD-1596, 2006 WL 2443217, at *1 (E.D.N.Y. Aug. 24, 2006), the eleven states that have agreed to the global method of resolving their liens have agreed to pay a proportionate share of the settling plaintiffs' attorneys' fees and costs. These states are Alabama, Arizona, Colorado, Maine, Maryland, Massachusetts, Minnesota, Missouri, Nebraska, Pennsylvania, and Utah. *See* part V.A, *supra.* Four of the states that agreed to a traditional-holdback resolution of their liens—Alaska, Tennessee, Washington, and West Virginia—have also agreed to pay a proportionate share of the attorneys' fees and costs.

Eight of the states that agreed to a traditional-holdback resolution of their liens are paying a limited percentage of the attorneys' fees and costs, in accordance with state laws or regulations capping the amount of fees to be paid by the state in Medicaid recoveries. *See, e.g.* Cal. Welf. & Inst. Code § 14124.72(d); Ind. Code § 12-15-8-8; Kan. Stat. Ann. § 39-719a(b); Tex. Admin. Code § 354.2332; Wyo. Stat. Ann. § 42-4-201. Kansas and Wyoming are paying fees and costs of 33.3% of each lien recovery; California, Florida, Michigan, South Dakota, and Texas are paying fees and costs of 25%; and Indiana is paying fees and costs of 10%.

## 2. States Not Agreeing to Pay a Share

A total of twenty-seven states , the District of Columbia, and Puerto Rico have not agreed to pay a share of attorneys' fees and costs. Fourteen states—Arkansas, Connecticut, Kentucky, Louisiana, Mississippi, Nevada, New Hampshire, New York, North Carolina, Ohio, Oregon,

to any form of fee-sharing. Thirteen states—Delaware, Georgia, Hawaii, Idaho, Illinois, Iowa, Montana, New Jersey, New Mexico, North Dakota, Oklahoma, Rhode Island, Vermont—and Puerto Rico have not contacted either the PSC or the court to state a position regarding fee-sharing.

Of the objecting states, Arkansas, Connecticut, Louisiana, New York, North Carolina, Ohio, Oregon, Virginia, and Wisconsin base their opposition on state laws that they maintain bar pro rata sharing of attorneys' fees in lien recoveries. *See* Consolidated Br. of the Participating States on the Issue of Attorneys' Fees ("Consol. Fees Br.") at 6-9; Supplemental Br. of the State of Connecticut ("Br. of Conn.") at 1-4; Br. of North Carolina at 2-3; letter from the State of New York Dep't of Health dated Sept. 1, 2006.

Although the District of Columbia, Kentucky, Mississippi, Nevada, and South Carolina all have laws that explicitly provide for fee sharing at the discretion of either the state Medicaid agency (Kentucky, Nevada, and South Carolina), the Mayor (the District of Columbia), or the court (Mississippi), these jurisdictions all argue that this discretion should not be employed in the present case. *See* Consol. Fees Br. at 8-13.

### 3. All States Must Pay a Share

This is a nationwide multidistrict litigation in a federal court; the partial settlement at issue involves over 8,000 individual plaintiffs from every state of the union, the District of Columbia, and Puerto Rico. The case involves important questions of the nationwide marketing of drugs and of national regulation of drugs by the federal Food and Drug Administration. It also affects administration of the federal Medicare and federal-state Medicaid programs.

Recognizing its obligation to exercise careful oversight of this national "quasi-class action," the court has already utilized its equitable power to limit attorneys' fees and costs, *see In re Zyprexa Prods. Liab. Litig*, 424 F. Supp. 2d 488 (E.D.N.Y. 2006) (limiting fees); *In re Zyprexa Prods. Liab. Litig.*, No. 04-MD-1596, 2006 WL 2443248 (E.D.N.Y. Aug. 24, 2006) (limiting costs), and to ensure that filing delays on the part of some settling plaintiffs did not prevent the start of payments to others. *See In re Zyprexa Prods. Liab. Litig*, 433 F. Supp. 2d 268 (E.D.N.Y. 2006).

The court notes that federal courts have generally applied state laws regarding the validity and extent of state liens. *See, e.g., Caldwell v. TACC Corp.*, 423 F.3d 784 (8th Cir. 2005) (state law applied to workers' compensation carrier's lien); *Copeland v. Toyota Motor Sales*, 136 F.3d 1249 (10th Cir. 1998) (under Kansas law governing Medicaid liens, state agency was only required to pay 33.3% attorneys' fees, not 40%, because trial was not convened); *Powell, Inc. v. Abney*, 669 F.2d 348 (5th Cir. 1982) (state law applied to private lien arising from litigation); *Bryan Memorial Hosp. v. Allied Property and Casualty Ins. Co.*, 163 F. Supp. 2d 1059 (D. Neb. 2001) (state law applied to hospital's lien). None of these cases implicated critical national interests of the kind involved here.

In a situation such as the present one, the court has an obligation to ensure that both the states and the plaintiffs are treated equitably with respect to payment of the costs of a litigation from which they all benefit. A federal court cannot allow variations in state law to interfere with the fair and efficient administration of a federally-controlled national litigation. *Cf. In re Johns-Manville Corp.*, 27 F.3d 48 (2d Cir. 1994) (district court authority under All-Writs Act to issue order staying litigation against personal injury settlement trust and payments from the trust while litigation surrounding the trust was pending); *In re Agent Orange Prods. Liab. Litig.*, 996 F.2d 1425, 1431-32 (2d Cir. 1993) (district court authority under All-Writs Act to remove otherwise

unremovable state case in order to "effectuate and prevent the frustration of orders it has previously issued in its exercise of jurisdiction otherwise obtained"); *In re Baldwin-United Corp.*, 770 F.2d 328, 335 (2d Cir. 1985) (district court authority under All-Writs Act to enjoin states from bringing actions which would affect the rights of any plaintiff).

Whether the issue of the attorneys' fees to be paid by a Medicaid agency in a federal litigation is procedural (in which case federal law would apply) or substantive (in which case state laws might arguably apply to the state-funded portion of the Medicaid program), the equities require a solution that is nationwide in scope and fair to each litigant and state. *Cf. Grievance Comm. V. Simels*, 48 F.3d 640, 645-46 (2d Cir. 1995) (because of the need to avoid "balkanization," a federal court is not bound by state interpretations of rules regarding the ethical conduct of attorneys); *County of Suffolk v. Long Island Lighting Co.*, 710 F. Supp. 1407, 1414-15 (E.D.N.Y 1989) (application of state rules regarding the ethical conduct of attorneys overridden by the requirements of a federal class action litigation). *See also* L. Elizabeth Chamblee, *Unsettling Efficiency: When Non-Class Aggregation of Mass Torts Creates Second-Class Settlements*, 65 La. L. Rev. 157, 241 (2004) (in a multidistrict litigation as in a class action, the primary goal of the court is to "ensure that similarly situated individuals receive equal fairness protections").

In deference to state sovereignty, a federal court may accept limited variations arising from the application of state laws and regulations that, while explicitly providing for fee-sharing, limit the amount to be contributed by the state Medicaid agency. It is recognized that the states may have diverse reasons for controlling legal fees. Because the states who have limited the amount of their fee-sharing have balanced their own fiscal needs with the recognized needs of Medicaid beneficiaries and have voluntarily accepted their responsibility to share in the costs of

a recovery from which they benefit, the court should attempt to give effect to the different fee-sharing arrangements resulting from their differing state policies. It would, however, be entirely inappropriate in a national settlement of this sort to allow some of the states to completely ignore their responsibility to pay a reasonable share of attorneys' fees and costs—a responsibility that other states and the federal government have properly assumed.

The settling plaintiffs in this case are paying attorneys' fees of up to 35% of their recoveries, along with up to 1% in costs. They have expended time and effort in working with their attorneys to file necessary medical documentation and otherwise prosecute their claims. The work of these plaintiffs and their attorneys has benefitted both the plaintiffs and the states. The states would likely have recovered nothing in the absence of this hard-fought litigation. They cannot be permitted "to enjoy the fruits . . . without contributing in any way to the costs or burdens of litigating that claim." *Hedgebeth v. Medford*, 378 A.2d 226, 230 (N.J. 1977).

All of the state Medicaid agencies involved in the lien settlement shall pay a share of the attorneys' fees and costs involved in procuring this settlement, calculated in accordance with the court's orders of March 28, 2006 and August 24, 2006. *See In re Zyprexa Prods. Liab. Litig.*, 424 F. Supp. 2d 488 (E.D.N.Y. 2006) (fees capped at 20% in "Track A" cases and 35% in all other cases); *In re Zyprexa Prods. Liab. Litig.*, No. 04-MD-1596, 2006 WL 2443248 (E.D.N.Y. Aug. 24, 2006) (costs taxed to the individual plaintiffs capped at 1% of their recovery).

Those states that have already made arrangements with the PSC to pay a share of the settling plaintiffs' fees and costs shall do so in accordance with the terms already approved and described above. As noted above, these states are Alabama, Alaska, Arizona, California, Colorado, Florida, Indiana, Kansas, Maine, Maryland, Massachusetts, Michigan, Minnesota, Missouri, Nebraska, Pennsylvania, South Dakota, Tennessee, Texas, Utah, Washington, West

Virginia, and Wyoming.

Those states that have not already made arrangements with the PSC to pay a share of the fees and costs shall pay a share of the fees and costs for all plaintiffs from whom they recover Medicaid reimbursements. This share shall be proportionate to the state's share of the gross recovery compared to the plaintiff's share. Fees and costs in their proportionate amounts shall be deducted from the lien withholding amounts of these states by Garretson.

## B.     Non-Inclusion of the Cost of Zyprexa in the Lien Amounts

Arkansas, Florida, Ohio, Kansas, Mississippi, South Carolina, Wisconsin, and the District of Columbia have submitted a consolidated brief requesting that they, as subrogees of the Medicaid-beneficiary plaintiffs, "be permitted to 'stand in the shoes'" of those plaintiffs in order to "recover the taxpayer dollars expended on the cost of the drug Zyprexa." Consolidated Br. of the States Regarding Inclusion of the Cost of Zyprexa ("Consol. Zyprexa Br.") at 1. This request is denied. The plaintiffs' recovery includes no reimbursement for the cost of Zyprexa. The settlement amounts compensate the plaintiffs only for treatment costs, pain and suffering, and other non-medical damages connected to personal injuries they allege were *caused by ingestion of Zyprexa*. Insofar as some of the plaintiffs' complaints contained allegations of fraud, negligent misrepresentation and failure to warn that could possibly have supported recovery of the cost of the drug, these claims are now dismissed. The settlement masters did not include them in its allocation of damages to each settling plaintiff. *See* letter of September 11, 2006 from special master Kenneth R. Feinberg to the court.

The states and Lilly point to a provision in the master settlement agreement requiring the settling plaintiffs to satisfy all valid liens on their recoveries and to indemnify Lilly against third

party payor claims related to their use of Zyprexa, including claims for the cost of Zyprexa. *See* Consol. Zyprexa Br. at 4-6; Response of Eli Lilly & Co. to Certain States' Request for Reimbursement of the Cost of Zyprexa ("Def.'s Response") at 3-4. As Lilly acknowledges, this provision does not establish the validity of any particular third party claim. *See* Def.'s Response at 5. Rather, it establishes the responsibilities of the settling plaintiffs vis-a-vis Lilly: the plaintiffs, not Lilly, are responsible for satisfying all *valid* liens on their recoveries—the court has found that the states do not have a valid lien for the cost of Zyprexa—and, if a third party payor brings suit against Lilly for damages related to the settling plaintiffs' use of Zyprexa, the plaintiffs will be required to reimburse Lilly for any recovery.

Theoretically, the states could sue Lilly for payments for Zyprexa made by their Medicaid programs. Since they are not parties to this action, the states are not bound by the court's dismissal of the individual plaintiffs' claims for the cost of Zyprexa, nor by the master settlement agreement. Theoretically, Lilly could lose that suit and be held responsible for all or a portion of the expenditures the states made in purchasing the drug. Were these remote possibilities to come to fruition, Lilly could, under a plausible interpretation of the indemnity provision of the master settlement agreement, seek to recover from the settling plaintiffs the portion of a judgment for the cost of the drug attributable to Medicaid's expenditures for Zyprexa on their behalf.

The possibility of these theoretical conditions coming to fruition is slight to the vanishing point. There is ample money left in the general escrow account being supervised by the court to cover this contingency. The special masters, with the aid of the parties and the states, if they wish to participate, are directed to estimate how much needs to be set aside for such claims. That amount will be set aside and held for a period of five years. This is a method utilized in the

*Agent Orange* litigation to solve a somewhat similar problem of possible liability to the settling

defendants in future actions. *See* Peter S. Schuck, Agent Orange on Trial 165, items (4) & (11)

(1986) (money set aside for reimbursement of settling defendants in case of a subsequent state

suit; this money was later remitted to the fund on consent of all parties and used to aid spouses

and children of veterans).


## IX.    CONCLUSION

### A.    Medicare Liens

Payments shall continue to plaintiffs who received Medicare in accordance with the

terms already approved and described above. *See* part IV, *supra*. *See also* Stipulation and Order

dated Aug. 21, 2006 (describing and approving Medicare lien agreement between the federal

government and the PSC); *In re Zyprexa Prods. Liab. Litig.*, No. 04-MD-1596, 2006 WL

2443249 (E.D.N.Y. Aug. 24, 2006) (disbursement procedures).


### B.    Medicaid Liens

All states seeking to recover Medicaid disbursements from settling plaintiffs shall pay a

share of relevant plaintiffs' attorneys' fees and costs. *See* part VII.A, *supra*. The total amount of

the attorneys' fees are capped as specified in the court's order of March 28, 2006. *In re Zyprexa*

*Prods. Liab. Litig.*, 424 F. Supp. 2d 488 (E.D.N.Y. 2006). Costs charged to the individual

settling plaintiffs are severely limited, as already ordered. *In re Zyprexa Prods. Liab. Litig.*, No.

04-MD-1596, 2006 WL 2443248 (E.D.N.Y. Aug. 24, 2006).

Payments shall continue to plaintiffs in those twenty-three states—Alabama, Alaska,

Arizona, California, Colorado, Florida, Indiana, Kansas, Maine, Maryland, Massachusetts,

Michigan, Minnesota, Missouri, Nebraska, Pennsylvania, South Dakota, Tennessee, Texas, Utah, Washington, West Virginia, and Wyoming—that have already agreed both to resolve their liens and to pay a portion of attorneys' fees in accordance with the terms already approved and described above. *See* part V & VIII.A.1, *supra*. *See also In re Zyprexa Prods. Liab. Litig.*, No. 04-MD-1596, 2006 WL 2385230 (E.D.N.Y. Aug. 15, 2006) (describing and approving Medicare lien agreements between certain states and the PSC); *In re Zyprexa Prods. Liab. Litig.*, No. 04-MD-1596, 2006 WL 2443217 (E.D.N.Y. Aug. 24, 2006) (describing Medicare lien agreements between certain states and the PSC); *In re Zyprexa Prods. Liab. Litig.*, No. 04-MD-1596, 2006 WL 2443249 (E.D.N.Y. Aug. 24, 2006) (disbursement procedures).

Payments shall begin to Medicaid-beneficiary plaintiffs in those twenty-two states—Arkansas, Connecticut, Delaware, Georgia, Hawaii, Idaho, Illinois, Iowa, Kentucky, Louisiana, Montana, Nevada, New Hampshire, New Jersey, New Mexico, New York, North Carolina, North Dakota, Oklahoma, Oregon, South Carolina, and Vermont—that, while objecting to fee-sharing, have already agreed to a resolution of their liens under the holdback approach already described. *See* part V.B, *supra*. Reimbursements to these states shall be reduced to take account of their obligation pursuant to this order to pay a proportionate share of the settling plaintiffs' attorneys' fees. *See* part VIII.A, *supra*.

The costs of Zyprexa shall not be included in calculating the amount of any state's lien. *See* part VIII.B, *supra*.

The court encourages those five states that have not yet reached any agreement regarding resolution of the amount of their Medicaid liens—Ohio, Mississippi, Rhode Island, Virginia, and Wisconsin—and the District of Columbia and Puerto Rico, to work with the PSC and Garretson to resolve their liens as quickly as possible in accordance with the legal conclusions embodied in

this memorandum and order. The special settlement masters will assist. No payments shall be made to Medicaid-beneficiary residents of these jurisdictions pending further order of the court.

### C.    Delay of Entry

The Clerk of the Court shall delay entry of this order for ten days in order to allow any party, the federal government, or any state to seek relief from the Court of Appeals for the Second Circuit.

SO ORDERED.

Jack B. Weinstein

Dated: September 11, 2006
          Brooklyn, New York

**APPENDIX: STATUS OF LIEN RESOLUTION**

The global method of lien resolution uses a model that sets forth uniform reimbursement amounts for Medicare or Medicaid's outlays for diagnosis and treatment of each of the "signature injuries" alleged to be caused by Zyprexa. *See* parts II.C, IV & V.A, *supra*.

The "traditional" method of lien resolution requires a case-by-case analysis of each plaintiff's Medicaid claims history in order to determine the amount expended by the program on health care costs related to injuries allegedly caused by Zyprexa. *See* parts II.C & V.B, *supra*.

| | AGREEMENT ON LIENS REACHED? | TYPE OF AGREEMENT ON LIENS | POSITION ON FEE-SHARING | PAYMENTS ALREADY GOING OUT? |
|---|---|---|---|---|
| Federal Government | Yes | Global | Yes | Yes |
| Alabama | Yes | Global | Yes | Yes |
| Alaska | Yes | Traditional 30% holdback | Yes | Yes |
| Arizona | Yes | Global | Yes | Yes |
| Arkansas | Yes | Traditional 30% holdback | No | No |
| California | Yes | Traditional 30% holdback | Yes (25%) | Yes |
| Colorado | Yes | Global | Yes | Yes |
| Connecticut | Yes | Traditional 50% of net holdback | No | No |
| Delaware | Yes | Traditional 30% holdback | No position | No |
| Florida | Yes | Traditional 30% holdback | Yes (25%) | Yes |
| Georgia | Yes | Traditional 30% holdback | No position | No |
| Hawaii | Yes | Traditional 30% holdback | No position | No |
| Idaho | Yes | Traditional 30% holdback | No position | No |
| Illinois | Yes | Traditional 30% holdback | No position | No |
| Indiana | Yes | Traditional 30% holdback | Yes (10%) | Yes |
| Iowa | Yes | Traditional 30% holdback | No position | No |
| Kansas | Yes | Traditional 30% holdback | Yes (33.3%) | Yes |

| | | | | |
|---|---|---|---|---|
| Kentucky | Yes | Traditional 30% holdback | No | No |
| Louisiana | Yes | Traditional 30% holdback | No | No |
| Maine | Yes | Global | Yes | Yes |
| Maryland | Yes | Global | Yes | Yes |
| Massachusetts | Yes | Global | Yes | Yes |
| Michigan | Yes | Traditional 30% holdback | Yes (25%) | Yes |
| Minnesota | Yes | Global | Yes | Yes |
| Mississippi | No | ------ | No | No |
| Missouri | Yes | Global | Yes | Yes |
| Montana | Yes | Traditional 30% holdback | No position | No |
| Nebraska | Yes | Global | Yes | Yes |
| Nevada | Yes | Traditional 30% holdback | No position | No |
| New Hampshire | Yes | Traditional 30% holdback | No | No |
| New Jersey | Yes | Traditional 30% holdback | No position | No |
| New Mexico | Yes | Traditional 30% holdback | No position | No |
| New York | Yes | Traditional 30% holdback | No | No |
| North Carolina | Yes | Undecided 33.3% holdback | No | No |
| North Dakota | Yes | Traditional 30% holdback | No position | No |
| Ohio | No | ------ | No | No |
| Oklahoma | Yes | Traditional 30% holdback | No position | No |
| Oregon | Yes | Traditional 30% holdback | No | No |
| Pennsylvania | Yes | Global | Yes | Yes |
| Rhode Island | No | ------ | No position | No |
| South Carolina | Yes | Traditional 30% holdback | No | No |
| South Dakota | Yes | Traditional 30% holdback | Yes (25%) | Yes |

| | | | | |
|---|---|---|---|---|
| Tennessee | Yes | Traditional 30% holdback | Yes | Yes |
| Texas | Yes | Traditional 30% holdback | Yes (25%) | Yes |
| Utah | Yes | Global | Yes | Yes |
| Vermont | Yes | Traditional 30% holdback | No position | No |
| Virginia | No | ------ | No | No |
| Washington | Yes | Traditional 30% holdback | Yes | Yes |
| West Virginia | Yes | Traditional 30% holdback | Yes | Yes |
| Wisconsin | No | ------ | No | No |
| Wyoming | Yes | Traditional 30% holdback | Yes (33.3%) | Yes |
| District of Columbia | No | ------ | No position | No |
| Puerto Rico | No | ------ | No position | No |
| Virgin Islands | No reported cases. | | | |