

**FILED**
IN CLERK'S OFFICE
U.S. DISTRICT COURT, E.D.N.Y.

★ DEC 07 2010 ★

BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------x

In re: ZYPREXA
PRODUCTS LIABILITY LITIGATION

-------------------------------------------------------x

THIS DOCUMENT RELATES TO:

ALL ACTIONS

-------------------------------------------------------x

MEMORANDUM &
ORDER ON
COMMON BENEFIT FUND
AND CONTINUING
APPLICABILITY OF ORDERS
OF COURT AND SPECIAL
MASTERS
04-MD-1596 (JBW)

JACK B. WEINSTEIN, Senior United States District Judge:

TABLE OF CONTENTS

I. INTRODUCTION.................................................................................................2

II. FACTS.........................................................................................................4

    A. Litigation History..................................................................................4

    B. Access to Discovery and Deposition Materials........................................6

    C. Copies of Materials Housed in Mount Pleasant Depository....................7

    D. Date From Which PSC II May Seek Fees..............................................7

III. LAW OF COMMON BENEFIT COMPENSATION....................................................8

IV. APPLICATION OF LAW TO FACTS: FEDERAL CASES............................................10

V. APPLICATION OF LAW TO FACTS: STATE CASES.................................................13

VI. EQUITY; AVOIDANCE OF CONFLICT OF INTEREST..............................................15

VII. POTENTIAL FOR DUBIOUS FILINGS IN QUASI-CLASS ACTION............................16

    A. Problem Generally...............................................................................16



B. Potential for Sanctions and Cost Sharing By Counsel...........................................19

VIII. APPLICATION OF ALL ORDERS TO PENDING CASES.......................................23

A. Law...............................................................................................................23

B. Application of Law to Facts: Fees...........................................................25

C. Application of Law to Facts: Fact Sheets and Orders of Special Masters...............26

IX. CONCLUSION.................................................................................................27

## I. Introduction

In November 2005, many thousands of cases in this multi-district litigation ("MDL")
were settled under the direction of an original Plaintiffs' Steering Committee ("PSC I"). *See In
re Zyprexa Prods. Liab. Litig.*, No. 04-MD-01596, 2005 WL 3117302 (E.D.N.Y. Nov. 22, 2005).
The settlement resolved virtually all cases pending in the MDL at that time, along with many
state cases and some claims not yet filed. *See id.*

A new Plaintiffs' Steering Committee ("PSC II") was then established to deal with the
thousands of incoming and remaining cases — primarily those filed and transferred to the MDL
transferee court since the original settlement. PSC II moves for the establishment of a fund to
compensate attorneys who work for the common benefit of all Zyprexa plaintiffs whose cases
were not part of the original settlement. Funding is sought to be based on a portion of each
recovery paid to plaintiffs' attorneys, either by settlement or by judgment, in: (1) federal court,
and (2) state court where the state plaintiff's attorney also represents federal plaintiffs. PSC II
requests that defendant, Eli Lilly & Company ("Lilly"), be ordered to set aside a portion of each
such recovery to be included in the common benefit fund.

Three objections to the motion are made: 1) defendant contends that requiring Lilly to

2

administer the fund would place an unfair burden on it; 2) a number of attorneys representing state and federal plaintiffs challenge the transferee court's jurisdiction to require fees to be paid out of state court recoveries; and 3) the same attorneys argue that the common benefits conferred by PSC II are too uncertain at this point to merit the creation of a common benefit fund. For the reasons set out below, the motion is granted in part. *See* Parts II-VI, *infra*.

This memorandum also deals with the danger of unlimited dubious filings in a non-class action conglomerate settlement. *See* Part VII, *infra*. The parties are reminded that orders of the court, magistrate judge and special masters issued while PSC I was active apply to PSC II and all cases pending in this MDL.

The court, magistrate judge and special masters will continue to administer this litigation as a quasi-class action. *See In re Zyprexa Prods. Liab. Litig.*, 451 F. Supp. 2d 458, 477 (E.D.N.Y. 2006) ("Recognizing its obligation to exercise careful oversight of this national 'quasi-class action,' the court has already utilized its equitable power to limit attorneys' fees and costs. . .") (citation omitted); *In re Zyprexa Prods. Liab. Litig.*, 433 F. Supp. 2d 268, 271 (E.D.N.Y. 2006) (finding that case "may be characterized properly as a quasi-class action subject to the general equitable power of the court"); *In re Zyprexa Prods. Liab. Litig.*, 424 F. Supp. 2d 488, 491 (E.D.N.Y. 2006) (same); *In re Zyprexa Prods. Liab. Litig.*, 233 F.R.D. 122, 122 (E.D.N.Y. 2006) (same).

Cooperation with state courts will continue to be stressed. *See* Part V, *infra*; *see also In re Zyprexa Prods. Liab. Litig.*, No. 04-MD-01596, 2006 WL 898105, at *1 (E.D.N.Y. Apr. 16, 2006) ("Coordination and cooperation between state and federal courts has been encouraged."); *In re Zyprexa Prods. Liab. Litig.*, No. 04-MD-01596, 2006 WL 197151 (E.D.N.Y. Jan. 30, 2006)

(letter to state judges with Zyprexa cases from federal MDL judge suggesting coordination and cooperation); *In re Zyprexa Prods. Liab. Litig.*, No. 04-MD-01596, 2004 WL 3520248, at *4 (E.D.N.Y. Aug. 18, 2004) (directing defendant Lilly and PSC I to "confer regarding procedures for coordination of state court discovery with discovery in this MDL").

## II. Facts

### A. Litigation History

In April 2004, pretrial proceedings were consolidated in actions against defendant Lilly for injuries alleged to have been caused by on-label and off-label usage of the prescription drug Zyprexa. *See* Letter from Multidistrict Litigation Panel to Clerk of the Eastern District of New York, No. 04-MD-01596 (Apr. 14, 2004). After discovery and negotiations overseen by a court-appointed special discovery master and four special settlement masters, in November 2005 the defendant, without conceding liability, entered into a settlement covering some 8,000 individual plaintiffs. *See In re Zyprexa Prods. Liab. Litig.*, No. 04-MD-01596, 2005 WL 3117302 (E.D.N.Y. Nov. 22, 2005). As a result of the settlement agreement, a significant sum was placed in an escrow account to be paid to settling plaintiffs.

A complex claims processing and payment procedure is in the final stages of execution. *See In re Zyprexa Prods. Liab. Litig.*, 433 F. Supp. 2d 269 (E.D.N.Y. 2006). All individual awards have been fixed by the special settlement masters. *See* Letter from Special Master Kenneth R. Feinberg, No. 04-MD-01596 (Aug. 18, 2006) (setting forth awards for each settling plaintiff).

An attorneys' fees structure has been ordered, capping fees at 20% of recovery in smaller, lump-sum claims, and at 35% of recovery in all other claims. *See In re Zyprexa Prods. Liab.*

*Litig.*, 424 F. Supp. 2d 488 (E.D.N.Y. 2006). Costs related to the individual cases and charged to the individual settling plaintiffs are limited to 1% of each plaintiff's recovery. *See In re Zyprexa Prods. Liab. Litig.*, No. 04-MD-01596, 2006 WL 2443248 (E.D.N.Y. Aug. 24, 2006).

A national system for resolving Medicare and Medicaid liens has been approved. *See In re Zyprexa Prods. Liab. Litig.*, 451 F. Supp. 2d 458 (E.D.N.Y. 2006). All states and the federal government have agreed to modify their lien demands to provide a national equitable system. *See In re Zyprexa Prods. Liab. Litig.*, No. 04-MD-01596 (E.D.N.Y. Dec. 4, 2006) ("In compliance with this court's instructions . . . all fifty states as well as the federal government have resolved their Medicare and Medicaid liens.") (citation omitted).

To pay for PSC I's work, a 1% set-aside from the gross settlement amount, plus interest on the escrow fund, was designated for use in a common benefit fund. This fund will be used to reimburse members of PSC I and other attorneys for the time and funds expended by them for the common benefit of all settling plaintiffs in the conduct of the litigation and the implementation of the settlement. *See* Order for Set Aside for the Common Benefit Fund for Members of the Former Plaintiffs' Steering Committee, *In re Zyprexa Prods. Liab. Litig.*, No. 04-MD-01596 (Aug. 24, 2006) ("PSC I Common Benefit Order"). The work for which PSC I is being reimbursed includes reviewing millions of pages of documents turned over by defendant in the discovery process, and taking depositions of many defense witnesses. "[Zyprexa plaintiffs'] firms all benefitted from the effectiveness of coordinated discovery carried out in conjunction with the plaintiffs' steering committee [PSC I]. . . ." *In re Zyprexa*, 424 F. Supp. 2d at 493. A magistrate judge is in the process of auditing PSC I's claims on this fund. *See* PSC I Common Benefit Order; *In re Zyprexa Prods. Liab. Litig.*, No. 04-MD-01596, 2006 WL 2458878

5

(E.D.N.Y. Aug. 22, 2006) (referring oversight of PSC I's claims to the magistrate judge). PSC I provided excellent representation benefitting all plaintiffs.

PSC II was formally appointed on August 16, 2006, though some of its members assumed discovery responsibilities as early as the Spring of 2006 as discovery resumed after termination of a stay. *See In re Zyprexa Prods. Liab. Litig.*, No. 04-MDL-01596, Amended Case Management Order No. 19 (E.D.N.Y. Aug. 16, 2006). PSC II seeks to ensure compensation for its work on the behalf of plaintiffs whose claims have not yet been settled. *See* Aff. of Melvyn I. Weiss in Support of PSC's Motion for an Order Establishing a Common Benefit Fund, ¶ 1 (Oct. 5, 2006) ("Weiss Aff."); Tr. of Hr'g, 6 (Nov. 1, 2006) ("11/1 Tr.") ("This is for the new plaintiffs' steering committee, only dealing with the nonsettled cases.").

Since the time of the first settlement, which resolved most of the cases then pending in the MDL, thousands of additional cases have been transferred to this court under the MDL order. PSC II has undertaken and performed significant discovery work in connection with these cases, as well as the many cases pending in state courts: millions of pages of documents recently produced by Lilly have been reviewed, and witnesses have been deposed. Fact discovery in the pending cases is scheduled to be completed by December 29, 2006. *See In re Zyprexa Prods. Liab. Litig.*, No. 04-MD-01596, Case Management Order No. 20, at 1 (E.D.N.Y. Nov. 15, 2006).

### B. Access to Discovery and Deposition Materials

All materials obtained by PSC I and PSC II in pretrial discovery have been ordered to be made available to all plaintiffs, state and federal. *See In re Zyprexa*, 424 F. Supp. 2d at 491 ("all litigants, whether in federal or any state court, have access to the materials obtained in pretrial discovery"). Those materials, maintained initially in a depository in Denver, Colorado, and

6

currently in Mount Pleasant, South Carolina, have been available free of charge to state and federal plaintiffs who agree to adhere to the terms of the protective, case management, and other orders that have been issued by this court, the magistrate judge, and special masters. *See* Tr. of Status Conf., 5 (Jan. 17, 2006); Weiss Aff., ¶ 6. All plaintiffs — whether in state or federal court — shall continue to enjoy free access to the documents, deposition transcripts, and deposition exhibits obtained by PSC I and PSC II and now maintained by PSC II.

### C. Copies of Materials Housed in Mount Pleasant Depository

Some plaintiffs' attorneys have sought to make physical copies for their own use of all the discovery materials maintained by PSC II. *See* 11/1 Tr. Given the "touch of a button" nature of today's advanced technology — where in federal courthouses filings are submitted electronically rather than in paper form — wholesale unnecessary physical duplication of discovery materials should be avoided. The creation of web-based access to discovery materials would appear to facilitate cost-effective access to a single set of the documents while providing protection against their accidentally falling into hands not entitled to them. Nevertheless, PSC II is authorized to provide electronic copies of all discovery materials to plaintiffs' attorneys who agree to adhere to the terms of the protective order and the case management orders that have been issued by this court, the magistrate judge, and the special masters. If an attorney seeking the material is willing to be bound by all orders applicable in this MDL and to pay for the cost of consolidation of materials onto one or more discs for that attorney's use, the court sees no reason to deny such a request.

### D. Date From Which PSC II May Seek Fees

Following the announcement that defendant and PSC I had agreed upon the basis for a

settlement of some 8,000 cases in this litigation, the court stayed discovery until July 31, 2005.
*See In re Zyprexa Prods. Liab. Litig.*, 375 F. Supp. 2d 190, 191 (E.D.N.Y. 2005). Discovery did
not resume until about March 1, 2006. The special master for discovery held conferences
discussing discovery and related issues with defendant Lilly and plaintiffs' counsel (including
both members of PSC I and future members of PSC II) in April and May of 2006.

Any discovery after March 1, 2006 has presumably been for the benefit of cases that
were not part of the original settlement, since the settled cases did not require further discovery.
The discovery that has taken place from March 1, 2006 forward will be presumptively attributed
to PSC II. *See* Part IV *infra*. Some work may have been done for the common benefit of the
settled cases for a short period after March 1, 2006; attorneys who performed such work may
seek compensation from the funds set aside for compensation of PSC I. Work done by members
of PSC II and other attorneys after March 1, 2006 for the benefit of plaintiffs in unsettled cases
shall be paid from the PSC II common benefit fund. Any dispute about whether PSC I's
common benefit fund or PSC II's common benefit fund should be used to pay a particular
attorney for certain work shall be resolved by the special master for discovery.

### III. Law of Common Benefit Compensation

"A necessary corollary to court appointment of lead and liaison counsel and appropriate
management committees is the power to assure that these attorneys receive reasonable
compensation for their work." *In re Linerboard Antitrust Litig.*, 292 F. Supp. 2d 644, 653 (E.D.
Pa. 2003); *see also Smiley v. Sincoff*, 958 F.2d 498, 501 (2d Cir. 1992) ("District courts have
exercised this power to establish fee structures designed to compensate committee members for
their work on behalf of all plaintiffs involved in consolidated litigation."). In a consolidated

national mass litigation such as the present one, it is standard practice for courts to compensate attorneys who work for the common benefit of all plaintiffs by setting aside a fixed percentage of settlement proceeds. *See* Manual for Complex Litigation § 20.312 (4th ed. 2004) ("MDL judges generally issue orders directing that defendants who settle MDL-related cases contribute a fixed percentage of the settlement to a general fund to pay national counsel."). "In a complex multi-party litigation, attorneys designated with responsibilities for actions beyond those in which they are retained may be compensated for their work not only by their own clients, but also by those other parties on whose behalf the work is performed and on whom a benefit has been conferred." *In re Worldcom, Inc. Sec. Litig.*, No. 02-CIV-3288, 2004 WL 2549682, at *2 (S.D.N.Y. Nov. 10, 2004); *see also Smiley*, 958 F.2d at 501.

A transferee court in a federal multidistrict litigation has the power to determine the compensation for appointed lead counsel and to impose its fee calculation on all federal plaintiffs, even if their cases are 1) before other federal courts rather than the transferee court, or 2) not yet in a federal court, but ultimately are in such a court. *See Walitalo v. Chrysler Corp.*, 968 F.2d 741, 747 (8th Cir. 1992) ("the district court did not err in specifying how the originating trial courts should calculate the amount of lead and liaison counsel's fees in those cases remanded for trial . . . ." the district court appointed lead and liaison counsel and thus had authority to determine the amount of their compensation"); *In re Air Crash Disaster at Florida Everglades*, 549 F.2d 1006, 1019 (5th Cir. 1977) (stating that the transferee district court, which appointed lead counsel, "was the only tribunal that could effectively handle the fee matter"); *In re Zyprexa*, 424 F. Supp. 2d at 491 (setting caps on attorneys' fees in settled Zyprexa cases).

The Court of Appeals for the Second Circuit has sanctioned a common benefit fund

derived from a fixed percentage of fees earned by individual attorneys. *See Smiley*, 958 F.2d at 500 ("The order provided that any committee fee was to be paid by all attorneys on behalf of their clients. Plaintiffs were not to pay fees to the committee out of their own recoveries."); *see also In re Air Crash Disaster*, 549 F.2d at 1016 ("We hold that the district court had the power to direct that the Committee and its counsel be compensated and that requiring the payment come from other attorneys was permissible").

## IV. Application of Law to Facts: Federal Cases

In this quasi-class action, the court established steering committees for plaintiffs (PSC I and PSC II) in order to allow for coordinated action during the pretrial and settlement phases of the litigation. *See* Manual for Complex Litigation, § 22.62 (4th ed. 2004) ("The judge [in a complex litigation] will often need to appoint lead counsel or a committee of counsel to coordinate discovery and other pretrial preparation."). The two PSCs' responsibilities include initiating, coordinating, and conducting all pretrial discovery on behalf of plaintiffs; acting as a spokesperson for plaintiffs during pretrial proceedings; negotiating and entering into stipulations with defendant; developing and pursuing settlement options with defendant; creating a method for reimbursement for costs and fees for services; and dealing with liens on a national basis. *See In re Zyprexa Prods. Liab. Litig.*, No. 04-MD-01596, 2004 WL 3520245 (E.D.N.Y. June 17, 2004).

The large scope and high quality of the work being performed by PSC II for the common benefit of all plaintiffs entitle it to compensation beyond the court-limited fees earned by PSC attorneys for the representation of their individual clients. "The interests to be served [by lead counsel in a consolidated litigation] are too important to be left to volunteers (or draftees) who

are unpaid in the sense that they get nothing additional." *In re Air Crash Disaster*, 549 F.2d at 1016.

An objection has been posed to the establishment of a PSC II common benefit fund on the ground of prematurity. PSC II, as already noted, was established by the court on August 16, 2006, and it is argued that it has not yet made sufficient efforts on behalf of all plaintiffs to warrant common benefit compensation. The objection is factually inaccurate. The members of PSC II have conducted a significant amount of discovery.

The objectors also misstate the nature of the set-aside for a common benefit fund that PSC II is seeking. Should any amount be recovered by federal plaintiffs from defendant by settlement or judgment, a percentage of those plaintiffs' attorneys' fees will be held back in an escrow account. *See Smiley*, 958 F.2d at 500 (approving payment to lead counsel by individual plaintiffs' attorneys rather than plaintiffs themselves). Any lawyer who has worked for the common benefit of all federal Zyprexa plaintiffs, including but not limited to the members of PSC II, may apply for compensation from the common benefit account. Compensation will only be granted upon a showing that the attorney has provided significant assistance to all plaintiffs. Any amount remaining in the common benefit fund after all claims on it have been settled will be returned on a pro rata basis to the individual attorneys who paid a portion of their fees into the account.

The common benefit fund set-aside is a holdback, not a levy. *Cf. In re Zyprexa Prods. Liab. Litig.*, No. 04-MD-01596, 2006 WL 2792767, at *1 (E.D.N.Y. Sept. 28, 2006) (declaring "[t]he holdback amount is a cap on the state's recovery; it represents the maximum the state could receive."). A percentage of attorneys' fees will be withheld for use as compensation for

attorneys who can demonstrate that they worked for the common benefit of all Zyprexa plaintiffs. *See, e.g., Turner v. Murphy Oil*, 422 F. Supp. 2d 676, 681 (E.D. La. 2006) ("It is important to note that these are set-asides, not disbursements: no amounts are paid to attorneys from the set-aside fund until the attorneys demonstrate that they have worked for the common benefit."). Even if no common benefit compensation had yet been earned, there would be a need to put a holdback method into place promptly. "Without the entry of a set-aside order in advance of [i]ndividual [a]ction settlements or judgments, [i]ndividual [a]ctions could be dismissed after settlement or a judgment, requiring [lead counsel] to pursue separate compensation claims in any number of jurisdictions around the country." *In re Worldcom*, 2004 WL 2549682, at *4. "[I]t has been a common practice in the federal courts to impose set-asides in the early stages of complex litigation in order to preserve common-benefit funds for later distribution." *Turner*, 422 F. Supp. 2d at 680; *see also In re Linerboard*, 292 F. Supp. 2d at 668-69 (imposing percentage set-aside in antitrust MDL for lead counsel for plaintiffs); *In re Diet Drugs Prods. Liab. Litig.*, No. 1203, 1999 WL 124414, at *2 (E.D. Pa. Feb. 10, 1999) (imposing percentage set-aside in a pharmaceutical MDL for common benefit work).

The discovery that has taken place in this case since the court's lifting of a temporary stay of discovery put in place in June 2005 has been essentially for the benefit of the current plaintiffs, rather than the group of plaintiffs whose claims have already been settled. *See* Part II.D, *supra*, for discussion of any overlapping work for the benefit of the settled and non-settled cases.

The question of what percentage of attorneys' fees should be withheld from any amount received by plaintiffs from defendants, whether by judgment or settlement, has not been briefed. PSC II is requested to suggest an appropriate percentage as soon as possible, after consultation

12

with all interested attorneys and the special masters. The percentage should be determined quickly so that it is known to all plaintiffs whose cases may settle or otherwise be resolved in the near future. The federal percentage may provide guidance to any state courts and state plaintiffs who wish to achieve an equitable and fair parity between state and federal attorneys. *See* Part V, *infra*.

The parties, in consultation with the special masters, should promptly consider and make recommendations on how the common benefit fund is to be administered. There is no need to burden defendant Lilly with this chore; Lilly has no responsibility to provide for, or administer, the fund.

## V. Application of Law to Facts: State Cases

PSC II seeks to hold back for use in the common benefit fund a percentage of attorneys' fee recoveries in state cases where the state plaintiff's attorney also represents federal plaintiffs. The question of a federal court's power to impose a compensation scheme on state plaintiffs has apparently not been decided by the Court of Appeals for the Second Circuit. The only Court of Appeals to have squarely addressed the issue held that "a transferee court's jurisdiction in multi-district litigation is limited to cases and controversies between persons who are properly parties to the cases transferred, and any attempt without service of process to reach others who are unrelated is beyond the court's power." *In re Showa Denko K.K. L-Tryptophan Prods. Liab. Litig.*, 953 F.2d 162, 165-66 (4th Cir. 1992).

There is no need now to reach the issue of whether a federal MDL court has the power to compel attorneys who represent both state and federal plaintiffs to set aside a portion of their fee recoveries in state cases for use in a common benefit fund. Principles of comity and respect for

the state courts' supervision of their own dockets and the attorneys before them lead to the conclusion that such compulsion would be inappropriate at this time.

It must as a matter of equity, however, be recognized that much of the work performed, and to be performed, by PSC II on behalf of plaintiffs in the multi-district federal litigation will benefit state plaintiffs. This result is desirable. It will reduce the burden placed on the state-federal court structure by this mass litigation, and reduce unnecessary duplicitous work. *See, e.g., MacAlister v. Guterma*, 263 F.2d 65, 69 (2d Cir. 1958) ("The benefits achieved by consolidation and the appointment of general counsel, i.e. elimination of duplication and repetition and in effect the creation of a coordinator of diffuse plaintiffs through whom motions and discovery proceedings will be channeled, will most certainly redound to the benefit of all parties to the litigation."); *see also In re Zyprexa Prods. Liab. Litig.*, No. 04-MD-01596, 2006 WL 898105, at *1 (E.D.N.Y. Apr. 16, 2006) ("Coordination and cooperation between state and federal courts has been encouraged."); *In re Zyprexa Prods. Liab. Litig.*, No. 04-MD-01596, 2006 WL 197151 (E.D.N.Y. Jan. 30, 2006) (letter to state judges with Zyprexa cases from federal MDL judge suggesting coordination and cooperation); *In re Zyprexa Prods. Liab. Litig.*, No. 04-MD-01596, 2004 WL 3520248, at *4 (E.D.N.Y. Aug. 18, 2004) (directing defendant Lilly and PSC I to "confer regarding procedures for coordination of state court discovery with discovery in this MDL").

PSC II is directed to carry on the work of PSC I in coordinating its work with that of state courts. The special masters will continue to assist in this cooperative effort.

The benefits conferred on state plaintiffs as a result of PSC I's work in federal court were substantial. PSC II's contributions to state plaintiffs will include maintenance of a depository for

all documents produced by defendant in discovery, allowing free access to these documents to state plaintiffs. Whenever PSC II notices a deposition of a present or former employee of the defendant, defendant will cross-notice the deposition in every Zyprexa-related state court litigation. Attorneys for state cases have been, and shall be, permitted to participate fully in depositions. *See* Weiss Aff. ¶¶ 6, 9; Case Management Order No. 15, *In re Zyprexa Prods. Liab. Litig.*, No. 04-MD-01596, at 5 (E.D.N.Y. May 15, 2006) (directing MDL counsel to use best efforts to coordinate the scheduling of depositions with state court counsel, and providing for cross-noticing of depositions in federal and state court).

The leading attorneys handling state Zyprexa cases also represent federal MDL plaintiffs. *See* 11/1 Tr. at 7. Those attorneys are free to use relevant knowledge gained in the federal litigation for the benefit of their state clients. The court has consistently refused to erect any artificial barrier, or "Chinese wall," between the federal and state cases that would limit state attorneys' ability to profit from federal discovery. *Id.* at 31-32.

The issue of assessing state cases with the costs of a discovery process that benefits all cases, state and federal, should, in the first instance, be left to state court judges. This court has suggested that the parties voluntarily resolve the issue of payment for PSC II's work by agreeing that attorneys in state cases will assume an equitable proportionate share of the costs of discovery in this litigation.

## VI. Equity; Avoidance of Conflict of Interest

It would be equitable to require state plaintiffs' attorneys to pay their proportionate share of the time and costs incurred by PSC II in its work for the common benefit of all plaintiffs, state and federal. *See* Part V, *supra. Cf.* 28 U.S.C. § 1407(a) (district court's ultimate goal in

15

multidistrict litigation is to "promote the just and efficient conduct of such actions").

Such an arrangement would avoid the troubling potential for attorney conflict of interests that otherwise would exist: Attorneys face distorted incentives to file cases in state courts without respect for the best interests of their clients because the attorneys can use PSC II's work without paying for it out of their fees when in state court, but would have to pay their fair share if they were in federal court. In state court, they may also claim they can escape this court's limitation on their own direct fees, resulting in a smaller recovery for their state clients but an increase in their own fees. *See In re Zyprexa*, 424 F. Supp. 2d at 427.

## VII. Potential for Dubious Filings in Quasi-Class Action

### A. Problem Generally

Following settlement of over 8,000 cases with the aid of the special masters and PSC I, PSC II has engaged in extensive discovery including depositions to prepare for trial or possible settlement of the remaining thousands of cases. *See* Part II, *supra*. Intense settlement negotiations for all ongoing cases — state and federal — is continuing with the assistance of the settlement masters.

When a total settlement of a conglomerate mass quasi-class action is in the offing, some attorneys may seek out dubious cases for filings in order to take advantage of the prospective settlement, projecting possible leverage for increased fees resulting from threatened delays in achieving a final global disposition.

In order to understand the deleterious nature of any overhanging cloud of possibly inferior claims affecting the possibility of a final, total settlement, it is well to reflect for a moment on the recent history of mass litigation generally.

16

The Supreme Court, in a number of asbestos cases — at least as interpreted by some of the intermediate federal appeals courts and the bar — made utilization of class actions to finally dispose of a mass litigation more problematic. *See Ortiz v. Fibreboard Corp.*, 527 U.S. 815 (1999); *Amchem Prods. Inc. v. Windsor*, 521 U.S. 591 (1997). The problem was further exacerbated by the Court of Appeals for the Second Circuit's decision in *Stephenson v. Dow Chemical Co.*, 273 F.3d 249 (2d Cir. 2001), affirmed 4-4 by the Supreme Court, in *Dow Chemical Co. v. Stephenson*, 539 U.S. 112 (2003). Those cases made total closure of possible future claims by class action more difficult. *See Principles of the Law of Aggregate Litigation*, Preliminary Draft No. 4 (American Law Institute 2006) (for discussion purposes, not yet referred to ALI for adoption) (criticizing *Stephenson* for preventing final closure of a class action).

As a result of the dubious benefits available from class actions in resolving mass disputes, particularly in pharmaceutical cases, more defendants have now begun to embrace a form of quasi-class action to aggregate and settle cases, using masters, matrices and other administrative techniques. This has been the case in *In re Zyprexa Products Liability Litigation. See also In re Baycol Prods. Litig.*, No. MDL 1431, 2005 WL 2464940 (D. Minn. Oct. 03, 2005) (MDL litigation against pharmaceutical company Bayer Co. described as "the third largest MDL in the history of the United States with a total of 14,500 total cases filed"); *In re Rezulin Prods. Liab. Litig.*, 441 F. Supp. 2d 567 (S.D.N.Y. 2006) ("thousands of lawsuits for alleged personal injuries" allegedly resulting from use of prescription diabetes medication consolidated via MDL procedure).

A good faith attempt to resolve an entire dispute by defendant and plaintiffs' bar, which will provide fair compensation to plaintiffs and allow a pharmaceutical company to put a major

litigation behind it, and to get on with its main work of producing pharmaceuticals, becomes more difficult when there is no clear way to end finally the whole litigation. It is the unresolved tail of future cases that presents the problem.

Few want to see new examples of lack of final closure such as that in the almost never-ending asbestos cases, and the essentially unfounded breast implantation cases — that led to so many unnecessary bankruptcies — repeated in a case like the present one. *See, e.g., In re Breast Implant Cases*, 942 F. Supp. 958 (E.D.N.Y and S.D.N.Y. 1996); *Jennings v. Baxter Healthcare Corp.*, 14 P.3d 596 (Or. 2000); Rhonda L. Rundle & Anna W. Mathews, *Breast Implants Made of Silicone Win FDA Backing*, Wall St. J., Nov. 18, 2006, at A1 ("Nearly 15 years after banning silicone breast implants in most cases, the Food and Drug Administration approved revamped implants at a time of soaring demand for cosmetic surgery. Many of the original marketers, who lost billions of dollars in lawsuits related to allegedly flawed silicone implants, are long out of the business.").

While this court expressed skepticism at the outset of the litigation with respect to the merits of some of the current Zyprexa claims, *see* Tr. of Status Conf., 27-31 (E.D.N.Y. June 15, 2004), it makes no finding now about the merits of any future cases following a global settlement. The change in Zyprexa's label in September 2003, as ordered by the federal Food and Drug Administration, makes less viable, on statute of limitations grounds, such future cases.

The transferee court will address motions for summary judgment as well as the trials now scheduled to determine the merits of individual non-settled cases. Should plaintiffs win judgments after trial or after summary judgment, they will be entitled to fees and disbursements. Should plaintiffs lose on the merits, they will be liable for fees and disbursements.

18

B. Potential for Sanctions and Cost Sharing by Counsel

Since Zyprexa is primarily designed for schizophrenics, and the disease claimed is diabetes with its sometimes terrible consequences, many of the plaintiffs may not be in a position to pay fees and disbursements awarded against them. Since this is a mass action, where the court has substantial equitable powers, a question may be raised as to whether a party may seek reimbursement for fees and disbursements in the first instance from attorneys who may have instituted unfounded claims or defenses. *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991) (a court has, as part of its inherent power, the ability to impose sanctions for improper conduct, including the imposition of reasonable costs and attorneys' fees, where a party has "acted in bad faith, vexatiously, wantonly, or for oppressive reasons."); *Nemeroff v. Abelson*, 704 F.2d 652, 654 (2d Cir.1983) (district court entitled to find bad faith, and thereby award attorneys' fees to prevailing defendants, where plaintiff filed and continued lawsuit based upon unsubstantiated rumors and there was no adequate factual basis for his claim). *Cf. In re Enron Corp. Securities, Derivative & "ERISA" Litig.*, - - F. Supp. 2d - - , 2006 WL 3474980, at *5 (S.D. Tex. Nov. 30, 2006) ("It appears to this Court . . . that the summary judgment briefing should not have been necessary and the continuance of the claim against [defendant] was at that point without merit. Accordingly, the Court finds that an award of fees and costs [charged against the plaintiffs' attorneys and] related to the summary judgment stage of the litigation only should be granted to [defendant].").

The inherent power of the court to impose sanctions should be limited to cases where "neither the statute nor the Rules are up to the task." *Chambers*, 501 U.S. at 51. Sanctions may be imposed under 28 U.S.C. § 1927 against any attorney who "multiplies the proceedings in any

case unreasonably and vexatiously." 28 U.S.C. § 1927. Like an award made pursuant to the court's inherent power, an award under § 1927 is proper when the attorney's actions are so plainly without merit as to require the conclusion that they must have been undertaken for some improper purpose. *See, e.g., Oliveri v. Thompson*, 803 F.2d 1265, 1273 (2d Cir.1986) (police photographs of client taken an hour after incident in which police officers allegedly employed excessive force in taking client into custody did not constitute such clear evidence of absence of excessive force to render client's attorney liable for his adversary's attorney's fees as a result of bad faith); *Acevedo v. Immigration and Naturalization Serv.,*, 538 F.2d 918, 920 (2d Cir.1976) (holding petition seeking review of motion to reopen deportation hearing, in the absence of new evidence, as without merit under § 1927 since petitioner was not entitled to reopen except on showing of significant new evidence). "[T]he only meaningful difference between an award made under § 1927 and one made pursuant to the court's inherent power is . . . that awards under § 1927 are made only against attorneys or other persons authorized to practice before the courts while an award made under the court's inherent power may be made against an attorney, a party, or both." *Oliveri*, 803 F.2d at 1273.

Courts have sanctioned attorneys under § 1927 for the filing and prosecution of a lawsuit that they have determined meritless. *See Overnite Transp. Co. v Chicago Industrial Tire Co.* 697 F.2d 789 (7th Cir. 1983); *Harrell v. Joffrion*, 73 F.R.D. 267, 268 (W.D. La. 1976) (where plaintiff's counsel presented medical malpractice case which he knew, or as a medical doctor reasonably should have known, was frivolous, court assessed against counsel personally all usual court costs pursuant to § 1927). Such cases are limited to situations where the suit was without either a legal or a factual basis and the attorney was or should have been aware of this fact.

20

*Overnite Transp.,* 697 F.2d at 795. The rule should be applied to both plaintiffs' and defendant's counsel.

Another basis for a court's sanction of attorneys before it is provided by Rule 11 of the Federal Rules of Civil Procedure. Rule 11 permits a federal court, after a reasonable inquiry, to impose sanctions against an attorney or party who signs a pleading, motion, or other paper that is not well grounded in fact or warranted by existing law. Fed. R. Civ. P. 11(a). In the event that this Rule is violated, the court, upon a motion or upon its own initiative, must impose an appropriate sanction, which may include an order to pay to the other party the amount of reasonable expenses and attorneys' fees incurred because of the improper filing. *Id.* While a continuing prohibition against dilatory litigation is imposed by § 1927, Rule 11, by contrast, provides a lower threshold for sanctions for the violation of the implicit certification invoked by the signature. *See Nuwesra v. Merrill Lynch, Fenner & Smith, Inc.,* 174 F.3d 87, 91 (2d Cir. 1999) (district court declined to award attorneys' fees under either 28 U.S.C. § 1927 or the court's inherent powers based on its finding that "there has been an insufficient showing of complete bad faith in bringing this action," but awarded attorneys' fees and costs pursuant to Rule 11) (internal quotation omitted).

Under Rule 11, courts assess whether an attorney's conduct was objectively reasonable at the time he or she signed the pleading, motion or other paper. *See Oliveri,* 803 F.2d at 1274-75; *United States v. International Bhd. of Teamsters,* 948 F.2d 1338, 1344 (2d Cir.1991) (the substantive requirement imposed on an attorney by Rule 11 is that "[p]leadings, motions, and other papers must be justifiable *at the time they are signed*"). Rule 11 violations lie where it is patently clear that a claim has absolutely no chance of success under the existing precedents, and

where no reasonable argument can be advanced to extend, modify or reverse the law as it stands. *See Eastway Constr. Corp. v. City of New York,* 762 F.2d 243, 253-54 (2d Cir.1985) (decided prior to amendments to Rule); *Cf. In re Enron,* 2006 WL 3474980 at *5 ("non-attorney clients more likely than not would not have the ability to determine at what point, based on what evidence, an action becomes legally 'frivolous,' while its licensed counsel should and is held to such a standard").

In general, Rule 11 does not contemplate an award of attorney fees to the opposing party by the court acting *sua sponte. See Nuwesra,* 174 F.3d at 91. In *Nuwesra,* the district court declined to award attorneys' fees under either 28 U.S.C. § 1927 or the court's inherent powers based on its finding that "there has been an insufficient showing of complete bad faith in bringing this action." *Id.* Instead, the district court, on its own initiative, ordered the plaintiff's attorney to pay attorneys' fees to the defendants "for his ongoing failure to make reasonable inquiries in the papers he filed before the court, from the complaint onward." *Id.* The Second Circuit remanded, holding that the district court had no authority under Rule 11(c)(1)(B) to award attorneys' fees to defendants *sua sponte,* but it could require payment into courts. *Id.* at 94 ("Where sanctions are imposed under Rule 11(c)(1(B) by the district judge on his own initiative, Rule 11(c)(2) provides that payment of sanctions may be directed only to the court as a penalty.").

The court has discretion in fashioning an appropriate sanction for a Rule 11 violation. Critical to the exercise of this discretion is the purpose of the sanctioning mechanism of Rule 11: it is not a reimbursement, but instead a sanction. *See Eastway,* 821 F.2d at 125 (the plain language of Rule 11 "establishes that an appropriate 'sanction' and 'a reasonable attorney's fee' are

22

not synonymous") (decided prior to amendment of the Rule), *cert. denied,* 484 U.S. 918 (1987).

In circumstances where the litigant causes unnecessary delay or needless increase to the cost of litigation, the typical sanction is the payment of the other side's reasonable attorney's fees which were incurred as a result of the improper filing. *See Eastway,* 821 F.2d at 123 (reasonable attorneys' fee permissible under both 42 U.S.C. § 1988 and Rule 11 where civil rights claim and antitrust claim presented against municipal defendants were both frivolous). Since the purpose of Rule 11 is to deter rather than compensate, the monetary sanction it contemplates should ordinarily be paid into the court as penalty. *See Nuwesra,* 174 F.3d at 94.

The issue of sanctions need not be decided at this time. The court assumes that there will be no effort to spoil a fair settlement through new unfounded claims.

## VIII. Application of All Orders to Pending Cases

### A. Law

Many of the cases pending in this court have been transferred here via the MDL procedure from federal courts around the country to which the cases will be remanded once they are ready to be tried, should they not be first settled or dismissed. Many cases have been removed from state court, and some of those are subject to a pending motion to remand.

The orders of the transferee court are binding on all cases pending before it, and those which may be transferred to it as tag-along matters, notwithstanding that those cases may ultimately be adjudicated in the federal and state courts in which they originated. *See* 28 U.S.C. § 1407(b) ("the judge . . . to whom such [MDL] actions are assigned . . . . may exercise the powers of a district judge in any district"); 14C Charles Alan Wright & Arthur R. Miller, Federal

Practice and Procedure § 3738 (3d ed. 1998) ("After the removal of an action from state court, the federal district court acquires full and exclusive subject matter jurisdiction over the litigation. The case will proceed as if it had been brought in the federal court originally."); *see also* Tr. of Hr'g, 106, 112-14 (E.D.N.Y. Nov. 20, 2006).

Orders issued by a federal transferee court remain binding if the case is sent back to the transferor court, *see* Manual for Complex Litigation § 20.133, as well as where the federal case is remanded to state court. *See* Moore's Fed. Practice, § 107.43 (3d ed. 2003) ("Typically, the state court will give effect to all pleadings filed in federal court and to all rulings made by the federal court while the case was in federal court."); *see, e.g., Ruhrgas AG v. Marathon Oil Co.,* 526 U.S. 574, 585-86 (1999) ("Assuming a fair airing of the issue in federal court, that court's ruling on permissible state-law damages may bind the parties in state court, although it will set no precedent otherwise governing state-court adjudications."); *Wagh v. Metris Direct, Inc.,* 348 F.3d 1102, 1112-13 (9th Cir. 2003), *as amended,* 352 F.3d 1187 (9th Cir. 2003) (ruling that federal court's dismissal of plaintiff's RICO claim had preclusive effect when case was remanded to state court and plaintiff was therefore barred from re-litigating the claim in state court).

With respect to the specific situation of a case remanded to state court based on the federal court's finding that it lacked jurisdiction to adjudicate, "[a] final determination of lack of subject matter jurisdiction of a case in a federal court, of course, precludes further adjudication of it. But such a determination does not automatically wipe out all proceedings had in the district court at a time when the district court operated under the misapprehension that it had jurisdiction." *Willy v. Coastal Corp.,* 503 U.S. 131, 137 (2001).

In exceptional cases, the federal or state court to which an MDL case is remanded may

24

revisit a transferee court's decision. *See* Manual for Complex Litigation § 20.133 ("Although the transferor judge has the power to vacate or modify rulings made by the transferee judge, subject to comity and 'law of the case' considerations, doing so in the absence of a significant change of circumstances would frustrate the purposes of centralized pretrial proceedings.").

A federal transferee court's determination of collateral procedural issues (such as limitations placed on attorneys' fees), which do not implicate the merits of the case, remain binding and are ordinarily not subject to further review when the case is remanded to a federal transferor court. *See Walitalo,* 968 F.2d at 747-48 ("the district court did not err in specifying how the originating trial courts should calculate the amount of lead and liaison counsel's fees in those cases remanded for trial . . . the district court appointed lead and liaison counsel and thus had authority to determine the amount of their compensation").

The federal rulings also apply to a case remanded to state court upon a finding that the federal court lacked subject matter jurisdiction over the case. *See Willy,* 503 U.S. at 137-38 (holding that Rule 11 sanctions imposed by district court remained in effect after case was remanded to state court upon a finding that district court lacked subject matter jurisdiction over the case). "[I]t is well established that a federal court may consider collateral issues after an action is no longer pending . . . . Such an order implicates no constitutional concern because it 'does not signify a district court's assessment of the legal merits of the complaint.' It therefore does not raise the issue of a district court adjudicating the merits of a 'case or controversy' over which it lacks jurisdiction." *Id.* at 138 (citation omitted) (*quoting Cooter & Gell v. Hartmarx Corp.,* 496 U.S. 384 (1990)).

B. Application of Law to Facts: Fees

"[I]t is clear than an award of attorney's fees is a collateral matter over which a court normally retains jurisdiction even after being divested of jurisdiction on the merits." *Moore v. Permanente Med. Group., Inc.*, 981 F.2d 443, 445 (9th Cir. 2003); *see also Mints v. Educ. Testing Serv.*, 99 F.3d 1253, 1258 (3d Cir. 1996) (holding "the divesting of jurisdiction by the mailing of a certified copy of the order of remand does not preclude the award of attorney's fees and costs"). This court's rulings on fee matters in the instant litigation will remain in effect should any of the cases now pending here eventually be remanded to a state or another federal court.

The common benefit fund fee set-aside imposed by this order shall apply to all cases pending — or to be pending — in this MDL, regardless of whether any of those cases are eventually remanded to state court or transferred to a federal court. *See Walitalo*, 968 F.2d at 747; *In re Air Crash Disaster*, 549 F.2d at 1019 ("Normally [originating trial courts] would have the power to fix compensation between competing attorneys. In a practical sense [the MDL transferee court] was the only tribunal that could effectively handle the fee matter. It would have been unfeasible and irrational, and demeaning to the authority of the appointing court, to remit the [plaintiffs' steering] Committee to appearing all over the country . . . to present prayers for compensation."). The caps placed on attorneys' fees in this multi-district litigation, *see In re Zyprexa*, 424 F. Supp. 2d at 496-97, apply to all cases which have been, or will be, in this transferee court, and will continue to be binding if and when those cases are remanded to transferor federal courts or state courts.

### C. Application of Law to Facts: Fact Sheets and Orders of Special Masters

For the reasons indicated in Part VIII.B, *supra*, orders requiring plaintiffs' attorneys to

file "fact sheets" to assist in discovery and settlement remain in effect. It is the court's understanding that all plaintiffs in the MDL — including those whose cases are subject to a pending remand motion — are complying with case management orders, including the fact sheet requirement. *See* Tr. of Hr'g, 106, 112-14 (E.D.N.Y. Nov. 20, 2006). If they have not yet complied, they should do so promptly.

Every case currently before this court must comply with all of the court's, magistrate judge's, and special masters' orders, even if a motion to remand is pending.

## IX. Conclusion

The motion by PSC II to establish a common benefit fund is granted insofar as it extends to attorneys' fees recovered in cases pending now or in the future in federal court. PSC II shall, after consultation with the special masters for settlement, and state and federal case attorneys, suggest details of funding and administration for the common benefit fund.

The motion is denied with respect to set-asides for attorneys' fees in state cases.

Attorneys with motions to remand pending shall file with the court fee agreements in each case in which a remand motion has been made to ensure that this court's fee orders are being executed.

SO ORDERED.

Jack B. Weinstein

Dated: December 5, 2006
      Brooklyn, New York