UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------x

In re: ZYPREXA
PRODUCTS LIABILITY LITIGATION

----------------------------------------------------------x

THIS DOCUMENT RELATES TO:

ALL ACTIONS

----------------------------------------------------------

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT, E.D.N.Y.
★ DEC 08 2006 ★
BROOKLYN OFFICE

MEMORANDUM & ORDER
MOTION TO REMAND;
PROPOSED STATUTORY
AMENDMENT

04-MD-01596 (JBW)

Jack B. Weinstein, Senior United States District Judge:

## I. Introduction

A motion has been made to remand over two thousand pending cases to state courts. After the settlement of some eight thousand cases, the remand motion involves approximately a quarter of this court's current MDL docket in *In re Zyprexa Prods. Liab. Litig.*, No. 04-MD-01596. Argument on the motion revealed the need for further briefing. *See* Part II, *infra*.

The extent and nature of the motion suggests serious problems in supervising a massive quasi-class action of this kind. *See* Part III, *infra*. A possible legislative partial solution is suggested. *See* Part IV, *infra*.

## II. Supplemental Briefs

The parties are invited to submit supplementary briefs on any of the following issues, along with any others they wish to raise, by January 8, 2007:

1) What weight on the issue of preemption, if any, should be ascribed to the recent statement by the Food and Drug Administration ("FDA") that the "FDA believes that under existing preemption principles, FDA approval of labeling under the act...preempts conflicting or



contrary state law." *Requirements on Content and Format of Labeling for Human Prescription Drug and Biologic Products*, 71 Fed. Reg. 3922, 3934-35 (Jan. 24, 2006).

2) Whether the failure of defendant, Eli Lilly & Company, to explicitly rely in its notices of removal on the plaintiff's reference to alleged Food Drug and Cosmetic Act violations in paragraph 85 of the *Partin v. Eli Lilly & Company* complaint prevents this court from considering the alleged violation as a basis for federal question jurisdiction.

### III. Issue of Transactional Costs in Quasi-Class Actions

Supporting removal, defendant relied on Judge Saris' recent opinion in *In re Pharmaceutical Industry Average Wholesale Price Litigation*, MDL No. 1456, 2006 WL 3019193 (D. Mass. 2006). There it was suggested that in a mass litigation before an MDL court, decision of federal question jurisdiction should take into account the large number of cases pending in federal court when determining whether the court's finding of jurisdiction will disrupt the existing balance of state and federal judicial responsibilities. *See In re Pharmaceutical Industry*, 2006 WL 3019193, at *4 ("Here, 'raising Arizona' from state to federal jurisdiction is unlikely to upset any balance because of the substantial number of similar cases that are already pending in federal courts."); *see generally Grable & Sons Metal Products, Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308 (2005) ("the federal issue will ultimately qualify for a federal forum only if federal jurisdiction is consistent with congressional judgment about the sound division of labor between state and federal courts").

Like many MDL cases, the instant action can, as a practical matter, be characterized as a quasi-class action. *See In re Zyprexa Prods. Liab. Litig.*, No. 04-MD-01596, 2006 WL 2590402 (E.D.N.Y. 2006) (requiring state Medicaid lienholders to pay a proportionate share of attorneys'

fees and costs incurred in procuring settlement of Medicaid beneficiary plaintiffs' claims); *In re Zyprexa Prods. Liab. Litig.*, 233 F.R.D. 122 (E.D.N.Y. 2006) ("The large number of plaintiffs subject to the same settlement matrix approved by the court, the utilization of special masters approved by the court to control discovery and assist in and administer settlement, and the order of the court for a huge escrow arrangement and other interventions by the court reflect a degree of control requiring exercise by the court of fiduciary standards to ensure the fair treatment to all parties and counsel regarding fees.") It involves over ten thousand claims being administered in state courts and the federal courts under the Multidistrict Litigation program. Most have been settled with the aid of four settlement masters, a special master to supervise discovery, and plaintiffs' committees of attorneys ("Plaintiffs' Steering Committee" or "PSC") that has collected millions of documents in discovery and made them available to attorneys in all state and federal cases. *See In re Zyprexa Prods. Liab. Litig.*, No. 04-MD-01596, 2006 WL 3495667, *2-*4 (E.D.N.Y. Dec. 5, 2006).

The procedures utilized would have been available in a class action designed to minimize transactional costs; provide uniform national compensation standards; permit relatively prompt payment to claimants; and afford full closure to a defendant willing to pay reasonable compensation to those it allegedly injured, enabling it to put litigation behind it so it can proceed with its commercial activities — here, selling its pharmaceuticals.

Interpretation of a number of Supreme Court opinions have reduced the effectiveness of the class action as a means of settling a mass conflict. *See Ortiz v. Fibreboard Corp.*, 527 U.S. 815 (1999); *Amchem Products Inc. v. Windsor*, 521 U.S. 591 (1997); *Stephenson v. Dow Chemical Co.*, 273 F.3d 249 (2d Cir. 2001), *aff'd* 4-4, *Dow Chemical Co. v. Stephenson*, 539

U.S. 112 (2003). This development has let a number of judges and attorneys, particularly in pharmaceutical cases, to attempt mass settlements on a consolidated and cooperative basis without the formalities of a class action. The substitute quasi-class action aggregate technique has advantages and is being closely studied. *See Principles of the Law of Aggregate Litigation*, Preliminary Draft No. 4 (American Law Institute 2006) (for discussion purposes, not yet referred to ALI for adoption).

Avoiding formal Rule 23 class actions presents serious pitfalls. One is the possibility that new cases, and attorneys, will be attracted to the honey pot of the litigation after all, or almost all, of the well-founded cases have been disposed of. Only the Rule 23 class action can provide full closure in many litigations. Were all cases in a mass dispute funneled to one venue via the MDL program, or its statewide equivalent in state-centered cases, the problems might be somewhat ameliorated: the court's and the attorneys' familiarity with the issues and history of the litigation would enhance their ability to properly dispose of all possible claims.

Most would agree that a reprise of the asbestos litigation with an almost uncontrolled search by plaintiffs' attorneys for new cases and new parties, ultimately exhausting the courts and bankrupting industries, ought not be encouraged. But, as the instant remand motion suggests, there is a centrifugal force in a pharmaceutical quasi-class action driving some attorneys to bring new cases in many state courts and to remand federal cases in order to prevent effective national aggregation and consolidation.

This court, as has been the tendency in MDL cases generally, has attempted to cooperate with the state courts which have Zyprexa cases.

- All the orders issued in the MDL litigation have been forwarded to relevant state

judges with offers of this court to cooperate.

- Special Master Peter Woodin, pursuant to oral directions of this court, has been in touch with state judges by telephone and by providing copies of relevant orders to keep them abreast of developments and offer his service.

- This court has ordered that all materials collected by PSC I and PSC II in the MDL proceeding be made available without charge for use in the state cases.

- This court has urged the parties to cooperate in coordinating the state and federal cases----especially in reducing duplicitous discovery, providing uniform matrices for fees and settlements, and achieving national uniform treatment of Medicare and Medicaid liens.

- Special Masters for settlement have been orally instructed to coordinate ongoing settlement arrangements to, if practicable, dispose of all cases, federal and state.

Despite these efforts, the informal nature of much of the work leaves open the possibility that new cases will continue to be attracted to the Zyprexa lode as a relatively easy way of acquiring fees in a mature mass litigation. The sprawling nature of the possible multifarious state actions provides a continuous hazard to useful termination of the litigation.

## IV. Possible Legislative Solution

Some of the stumbling blocks that concurrent jurisdiction over mass actions by state and federal courts can place on the road to a final global settlement have been removed by Congress in some formal, Rule 23, class action proceedings. The Class Action Fairness Act of 2005 ("CAFA" or "the Act") is a good example of legislative efforts to allow mass national litigation to proceed on a consolidated basis in a single forum. CAFA provides federal courts with

exclusive jurisdiction over class actions in which the amount in controversy exceeds five million dollars, and any member of the plaintiff class is a citizen of a different state than any defendant, unless two-thirds or more of plaintiffs and primary defendants are citizens of the state in which the class action was originally filed. 28 U.S.C. §§ 1332(d), 1453, 1711-1715. Part of the legislative impetus for the Act was the recognition that the resolution of some multi-state mass actions of national import was being hindered by concurrent adjudication in state and federal courts. As the Senate Judiciary Committee put it:

> Because interstate class actions typically involve more people, more money, and more interstate commerce ramifications than any other type of lawsuit, the Committee firmly believes that such cases properly belong in federal court. To that end, this bill (a) amends section 1332 to allow federal courts to hear more interstate class actions on a diversity jurisdiction basis, and (b) modifies the federal removal statutes to ensure that qualifying interstate class actions initially brought in state courts may be heard by federal courts if any of the defendants so desire. Thus, S. 5 makes it harder for plaintiffs' counsel to 'game the system' by trying to defeat diversity jurisdiction, creates efficiencies in the judicial system by allowing overlapping and 'copycat' cases to be consolidated in a single federal court, places the determination of more interstate class action lawsuits in the proper forum--the federal courts.

Staff of S. Comm. on the Judiciary, 109th Cong., *Report on The Class Action Fairness Act of 2005* (Comm. Print 2005) ("Senate CAFA Report").

A similar impulse motivated Congress's passage of the Securities Litigation Uniform Standards Act of 1998 ("SLUSA"). Pub. L. No. 105-353, 112 Stat. 3227 (1998). "When Congress enacted [SLUSA}, it tried to 'make [the] Federal court the exclusive venue for securities class actions.'" Mitchell A. Lowenthal & Timothy M. Haggerty, *Securities Act Class Action: SLUSA Nixes State Jurisdiction*, 236 N.Y. L. J. 4 (Nov. 29, 2006) (*quoting* Hearing of

6

the Finance and Hazardous Materials Subcommittee of the House Commerce Committee (May 1998) (comments of Rep. Thomas J. Bliley, Jr.)). There was a concern that concurrent jurisdiction allowed state litigants to avoid the checks on abusive litigation put into place by the federal Private Securities Litigation Reform Act of 1995, leading to inconsistent and inequitable results.

> [T]he PSLRA, which requires the appointment of a single 'lead' plaintiff, may be disarmed by opportunistic litigants looking for the most favorable forum. Courts have noted the practical and logical flaws of this conclusion, warning that 'concurrent class actions in state and federal court asserting substantially similar claims ... could lead to considerable confusion if not outright inconsistent results.

Lowenthal & Haggerty at 8 (*quoting In re King Pharmaceuticals, Inc.*, 230 F.R.D. 503, 505 (E.D. Tenn. 2004)).

Both CAFA and SLUSA recognize the desirability of consolidating and adjudicating the many cases that form a mass national litigation in a single forum. The drafters of CAFA found the federal forum to be appropriate for cases that involve national interstate interests and affect interstate commerce, like the present one involving a large multi-national pharmaceutical company. *See* Senate CAFA Report; Edward F. Sherman, *Class Actions After the Class Action Fairness Act of 2005*, 80 Tul. L. Rev. 1593, 1595 (2006) ("corporations that do business in multiple states complained that they were subjected to national or multistate class actions in state courts that could thereby establish legal standards that would govern their activities throughout the country").

It may be useful for Congress to consider expanding the Class Action Fairness Act from class actions to at least some national MDL, non-Rule 23, aggregate actions. As use of the class

action device to aggregate claims has become more difficult, MDL consolidation has increased in importance as a means of achieving final, global resolution of mass national disputes. *See* Part II, *supra*. Much the same concerns which animated CAFA's preference for a single, federal forum apply to national MDL aggregate actions.

SO ORDERED.

Jack B. Weinstein

Dated: December 7, 2006
      Brooklyn, New York