

# KOOB & MAGOOLAGHAN
*Attorneys at Law*

| SOUTH STREET SEAPORT | 19 FULTON STREET | SUITE 408 | NEW YORK, NEW YORK 10038 |
|---|---|---|---|
| TELEPHONE: (212) 406-3095 | | | FACSIMILE: (212) 349-4658 |

ELIZABETH L. KOOB
JOAN MAGOOLAGHAN
ALEXANDER A. REINERT
MARISA C. BOULOS*
* ADMITTED IN MA ONLY

WESTCHESTER COUNTY OFFICE:
221 DEVOE AVENUE
YONKERS, NEW YORK 10705
TEL: (914) 964-8888

**By facsimile**

December 28, 2006

The Honorable Jack B. Weinstein
Senior United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

**FILED**
IN CLERK'S OFFICE
U.S. DISTRICT COURT, E.D.N.Y.
★ JAN 0 4 2007 ★
BROOKLYN OFFICE

RE: In Re: Zyprexa Litigation, MDL No. 1596

Dear Judge Weinstein:

Our office, along with Edward W. Hayes, represents Dr. David Egilman with respect to his disclosure to Mr. Jim Gottstein, pursuant to subpoena, of certain documents produced in discovery in the above-referenced matter. We write in response to Eli Lilly's letter dated December 26, 2006, requesting emergency relief to develop the "factual predicate" for its motion seeking to hold Dr. Egilman in contempt of Court for his alleged violation of CMO-3. Defendant Eli Lilly & Company ("Eli Lilly") alleges that Dr. Egilman's disclosure of the documents in response to Mr. Gottstein's December 6 subpoena violated Case Management Order No. 3 ("CMO-3"), entered August 3, 2004 by this Honorable Court. Rather than initiate a contempt proceeding against Dr. Egilman, however, Eli Lilly seeks first to compel Dr. Egilman to provide testimonial and other evidence for its use in the contempt proceeding. As set forth below, Eli Lilly's request is unprecedented and conflicts with fundamental principles of due process. Accordingly, we respectfully request that defendant's request be denied, or in the alternative that the Court postpone any decision regarding the request so that the parties may more fully brief the important issues raised herein.[1]

As an initial matter, we note that any party seeking to establish contempt bears a "heavy" burden. See Air-Products and Chemicals, Inc. v. Inter-Chemicals, Ltd., No. 03 Civ. 6140, 2005 WL

---

[1] To the extent the Court is concerned that any "evidence" in Dr. Egilman's possession be preserved pending the outcome of such briefing, we represent that Dr. Egilman will retain any materials which he currently possesses, or which he comes to possess in the future, which are responsive to Item No. 2 in Eli Lilly's proposed Order to Show Cause.



The Hon. Jack B. Weinstein
December 28, 2006
Page 2

196543, *3 (E.D. Pa. Jan. 27, 2005); cf. Perez v. Danbury Hosp., 347 F.3d 419, 423 (2d Cir. 2003) (district court's contempt power is "narrowly circumscribed," necessitating a more "exacting" appellate review than other discretionary decisions). To establish civil contempt, which is generally compensatory in nature, the movant bears the burden of presenting "clear and convincing" evidence that the alleged contemnor has violated a "clear and unambiguous" judicial order. Fonar Corp. v. Deccaid Servs., Inc., 983 F.2d 427, 429 (2d Cir. 1993); Hess v. New Jersey Transit Rail Operations, Inc., 846 F.2d 114, 115 (2d Cir.1988) (explaining that "[n]o one may be held in contempt for violating a court order unless the order is clear and specific and leaves no uncertainty in the minds of those to whom it is addressed"); Littlejohn v. BIC Corp., 851 F.2d 673, 683-84 (3d Cir. 1988); Lesco v. Masone, No. 05 Civ. 3207, 2006 WL 2166862, *5 (E.D.N.Y. July 27, 2006). To establish criminal contempt, which results in the imposition of punitive sanctions, the movant must establish beyond a reasonable doubt that the contemnor violated a similarly specific judicial order. Mackler Productions, Inc. v. Cohen, 225 F.3d 136, 142 (2d Cir. 2000); United States v. NYNEX Corp., 8 F.3d 52, 54 (D.C. Cir. 1993) (requiring willful violation of specific order).

Because of the serious nature of contempt charges, certain procedural protections apply depending on the nature of the contempt proceeding. In civil contempt proceedings, the alleged contemnor is entitled to notice of the grounds for the contempt and an opportunity to be heard, but is not obliged to present any evidence should the movant fail in establishing any of the three elements of contempt.[2] Perez, 347 F.3d at 423 (movant has burden of proof); Electrical Workers Pension Trust Fund v. Gary, 340 F.3d 373, 379 (6th Cir. 2003) (burden of proof and production rests with movant); see generally International Union, United Mine Workers of America v. Bagwell, 512 U.S. 821, 826-34 (1994) (discussing difference in protections provided for criminal versus civil contempt). In the criminal contempt context, even more protections apply, including "the right to a public trial, the assistance of counsel, the presumption of innocence, the privilege against self-incrimination, and the requirement of proof beyond a reasonable doubt." Mackler Productions, Inc. v. Cohen, 225 F.3d 136, 142 (2d Cir. 2000); see also Bloom v. Illinois, 391 U.S. 194 (1968) (criminal procedural protections apply to criminal contempt proceedings). In no event may the movant rely on unsworn assertions to establish the critical elements of civil or criminal contempt. Mackler Productions, 225 F.3d at 146 (it is error to rely on unsworn assertions to establish sanctions in contempt). And to support claims for damages, the movant must provide concrete evidence of harm. Mingoia v. Crescent Wall Sys., No. 03 Civ. 7143, 2005 WL 991773, *5 (S.D.N.Y. April 26, 2005).

For these reasons, courts have emphasized the importance early on of indicating whether the contempt proceedings are criminal or civil in nature, so that the appropriate procedural and substantive protections may be provided to the alleged contemnor. In re Jessen, 738 F. Supp.

---

[2] Obviously, should the alleged contemnor invoke a defense in the contempt proceeding, such as an inability to comply with the subject Order, he or she bears the burden of production of evidence related to that defense. E.g., United States v. Rylander, 460 U.S. 752 (1983); Paramedics Electromedicina Comercial, Ltda v. GE Medical Systems Information Technologies, Inc., 369 F.3d 645 (2d Cir. 2004).

960, 962 (W.D.N.C. 1990); cf. Ashcraft v. Conoco, Inc., 1998 WL 404491, *2 n.2 (E.D.N.C., Jan. 21, 1998), rev'd on other grounds, 218 F.3d 288 (4th Cir. 2000). This is because the determination often requires asking what remedy the Court has been asked to impose after finding contempt. Hess v. New Jersey Transit Rail Operations, Inc., 846 F.2d 114, 115 (2d Cir. 1988) (sanction of as little as $1000 considered exercise of criminal contempt power because purpose was to punish for past violations). Here, however, Eli Lilly asks this Court to force Dr. Egilman to provide evidence in relation to their anticipated contempt motion before they have even provided notice of the grounds for the contempt, or the type of contempt sought (although we note that Eli Lilly's letter refers to "sanctions," an indication of punitive intent). We can find no case which approves of such pre-filing discovery against an alleged contemnor, and Eli Lilly cites none. At the very least, Eli Lilly should be required to provide notice of the grounds and basis for their anticipated contempt motion prior to seeking the emergency relief requested here.

Were the Court to grant Eli Lilly's pending request, without even indicating the nature or basis for the contempt proceedings, it would impermissibly shift the burden of proof and production from Eli Lilly to Dr. Egilman, and possibly undermine substantial procedural rights retained by our client. While we are cognizant of the important nature of the underlying dispute, no exigent circumstance has been pointed to which mandates such a rush to violate important substantive rights retained by Dr. Egilman. As Eli Lilly knows, Dr. Egilman has returned all documents in his possession which were covered by the CMO-3, he has destroyed any electronic files containing such documents, and The Lanier Law Firm has indicated that it will no longer use Dr. Egilman as a consulting expert in this matter. Should Eli Lilly believe that it has grounds to move for contempt against Dr. Egilman, it should file such papers as are necessary to initiate such proceedings, and it should be put to the appropriate burden of proof.

We also wish to take some time to respond to the skewed rendition of the "facts" contained in Eli Lilly's December 26 submission. For instance, Eli Lilly's letter refers to an agreement between Mr. Gottstein and Dr. Egilman to "go out and find a case that could be used as a vehicle to subpoena the Zyprexa documents from Dr. Egilman" which Mr. Gottstein allegedly recounted December 18, 2006, at a hearing that Dr. Egilman received no notice of and at which he was not represented.[3] Putting aside Eli Lilly's failure to provide Dr. Egilman with notice of the hearing, review of the hearing transcript nowhere indicates that Dr. Egilman engaged in the behavior alleged by Eli Lilly.

Similarly, Eli Lilly's apparent contention that the CMO-3 "clearly and unambiguously," Fonar Corp., 983 F.2d at 429, called for Dr. Egilman to notify the Pepper Hamilton law firm rather than Eli Lilly itself is questionable. The CMO-3 refers nowhere to the Pepper Hamilton law firm and

---

[3] This failure to provide notice of the December 18 hearing, in combination with Eli Lilly's apparent conclusion that 24 hours notice for the instant Order to Show Cause was sufficient time for Dr. Egilman to respond, is notable given Eli Lilly's apparent contention that the notice they received of the Alaska subpoena was insufficient time for them to contact Dr. Egilman and request that he not respond.

The Hon. Jack B. Weinstein
December 28, 2006
Page 4

instead simply directs subpoena recipients to contact the party responsible for the confidentiality designation, which Eli Lilly has conceded was done immediately by Dr. Egilman. (Tr. 12/19/06 Conf. at 18.) Conspicuously absent from Eli Lilly's letter is any representation as to why Eli Lilly waited more than a week to send Dr. Egilman a letter, <u>by regular mail</u>, from <u>Alaska</u>, asking him not to comply with the subpoena.

Finally, Eli Lilly's suggestion that Dr. Egilman and Mr. Gottstein "conspired" to issue a second amended subpoena is not supported by any admissible evidence of which we are aware. To the extent that Eli Lilly seeks to rely on the December 18 Mandatory Injunction directed to Mr. Gottstein to support its contention that Dr. Egilman behaved contemptuously, we note that the injunction was based on the hearing referenced above at which Dr. Egilman was never represented and of which he receive no notice.[4] We doubt that Eli Lilly may, consistent with due process, seek to bootstrap the outcome of a flawed hearing to support its contempt motion against Dr. Egilman.

In short, there is no colorable reason to grant Eli Lilly's Order at this point in the proceedings, absent a formal initiation of contempt proceedings against Dr. Egilman, and an opportunity for him to have notice of the grounds upon which such contempt is sought. To permit Eli Lilly to make an end-run around the substantial due process protections that are at stake in the contemplated contempt proceedings would work a substantial injustice to Dr. Egilman, absent any exigent circumstances.

For the foregoing reasons, we respectfully maintain that Eli Lilly's emergency request should be denied, or in the alternative, that the Court issue a briefing schedule to address the issues implicated by defendant's request. We thank the Court for its time and attention to this matter, and, along with Mr. Hayes, we look forward to the opportunity to address Your Honor regarding these concerns later today.

Respectfully submitted,

Alexander A. Reinert (AR 1740)

cc: Nina M. Gussack (by email)
Special Master Peter H. Woodin (by email)
Richard D. Meadows (by email)
William Audet (by email)
James M. Shaugnessy (by email)

---

[4] It is also troubling that the Court indicated that it was entering the injunction based on representations made in a letter which Mr. Gottstein denied signing. (Tr. 12/19/06 at 22-23.)