UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
In re: ZYPREXA PRODUCTS LIABILITY : MDL No. 1596 (JBW)(RLM)
LITIGATION :
-----------------------------------------------------------X
THIS DOCUMENT RELATES TO: :
ALL ACTIONS :
 :
-----------------------------------------------------------X

## ELI LILLY AND COMPANY'S COUNTERSTATEMENT TO PSC STATUS REPORT

Eli Lilly and Company ("Lilly") hereby responds to the statements contained in the PSC Status Report filed with the Court on January 12, 2007.

### I. SUMMARY OF SETTLEMENTS

As it has previously advised this Court, Lilly recently entered into settlement agreements covering a significant number of the personal injury cases currently pending in this multidistrict litigation. Lilly will expend significant effort over the next several months to effectuate the terms of those settlement agreements, but it also intends to litigate the remaining cases, including the cases unrelated to personal injuries, under the existing schedules set forth by the Court and Special Master Woodin.

Lilly is unable at this time to specify the exact number of plaintiffs that will remain in the personal injury portion of this multidistrict litigation if it achieves the number of settlements expected, but its best estimate at the current time is that approximately 825 plaintiffs will remain.

### II. TRIAL AND TRIAL RELATED ISSUES

A. Recent Orders and Extensions of Deadlines

Lilly believes the PSC has misunderstood the intent of the Court as reflected in CMO-20. The PSC unilaterally separates the effect of CMO-20 by contending that it applies to

~~the "Discovery Schedule Leading to *Daubert* and Summary Judgment Hearings," but not the~~ "Pre-Trial and Trial Schedule" for those cases designated for trial in the Eastern District of New York. Lilly reads CMO-20 as written:

> Those cases not settled remain subject to the previously ordered discovery, motion and pre-trial schedule set forth in Case Management Order No. 20 (CMO-20). In light of the recently announced settlements and the now scheduled January 16th status conference, the operation of the CMO-20 schedule is suspended for a period of 30 days.

*See* January 5, 2007 Order. The Court specifically acknowledged the effect of its Order on the previously ordered "[d]iscovery, motion and pre-trial schedule" set forth in CMO-20. The Court also acknowledged that further adjustments might need to be discussed at the January 16th status conference. Indeed, Michael Miller (counsel for the cases in the initial trial group) acknowledges the same reading as Lilly in his January 5, 2007 letter to the Court by stating that he will be requesting a new trial date in May 2007, which is consistent with the 30-day suspension of all dates in CMO-20, including trial. With a new trial date in May 2007, the PSC's creative suggestion of a conflict with the trial date and *Daubert* and summary judgment deadlines evaporates.

    B.  <u>Trial/*Daubert*/Summary Judgment Issues</u>

The PSC complains that the only cases remaining for the initial trial group are those of The Miller Firm, and that other cases more recently filed in the Eastern District of New York should be considered for inclusion. In fact, only The Miller Firm's cases are the ones that have been discovered sufficiently to allow trial and pre-trial motion practice to occur consistent with the Court's intended schedule. The Miller Firm's cases contain a sufficiently broad spectrum of issues, including varying times of ingestion, to allow the Court to explore important issues that will shape the remainder of the litigation. In support of this, the Court need look no further than the summary judgment motions filed in the *Souther, Cusella, New* and *Pearson*

~~cases, which raise issues of the learned intermediary and the effect of the class-wide label change~~ on claims involving ingestion thereafter. The PSC makes no effort to argue that these cases do not provide an appropriate sampling of the issues that are ripe for resolution.

Incredibly, the PSC states that Lilly "violated" CMO-20 by filing summary judgment motions in four of the cases. To the contrary, neither CMO-20 nor the Federal Rules of Civil Procedure contains any prohibition on the filing of motions for summary judgment at this time. Indeed, CMO-20 states that "Summary Judgment Motions shall be filed **on or before** March 2, 2007 . . . ." Case Management Order No. 20 (emphasis added). In support of its position, the PSC suggests that expert reports are necessary to respond to the motions. The Court expressed its dim view of this position at the December 28, 2006 status conference and yet permitted The Miller Firm the opportunity to submit expert reports, if it so desired, despite the lack of any articulated reason why such would be required. The premise of the PSC's position on this issue is found in the recitation of its "cursory review" of the motions whereby it believes the motions raise, *inter alia*, issues of "the FDA approval process and . . . off label usage of the product." PSC Status Report at p. 5. Cursory indeed: All four plaintiffs subject to the Lilly motions were prescribed Zyprexa for on-label indications and not one of the motions relies on issues related to the FDA approval process for Zyprexa.

Lastly, the PSC incorrectly advises that the Court "granted The Miller Firm's request to adopt the same scheduling dates for the *New* and *Pearson* summary judgment motion as those in the *Cusella* and *Souther* cases . . ." PSC Status Report at p. 4. To the contrary, the Court's January 5, 2007 Order specifically addressed The Miller Firm's request that the Court

~~adopt the same schedule for all the motions and stated: "Plaintiffs' scheduling request shall be~~ addressed at the previously scheduled January 16, 2007 status conference."[1]

### C. Expert Reports for Remaining Cases

The Court may wish to address how to deal with those cases that remain in the MDL. To date, plaintiffs have been required to provide Plaintiff Fact Sheets. That process should be expedited. In addition, however, Lilly suggests that the Court require each plaintiff to serve promptly a Rule 26(a)(2) case-specific declaration, executed by a physician or other medical expert, containing the following information:

1. The name, professional address, and curriculum vitae of the expert.

2. A list of the plaintiff's medical records reviewed by the expert prior to the preparation of the Expert Report as well as copies of such records.

3. The dates during which the plaintiff used Zyprexa and copies of the documents relied upon as evidence of such use.

4. Whether the plaintiff's medical records report that the plaintiff has a condition related to Zyprexa ingestion.

5. The expert's opinion in regards to causation of each claimed injury and, if the expert has such an opinion, the date of onset of each claimed injury. The declaration shall include (i) the injury or injuries (including death, if applicable) that the expert opines was caused by Zyprexa, and (ii) all grounds for opinions expressed by the expert.

Such an order would require an expert's report supporting individual injury and causation. Unless this information is provided, Lilly should be entitled to summary judgment. *In re Diet Drugs Products Liability Litigation*, Pretrial Orders Nos. 1962 and 3370 (E.D. Pa., May 9, 2001 and March 24, 2004), and *In re Orthopedic Bonescrew Products Liability Litigation*, Order of October 21, 1997 (E.D. Pa.), both work from this premise. A Rule 26(a)(2)

---

[1] Lilly believes Miller & Associates has already missed the deadline to respond to the *New* and *Pearson* motions pursuant to Local Civil Rule 6.1 of the Eastern District of New York, which requires the filing of any opposing affidavits or answering memoranda within ten business days. The *New* and *Pearson* motions were filed on December 22, 2006, and no responses have been filed to date.

-5-

report will require the furnishing of the minimum evidence required to make out a prima facie claim – evidence that plaintiffs should already possess.

Such so-called "*Lone Pine*" orders are designed to facilitate the resolution of the claim by motion or trial. Completed fact sheets and appropriate medical record authorizations are the barest of requirements in mass-tort product liability cases in MDL proceedings. "[P]rior to the institution of such a cause of action, attorneys for plaintiffs must be prepared to substantiate, to a reasonable degree, the allegations of personal injury, property damage, and proximate cause." *Lore v. Lone Pine Corp.*, 1986 WL 637507 at *4 (N.J. Super. Ct. Law Div. 1986). This procedure will assist the Court in identifying those cases that may be appropriate for trial in this Court or ready for remand to the court in which they were originally filed.

### III. **CONCLUSION**

Lilly will be prepared to discuss these issues fully with the Court on January 16, 2007.

Respectfully submitted,

*/s/ Andrew Rogoff*

Nina M. Gussack
Andrew R. Rogoff
PEPPER HAMILTON LLP
3000 Two Logan Square
18th and Arch Streets
Philadelphia, PA  19103
(215) 981-4000

Sam J. Abate, Jr. (SA 0915)
MCCARTER & ENGLISH LLP
245 Park Avenue
27th floor
New York, NY  10167

Dated:  January 15, 2007                                                  Counsel for Defendant, Eli Lilly and Company