1

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.
★ AUG 16 2007 ★
P.M. _____
INTIME A.M. _____

F&M
8/15/07

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - X

ZYPREXA PRODUCTS
LIABILITY LITIGATION

      :     04-md-1596 (JBW)(RLM)
           06-CV-1729

      :     U.S. Courthouse
           Brooklyn, N.Y.

           August 14, 2007
- - - - - - - - - - - - - X   9:30 a.m.

BEFORE:

      HONORABLE JACK B. WEINSTEIN
      United States District Judge

APPEARANCES:


For PSC II:        MILBERG WEISS LLP
               One Pennsylvania Plaza
               New York, New York 10038
               BY:  MELVYN I. WEISS, ESQ.
                     JAMES M. SHAUGHNESSY, ESQ.



               FIBICH, HAMPTON & LEEBRON, LLP
               1401 McKinney, Suite 1800
               Five Houston Center
               Houston, Texas 77010
               BY:  TOMMY FIBICH



               AUDET & PARTNERS
               221 Main Street
               San Francisco, California  94105
               BY:  WILLIAM M. AUDET, ESQ.

2

```
 1   For Mulligan Plfs:        THE MULLIGAN LAW FIRM
                               2911 Turtle Creek Blvd.
 2                             Dallas, Texas  75219
                               BY:  ERIC N. ROBERSON, ESQ.
 3

 4

 5   For Eli Lilly:            PEPPER HAMILTON, LLP
                               420 Lexington Avenue
 6                             New York, New York  10170

 7                             BY:  KENNETH J. KING, ESQ.

 8

 9

10   Also Present:            PETER H. WOODIN, ESQ.
                              SPECIAL MASTER
11                            280 Park Avenue
                              New York, New York  10017
12

13
     Appearances Via Telephone:
14
                              HOWARD NATIONS
15                            SEAN FAHEY
                              MARK BURTON
16                            BLAIR HAHN
                              TIM DAVIS
17                            KATHRYN HARRINGTON
                              RONALD ROSENKRANZ
18                            KRISTIN GIAQUINTA
                              ERIC TERRY
19

20
     Court Reporter:          Holly Driscoll, CSR
21                            225 Cadman Plaza East
                              Brooklyn, New York   11201
22                            (718) 613-2274

23

24

25   Proceedings recorded by mechanical stenography, transcript
     produced by Computer-Assisted Transcript.
```

1          THE COURT:  Call the case please.

2          THE CLERK:  Civil cause for motion,

3   In Re: Zyprexa Litigation.

4          THE COURT:  Good morning, everybody.

5          We're on the phone with a number of people and

6   that's why we've been delayed making the connections.

7          I think our main business for today is considering

8   the order of July 31st, 2007 which is in the form of a

9   recommendation from Peter H. Woodin, the special discovery

10   master, who is here today.  Then we may have some related

11   questions.

12          Who wishes to be heard?

13          VOICE ON THE PHONE:  I can't hear the Judge, I don't

14   know if it is just me or not.

15          VOICE ON THE PHONE:  I can't hear either.

16          THE COURT:  Can you hear me now?

17          VOICE ON THE PHONE:  Yes, sir.

18          VOICE ON THE PHONE:  Yes, sir, thank you.

19          THE COURT:  Okay.  Who wishes to be heard?

20          MR. FIBICH:  Your Honor, I'm Tommy Fibich on behalf

21   of the PSC and we, of course, support the recommendation of

22   Special Master Woodin.  He has conducted hearings on this

23   particular recommendation, we've had numerous telephone

24   conferences on it.  The Court in its order indicated that

25   there may be a necessity for an evidentiary hearing.  If the

4

1  Court would like to hear evidence on that, I'm prepared to

2  call Mr. Audet who is a member, like myself, on the Executive

3  Committee of what we now call PSC II.  I don't know if the

4  Court feels there's a necessity for that or not but we're

5  prepared to go forward with that if the Court would like that

6  in the record.

7          THE COURT:  How long will that take?

8          MR. FIBICH:  Well, I would estimate 20 minutes, Your

9  Honor.

10         THE COURT:  I think it probably would be useful to

11 make a record.

12         MR. FIBICH:  Okay.

13         If it please the Court then, Your Honor, I'd like to

14 call Mr. William Audet.

15         THE COURT:  Does anybody wish him sworn?

16         (No response.)

17         THE COURT:  No.

18         Nobody wishing him sworn.  He'll make a statement,

19 not under oath as a courtesy, but not because we don't need to

20 credit his testimony.

21         MR. FIBICH:  May I proceed, Your Honor?

22         THE COURT:  Please.

23 W I L L I A M   M.   A U D E T, E S Q., having been called as

24 a witness, testified as follows:

25 DIRECT EXAMINATION

1    BY MR. FIBICH:

2    Q    State your name for the record, sir.

3    A    William Michael Audet, A U D E T.

4    Q    Mr. Audet, are you a licensed attorney?

5    A    Yes, I am.  I'm licensed in California and I'm also

6    licensed in Wisconsin.  I'm currently inactive in Wisconsin.

7    Q    And would you briefly describe your educational

8    background as far as your law school training and your work

9    history?

10   A    In 1984 I graduated from Golden Gate University School of

11   Law.  After that I was accepted by the University of Wisconsin

12   for an LLM, which was a clinical instructor program plus a

13   teaching program plus a degree program for teaching in law

14   school.  I graduated and received my LLM in 1987.

15           From there I clerked for a year and a half for the

16   Ninth Circuit Court of Appeal.  After that I was honored to be

17   Judge Smith -- Fern Smith's first law clerk, United States

18   District Court for the Northern District of California.  At

19   that time I met Ms. Giangarra who previously I believe worked

20   for Judge Weinstein.

21           I then clerked -- I was lucky enough, Judge

22   Zirpoli was looking for a clerk and it was his last year and I

23   served as his law clerk for a year.  After that I secured a

24   position at a law firm called Lieff, Cabraser & Heimann and I

25   was there and worked directly with Elizabeth Cabraser and I

1   was there for eight years.

2           After that, it was in 1996 I believe I worked and

3   left that firm and became a partner within a short time frame

4   at a firm called Alexander, Hawes & Audet.  In January of this

5   year I started my own firm called Audet & Partners.

6   Q    Mr. Audet, do you specialize in any particular area in

7   the field of law?

8   A    I specialize in class actions and what I'll call mass

9   tort actions.

10  Q    And you've published also, have you not?

11  A    I have published.  I've had a few law journals published.

12  I also have a yearly book called Handling Federal Discovery in

13  which I basically provide to practitioners, state

14  practitioners how to work in federal court on discovery

15  matters.  It is a book that I have to rewrite every year and

16  we sell supplements.  Judge Smith is a contributor as well to

17  that book.

18  Q    How did you first become involved in the litigation that

19  we're here about today?

20  A    I got involved in Zyprexa in the end of -- I believe it

21  was December of '05.  I believe I filed my first case after we

22  were contacted, and I'm not too sure, by a number of

23  individuals who had ingested Zyprexa.  We had filed some cases

24  and in a short time frame I was advised that there was an

25  existing PSC, I believe it was called PSC at the time, I'll

1   call it PSC I because there was a changeover later on, but I

2   was invited to start working in January I believe it was of

3   '06 with some of the PSC members.  I met with the leadership

4   of the PSC including with the people sitting here today,

5   Mr. Weiss, Mr. Fibich in I believe January, February, March to

6   start working on the case, learn what the case was about.

7   Q    And did you later receive an appointment to become a

8   member of what we now call PSC II?

9   A    Yes, at some point one of the PSC members indicated that

10  there was going to be a change of the PSC and I was invited

11  by, again, the leadership of the PSC I to apply for and I

12  believe in March of -- no, excuse me -- January, February,

13  March, April, May -- in May, I believe it was the 5th or 6th I

14  was honored enough to be appointed by this Court to serve on

15  the PSC.

16  Q    And within the PSC are you on the Executive Committee

17  with myself and Mr. Weiss?

18  A    Yes, I am.  After I was appointed, I guess we were

19  elected, I don't really know now, we were selected by the PSC

20  members to serve on the PSC in an Executive Committee

21  capacity.

22  Q    Since your appointment as a member of the Executive

23  Committee of PSC II, how would you describe your involvement

24  to the Court with respect to the Zyprexa matters pending in

25  this MDL?

1   A    I would say without exaggeration my involvement in '06

2   was probably daily involved with either a phone call, staff

3   meeting, Executive Committee meeting, PSC meeting or meeting

4   with other PSC members in different parts of the country.

5   Q    For the record, all actions of the PSC before this Court,

6   before Special Master Woodin and with respect to matters that

7   we have been fortunate enough to work out with Lilly's counsel

8   have been through the Executive Committee; is that correct?

9   A    That's correct.

10  Q    Would you describe for the Court generally some of the

11  matters that have taken up the time of the PSC in dealing with

12  the matters and, in particular, contrast the work of PSC I

13  with PSC II?

14  A    I would say after a thorough review of what PSC I had

15  done I can testify as follows, that the PSC I had gathered

16  millions of pages of documents and had reviewed a number of

17  those documents to cull out what I'll call hot documents.

18  They also had conducted, based on my review of those

19  depositions, a number of what I'll call 30(b)(6) depositions

20  which are corporate designee depositions.  They did some other

21  work, of course, but essentially during the hand-off process

22  it was clear to Executive Committee members plus PSC members

23  that from mid '06 to the end of '06 that we had to focus on

24  taking liability depositions.

25  Q    Prior to the formation of PSC II had any liability

1   depositions been taken?

2   A    I don't believe so.  I believe all of the, quote unquote,

3   liability depositions and direct testimony with corporate

4   individuals were individuals not designated through 30(b)(6)

5   but individuals we decided to take after reviewing millions of

6   pages of documents.

7   Q    And during the period up until December 31st of 2006 was

8   The Mulligan Firm involved in any way with any of the matters

9   that were attendant to PSC matters?

10  A    I don't recall any time in which The Mulligan Firm was

11  directly involved with any of the PSC meetings or

12  contributions with respect to depositions and the like.

13  Q    Are you aware of any discovery that they did through the

14  PSC insofar as looking at documents in the depository that was

15  set up by PSC II?

16  A    I don't believe they've ever accessed the depository, I

17  could be wrong, I'm just going on my understanding, never

18  accessed the depository that was initially located in Denver,

19  then moved to South Carolina.

20  Q    To your knowledge, has The Mulligan Firm participated in

21  any depositions establishing the liability case, as the

22  plaintiffs see it, against Eli Lilly and Company?

23  A    I don't believe they've taken any depositions along those

24  lines.  I can't speak to 100 percent whether or not they

25  showed up at some of the depositions.  I don't believe from

1  the depositions I read, and I believe I read all of the

2  depositions conducted by the PSC members, I don't believe they

3  did take any -- they undertook to question any of the

4  deponents.

5  Q    And with respect to participation on behalf of plaintiffs

6  through the PSC, have they participated in any way with

7  respect to motion practice, discovery issues, privilege logs

8  or anything else to your knowledge?

9  A    Not -- as I sit here, I can't recall anything along those

10  lines.

11  Q    And you are the most active member of the Executive

12  Committee of the Plaintiffs' Steering Committee; is that

13  correct?

14  A    If someone is more active than me, I'd be shocked given

15  my 12 hour a day commitment to this case.

16  Q    Let's look at it from a contrary position; are you aware

17  of actions that the Plaintiffs' Steering Committee has taken

18  with respect to matters before this Court or matters before

19  Special Master Woodin that have benefited The Mulligan Firm

20  insofar as the representation of their plaintiffs?

21  A    Well, I'll say this, and I guess this is more of a legal

22  conclusion, but I believe everything the PSC did and Executive

23  Committee did benefited anybody with cases in any part of the

24  country with respect to Zyprexa.  I believe as a result of the

25  PSC's aggressive work, people were able to settle their cases.

1    I don't believe had we not pursued the cases we had there

2    would have been any settlements for anybody in the country

3    including people in state court.

4    Q    Can you give the Court --

5              MR. ROBERSON:  I will object as a legal conclusion.

6              THE COURT:  Overruled.

7    Q    Can you give the Court --

8              THE COURT:  I consider that factual.

9    Q    Can you give the Court an example of just say one motion

10   where the PSC prevailed that you think inured to the benefit

11   of Mr. Mulligan's firm and its clients?

12   A    I can name probably ten but I'll name one that sticks to

13   my mind, the Lone Pine order that I was very heavily involved

14   with briefing along with other members of the Executive

15   Committee including Jim Shaughnessy and Mr. Fibich.  That was

16   a big important issue with respect to whether or not

17   plaintiffs would have to give case specific expert reports

18   early on in the process and that took a lot of briefing and a

19   lot of persuading to hopefully -- there has been no ruling but

20   no ruling has been a good ruling for us in terms that no

21   plaintiff in the country has had to give a so-called Lone Pine

22   expert opinion on any of their cases.

23             THE COURT:  Since the record may go up to the Court

24   of Appeals, perhaps you ought to explain Lone Pine for its

25   benefit.

1              THE WITNESS:   Lone Pine is what I'll call somewhat

2    of a wacky theory that defendants try to get judges to agree

3    to and essentially Lone Pine requires that at a certain

4    point --

5              MR. KING:   I object to that characterization.

6              THE WITNESS:   I didn't say wacky defendants but it

7    is a theory in which some cases have forced plaintiffs to

8    prove up experts early on in the process, i.e. specifically

9    specific causation with respect to the product and the actual

10   injury and it is very burdensome, very cumbersome and very

11   expensive for plaintiffs to have to undertake such a process.

12             I can give you other examples if you want.

13   Q    Well, if the PSC had not been persuasive with respect to

14   the plaintiffs' position on that, would that have cost The

15   Mulligan Firm time and money in responding to such an order?

16   A    I believe it would have cost every plaintiff's attorney

17   with cases throughout the United States time and money

18   responding to that.

19   Q    Mr. Audet, we have had the benefit of Special Master

20   Peter Woodin to assist us throughout this litigation, correct?

21   A    Correct.

22   Q    And there have been numerous hearings before Special

23   Master Woodin?

24   A    That's correct, I would say mid-'06, again, after a

25   meeting with the Executive Committee, I recall a conference

1  call in which Mr. Weiss was on and, Tom, you were on and in

2  which I suggested and it was agreed that we would start weekly

3  phone calls with Special Master Woodin given what seemed to be

4  the Court's inclination to try to have these cases tried in

5  the fall of '06; as a result, we actually had weekly calls

6  with Special Master Woodin on every discovery issue that any

7  plaintiff had and the PSC had before the Special Master.  I

8  would say we at times we bothered the Special Master enough

9  that we would have two calls a week.  There were some times

10 with what I'll urgent matters that had to be quickly briefed

11 and those matters weren't on the weekly call because of the

12 urgency, I would say we had at least ten to twenty of those

13 urgent matters, so I would say we were bothering the Special

14 Master at least twice a week throughout this process I would

15 say from mid-'06.

16 Q    And the Special Master, for the record, has been

17 particularly accommodating to all the parties in this

18 litigation, correct?

19 A    Yeah, one thing the Special Master has been good with

20 requiring us to do, give notice to people, make sure that

21 everybody gets a chance to speak if they want to speak with

22 respect to any issue at any time and, you know, my opinion is

23 his orders have been thoughtful, sometimes I disagreed with

24 them, but they have been very thoughtful and thorough and

25 helped -- actually helped the litigation move.

1  Q    Has The Mulligan Firm sought the help of the Special

2  Master that was appointed by this Court?

3  A    I believe there's at least one if not two hearings, one I

4  believe I was on, in which I know there was an issue with

5  respect The Mulligan Law Firm's deficient plaintiff fact

6  sheets that were due.  The Court had issued an order requiring

7  everybody with a case in the MDL to respond to and provide

8  discovery to Eli Lilly consistent with other MDLs and it was

9  what's called a plaintiff fact sheet which is in lieu of

10 interrogatories and discovery requests and I believe there was

11 at least one hearing, if not two, in which The Mulligan Firm

12 needed additional time, had a significant caseload, I don't

13 believe I briefed the issue but I believe we had no objection

14 to it and I believe we -- I may have even said something in

15 the record that I supported it given how onerous the fact

16 sheets were but I know there was at least one hearing I

17 attended, there may have been more.

18 Q    And there were other matters that The Mulligan Law Firm

19 raised before Special Master Woodin, correct?

20 A    Yeah, I believe in addition to -- I believe there has

21 been other discovery hearings, most of them have been focused

22 on the plaintiff fact sheet obligations I believe, though

23 there was at least -- there's been at least five, maybe six

24 hearings total, those hearings would also include assessment

25 issues, they didn't just include discovery issues, I want to

1   make the record clear on that.

2   Q    Five or six hearings in which The Mulligan Firm has

3   participated?

4   A    Correct.

5   Q    Who pays the Special Master for his time on these

6   matters?

7   A    Well, the PSC does and if the PSC is out of money, it is

8   generally the Executive Committee, and then if the Executive

9   Committee doesn't come up with it, generally Mel, Mr. Weiss

10  will make sure the bills get paid but the bills get paid from

11  the treasury that the PSC has established.

12  Q    Has The Mulligan Firm ever paid for any of the time of

13  the Special Master that they have utilized to their benefit?

14  A    I couldn't testify to that except to say as far as I

15  know, no, but the treasury would know but I don't believe so.

16  I don't believe we ever asked either, for the record, I want

17  to make the record clear, I don't believe we ever asked

18  anybody to chip in who wasn't a PSC member.

19  Q    Now, Mr. Audet, you have filed a declaration in this

20  Court, have you not?

21  A    I believe I filed a number of declarations.

22  Q    With respect to the assessment of the three percent

23  assessment?

24  A    I believe I filed one with this Court as well although it

25  may be just before Special Master Woodin so I don't know --

*Audet - direct - Fibich* 16

1   Q    Do you have a copy of the order?

2   A    I have a copy of my declaration, unfortunately it is the

3   unsigned version so I'm hesitant to turn it over.

4           THE COURT:  Sign it.

5           THE WITNESS:  Okay.

6           THE COURT:  Make it an exhibit in your testimony.

7           (Pause.)

8           THE WITNESS:  Thank you, Your Honor.

9           What is today's date?

10          MR. FIBICH:  The 14th.

11          THE WITNESS:  I have just re-signed it.  I believe

12  this is a pretty -- either close to or similar to what I filed

13  before Special Master Woodin.  I believe a copy of it was

14  filed with this Court.  I know a copy of it was provided to

15  anybody who had objected to the settlement -- excuse me, not

16  to the settlement, to the assessment issue.

17  Q    Mr. Audet, what you are referring to is what is entitled

18  Declaration of William M. Audet in Support of PSC II's Motion

19  For a Three Percent Set Aside; is that correct?

20  A    Correct.

21          MR. FIBICH:  I'm going to designate this, Your

22  Honor, for the record as PSC-1 and --

23          THE COURT:  PSC II-1.

24          MR. FIBICH:  PSC II Exhibit 1.

25  Q    And Mr. Audet, this declaration contains the matters

1  which you believe the PSC has done which justifies a three

2  percent assessment; is that correct?

3  A    Correct.  Just so you know, originally it was actually 30

4  pages long and one of my associates meekly came up and said

5  you're going to bore the Court, so I spent a lot of time

6  summarizing what was in there, and he said nobody is going to

7  read it if it is 30 pages so I cut it down to I believe six.

8         MR. FIBICH:  Your Honor, at this time I would offer

9  PSC II's Exhibit 1 as part of the record.

10        THE COURT:  Any objection?

11        (Pause.)

12        THE COURT:  Hello.  Those of you who are on the

13  phone, I can hear you rattling papers and coughing, could you

14  see if you can avoid that please.

15        MR. ROBERSON:  Can I ask a question?

16        THE COURT:  No, you can do that on cross.

17        It is admitted subject to motion to strike.

18        MR. KING:  May I take a look at it briefly?

19        THE COURT:  Yes.

20        Proceed.

21  Q    Mr. Audet, were you asked to obtain an estimate of the

22  time incurred by members of the PSC II that inured to the

23  common benefit of all plaintiffs?

24  A    Yes, I believe at one of the hearings before Special

25  Master Woodin in which the issue of the exact amount of the

Audet - direct - Fibich                                    18

1   assessment was asked -- was raised, Special Master Woodin

2   asked me to ask all plaintiffs' counsel PSC members to provide

3   me as quickly as possible an estimate, a rough estimate of

4   their time.  I instructed my secretary to ask all the PSC

5   members to gather time in a very short time and their expenses

6   and I believe within I'd say two, maybe three weeks we

7   received essentially everyone's time with the exception of one

8   firm, I just want to note for the record, Mr. Sobol's firm.

9   Q    Mr. Audet, you've had discussions with The Mulligan Firm

10  about their objections to the order which we're requesting the

11  Court sign; is that correct?

12  A    That is correct, although I believe those were in a

13  settlement context but we agreed they would be confidential.

14  Q    And what is your understanding as to the number of cases

15  The Mulligan Firm has?

16  A    I, actually not based on the calls, I think based on

17  their recent submission, I believe it is in excess of 2,000,

18  maybe 3,000.  It is very hard to tell.

19  Q    That they have resolved through settlement?

20  A    Correct.

21  Q    And do they also have, to your knowledge, a number of

22  other cases in which they have a tolling agreement?

23  A    I believe, again, there was a footnote, in one of the

24  documents I believe there was some reference to tolling.  I

25  believe a number of firms have tolling agreements and I

1  believe The Mulligan Firm has them as well.

2  Q    And that would be in addition to the 2 to 3,000 cases you

3  think they've resolved?

4  A    Again, I'm not the best person, I would hate to guess,

5  I'm sorry.  I believe so, I don't know.

6         MR. FIBICH:  Your Honor, at this time I'd pass the

7  witness.

8         THE COURT:  Any cross-examination?

9         MR. ROBERSON:  If I may, Your Honor?

10         THE COURT:  Yes.

11         Give your name so the people on the phone will know

12  who is speaking please.

13         MR. ROBERSON:  I'll move around so we can be --

14  CROSS-EXAMINATION

15  BY MR. ROBERSON:

16  Q    Good morning, Mr. Audet.

17  A    Good morning.

18         THE COURT:  Give your name so people will know who

19  is speaking.

20         MR. ROBERSON:  Eric Roberson, plaintiffs' counsel

21  for the Mulligan plaintiffs.

22  Q    Good morning, Mr. Audet.

23  A    Good morning.

24  Q    I want to ask you a few questions, if I may.

25         The bill that you have prepared in regards to the

1   itemization, was that work itemized as to when that work was

2   done?

3   A     That's a good question.  I believe pursuant to Special

4   Master Woodin's request we limited the time as follows; one,

5   if you were a PSC I member, you could not send in any time

6   that you asked for payment from PSC I's settlement.  So, for

7   example, Mr. Weiss' firm was a member of the PSC I, his firm

8   only sent us post-PSC I time submission.  And, again, pursuant

9   to Special Master Woodin's request, the time that we collected

10  stopped as of December 31st, 2006.  There was a significant

11  amount of time after that but we didn't gather that, I was not

12  asked to get that.

13  Q     So, the 10.1 million dollars estimate that is the basis

14  for the three percent set aside order, it is your testimony

15  that that only includes PSC II work through December 31st of

16  2006?

17  A     Yes, it excludes -- again, I'm a PSC I member so I would

18  go -- excuse me, I was not a PSC I member so I have no PSC I

19  time but, yes, I believe the answer to that is yes.

20  Q     So, would you agree then in regards to the vast majority

21  of settlements that occurred on or about December 31st, 2006

22  or the first week of 2007 that the PSC II is not submitting or

23  seeking for those cases to reimburse PSC II for work done

24  related to cases that were not part of the mass settlement

25  protocol?

1  A    I'm sorry, could you rephrase that.

2  Q    All right.  Let me lay some foundation for the facts

3  first.

4  A    Yeah.

5  Q    You agree there was a large number of cases from The

6  Mulligan Firm and other firms that settled in the last week of

7  2006 and the first week of 2007?

8  A    Based on published reports, yes.

9  Q    And you understand that one of the objections that The

10 Mulligan Law Firm made is that there could be no benefit done

11 to cases that were subject to a settlement protocol after that

12 settlement protocol was entered, do you remember that

13 objection being made at the Special Master's hearing?

14 A    Yeah, I do remember and I believe that's why we ended up,

15 I think Special Master Woodin's view was that issue has been

16 raised, that's why we only gathered it as of December '06.

17 Q    And so, it is the PSC II's position that work done after

18 the mass settlement protocols were entered into, it is not

19 going to be billed to cases that are subject to tentative

20 settlements under those mass protocols?

21 A    Cases -- your cases?

22 Q    Yeah.  For example, any work that you did two months

23 after we entered the settlement protocol, is the PSC II going

24 to attempt to bill The Mulligan Law Firm for that work?

25 A    We don't really bill you for work, we're asking for a

1  common fund assessment but if we're on the same page, I don't

2  believe so.  I believe the position is that -- but you also,

3  just so the record is clear, not all cases settled in

4  December, my firm didn't settle cases until a few months ago,

5  I believe Mr. Miller's firm's cases weren't settled and so

6  there may be additional time that people will seek

7  compensation out of that amount, I don't know, that will be a

8  Executive Committee decision that I don't think we've even

9  gotten there.  We've had -- just so the record is clear,

10  pursuant to the Special Master's recommendation and order,

11  that decision will be Executive Committee member made in terms

12  of who gets compensated what and I have had no discussions

13  with anybody about that.  My focus has been on just getting

14  the three percent order implemented.

15         THE COURT:  Let me tell you what the position of the

16  Court is, subject to hearing from all concerned.  The fund to

17  be made up of this three percent, one and a half percent from

18  the fee and one and a half percent from the plaintiffs'

19  recovery, goes into a common fund.  I expect out of that

20  common fund will be paid the work of PSC II up to the end of

21  their labors.  Whether the common fund will be sufficient for

22  the post-December 31st, 2006 work, I don't know, I haven't

23  seen the figures, but I see no reason why, as the record now

24  stands, PSC II personnel should not be paid for their labor up

25  to the moment they are disbanded if there are sufficient

1  funds.  So, I'm somewhat surprised by your testimony.

2          THE WITNESS:  I'm -- I was not saying that we

3  weren't -- as a matter of fact, my firm spent a lot of time

4  and energy after January, I'm just saying what we gathered so

5  far.

6          THE COURT:  Well, are you going to ask for

7  compensation out of the fund for post-December 31st work?

8          THE WITNESS:  If the Court allows it, of course, I

9  will.

10         THE COURT:  No, that wasn't what I asked you.  I

11 asked you are you going to ask for compensation?

12         THE WITNESS:  Yes, I'm going to gather everybody's

13 time and records, I believe we will.

14         THE COURT:  Well, the answer is yes or no.

15         THE WITNESS:  Yes.  Yes, Your Honor.

16         THE COURT:  All right.

17         Proceed with the cross please.

18 Q    In regards to how the PSC II under the protocol that will

19 be followed, do I understand that the PSC II does not object

20 to the magistrate judge being able to completely review all

21 billing to make sure that it is fair and reasonable and

22 equitable?

23         THE COURT:  I don't really care what the PSC's view

24 of the matter is.  The Court will so order.  That was the way

25 PSC I's compensation was reviewed and that is the way PSC II's

1    compensation will be reviewed by the magistrate judge.  We

2    have the magistrate judge's law clerk -- what is your name,

3    sir?

4              MR. MOSES:  Matt Moses.

5              THE COURT:  -- here, and you'll probably be doing

6    the work, so listen carefully.

7    BY MR. ROBERSON:

8    Q    In regards the Mulligan cases that are filed currently

9    before this Court, the ones that are subject to motions for

10   remand, is it your understanding that the PSC II filed a brief

11   in support of motions for remand?

12   A    I believe that my firm even did, months ago we filed

13   motions for remand of our cases.

14   Q    Isn't it true that The Mulligan Firm gave your firm

15   copies of our prior motions for remand without charge?

16   A    I don't recall that but you might have.  We -- early on

17   we had I thought a cordial relationship regarding a host of

18   matters.

19   Q    Isn't it true that prior to the time that the PSC II

20   ordered -- argued any Lone Pine orders that The Mulligan Firm

21   had fully briefed that matter and given all of our briefing to

22   the PSC II members for free?

23   A    You know what, I don't recall that.  I know that I did

24   the Lone Pine order and I did it from scratch, that was a lot

25   of work, but you may have and I don't recall getting it but

1   you may have.  I mean I wouldn't -- we received -- I remember

2   I asked a lot of people for help on Lone Pine and we received

3   a number of briefs from people on other issues in other cases.

4   Q    Was one of them Mr. Miller's office?

5   A    It may have been, I don't know, I don't recall.

6   Q    And Mr. Miller's office is part of the PSC II, isn't that

7   correct?

8   A    Yes, he is.

9   Q    So, if I had supplied Mr. Miller a copy of The Mulligan

10  Firm's entire Lone Pine file prior to the time that you argued

11  and had a chance to brief that, then we would have supplied

12  you, the PSC II, for free the Lone Pine briefing that we had

13  previously done?

14         MR. WEISS:  I object, Your Honor.  That sounds like

15  testimony to me, not a question.

16         THE COURT:  Overruled.

17  A    I have no idea as I sit here today, if I knew I'd tell

18  you, I have no idea whether the Miller firm sent us anything.

19  My firm's practice is usually on core issues like Lone Pine,

20  summary judgment, you start from scratch and you don't copy

21  other's briefs.  I always like to see other people's point of

22  view so I may have read it, I doubt it.  I probably got ten

23  different briefs from different people none of which I thought

24  were as good as mine.

25  Q    Did you do this brief work after December of 2006 on Lone

1  Pine?

2  A    I don't remember, you know, you would have to tell me, I

3  don't remember when I did Lone Pine, it may have been --

4  Q    I'm only supposed to ask questions at the moment.

5  A    I don't remember.  We may have started the issue in

6  December, it may have gone to January '07, I just don't

7  recall.

8  Q    Do you understand in mass tort aggregate settlements that

9  the settlements by their very nature have to be contingent

10  until each specific plaintiff has agreed to their specific

11  settlement amount?

12  A    I don't know if I understand your question but I think it

13  is -- I think the answer is yes.

14  Q    How many -- you've recently settled, is that correct,

15  your, the Audet partnership's firm?

16  A    I believe I can say we have reached a tentative

17  settlement, correct.

18  Q    And under that settlement, each individual plaintiff has

19  to receive what their settlement amount is going to be and be

20  given a fair and reasonable opportunity to turn that

21  settlement amount down, is that accurate?

22          MR. FIBICH:  Your Honor, at this time I'm going to

23  object to the inner workings of Mr. Audet's settlement.  All

24  the settlements that I'm aware of with respect to Eli Lilly

25  have been asked to be kept and are contractually obligated to

1   be kept in strict confidence.  I think this violates the

2   confidentiality provision of those agreements.  I think this

3   also involves work product of Mr. Audet's clients and it is

4   rather far afield from the issues of our support of a

5   recommendation of a set aside in this case.

6              THE COURT:  Overruled.

7   Q    I'll be more specific.

8   A    Yeah.

9   Q    Are you familiar with ABA Rule 1.8 dealing with specific

10  conflicts of interest?

11  A    I'm aware of avoiding conflicts of interest under

12  California rules, an ABA rule I can't quote you back.

13  Q    All right, California Rule 1.8,800 dealing with aggregate

14  settlements, are you familiar with that rule?

15  A    Yeah, I mean in general as with most California state

16  rules.

17  Q    Would you agree when a case is part of an aggregate

18  settlement, it would be improper for any attorney following

19  California rules or otherwise to force a plaintiff to accept a

20  settlement amount without them having a fair and reasonable

21  opportunity to accept or reject that specific amount?

22             MR. FIBICH:  Objection, Your Honor, relevancy.

23             THE COURT:  Overruled.

24  A    In general if you're asking me does a client have to

25  accept a settlement before you can settle a case, I agree with

Audet - cross - Roberson                                    28

1   that, yeah, and I agree that applies to whether it is

2   aggregate or not and I believe, now I'm thinking about it,

3   there's a rule, yeah, I believe, yeah, you have to have the

4   client accept a settlement.  Clearly I agree with you, yes.

5   Q    And until a client accepts a settlement, can that

6   client's settlement amount be subject to a holdback or an

7   assessment?

8   A    Until -- I believe the holdback is issued or applied when

9   the money comes in and I don't know when that would be with

10  respect to whether you're talking about conditional settlement

11  or the full release.  Does that make sense?

12  Q    Well, let me ask you this, if you have a group of clients

13  and you have an amount of money that's set aside to settle

14  the entire group of clients and you have an amount of money

15  that's set aside for a specific client, are we on the same

16  page?

17  A    Yeah, I'm with you, okay.  You've allocated a certain

18  amount to a particular client based on an aggregate

19  settlement?

20  Q    Right.  Until that person accepts or rejects that

21  settlement offer as to that specific amount of money for that

22  person, there really isn't a settlement yet, is there?

23         MR. FIBICH:  I'll object to the form of the

24  question, Your Honor.  It is vague and indefinite and calls

25  for speculation and I'll object to it being irrelevant.  We're

1    only asking for an assessment on settled cases.  If there's

2    cases that are not settled and under the terms of some

3    settlement agreement there's money that goes back to Eli

4    Lilly, clearly that's not subject to the settlement.

5           THE COURT:  Well, if the witness understands the

6    question, I'll permit him to answer.

7    A    Let me try -- are you getting into the issue of is

8    there -- can there be an assessment like theoretically?

9    Q    No, I want to know what you are -- you're the witness for

10   the PSC II, I want to know what the PSC II is asking for and

11   the reason is because when the money should be paid is part of

12   our objection to the Special Master's recommendation because

13   we felt it was not clear and I want the PSC II's witness to

14   state on the record whether or not they're seeking The

15   Mulligan Firm or any other law firm to pay money from a client

16   who hasn't given -- been given the opportunity to accept or

17   reject their settlement amount yet?

18          MR. WEISS:  Your Honor, I think since we're --

19          THE COURT:  Give your name.

20          MR. WEISS:  Melvyn Weiss on behalf of the Executive

21   Committee of PSC II.  The three of us are sitting here who are

22   the members of the Executive Committee and we will stipulate

23   that we will not ask for any money as a set aside where the

24   settlement for any individual is not final with respect to

25   that individual.

1        MR. ROBERSON:  With that stipulation, I'll withdraw
2   the question.
3   Q    I just want to clear up a couple of things on the record,
4   then I'll be done and I appreciate your time, sir.
5        In regards to the discussions you had regarding The
6   Mulligan's Law Firm's items before the Special Master and
7   particularly defendant Eli Lilly's motion to compel, you were
8   not factually familiar with how many plaintiffs' fact sheets
9   The Mulligan Law Firm had produced to that point in time, were
10  you?
11  A    I think I read the transcript, you guys had done I think
12  a good faith effort.  My comment was not to cast aspersions
13  with the effort.  I think it was the caseload and the timing
14  was just off.  I remember you guys had a lot of cases and they
15  were all due at the same time and I don't think I even -- I
16  know I remember at the hearing I said I think it is unfair
17  regardless of your -- it was just unfair for you guys to have
18  to answer them all in one day -- in one month.
19  Q    You're familiar that The Mulligan Law Firm requested an
20  extension of time prior to any of them being due?
21  A    I believe you guys were good about it, I think you wanted
22  to raise it with the Special Master ahead of time, I think
23  that's right.
24  Q    You are aware we received a rolling order from the
25  Special Master that allowed us to produce them over time?

*Audet - cross - Roberson*                                                31

1   A    My comment was not at all to cast aspersions at the

2   quality of your firm's response to them, that was not the

3   reference or the point of reference.

4   Q    So, as you sit here today, you don't know if The Mulligan

5   Law Firm was late with even one fact sheet, do you?

6   A    No, and my testimony was not meant at all as a slur on

7   the firm or Mr. Roberson, not at all, with respect to your

8   abilities.  It was -- the reference was to point out that for

9   all of the cases, even those removed, you were utilizing the

10  benefit of what the PSC had set up in terms of conferences

11  with the Special Master and that's where you went to to get

12  the extension, not the fact that you had to get an extension.

13  I think -- I will testify that a number of PSC members needed

14  additional time.  My firm didn't, we were always on time but a

15  lot of PSC members did, because of the caseload and the timing

16  needed additional time and the Special Master and Eli Lilly,

17  we all worked that out together.

18  Q    And just one more set of questions; is my firm

19  participating with your firm currently in a California

20  litigation related to another medical product?

21  A    I believe if I can --

22         MR. FIBICH:  I'll object to the relevance of this,

23  Your Honor.

24         MR. ROBERSON:  I'll have one follow-up, Your Honor.

25         THE COURT:  I'll allow it with respect to the bias

1 | and credibility of the witness.

2 | A    Yeah.

3 |        THE COURT:  Objection overruled.

4 | A    I believe you told me that we are and I was happy to hear

5 | it, I believe I even said that we were happy to hear that his

6 | firm was involved.

7 | Q    And isn't it true that in that litigation all state

8 | participants are participating equally and have agreed there

9 | will not be any assessment from the Court?

10 | A    That's news to me but I actually didn't know that.  I was

11 | invited on, again, that PSC because of my firm's reputation in

12 | California.  I didn't know that, I didn't know that.  I know

13 | there is a federal MDL order and I believe California

14 | discussed at some point the possibility of an order.  That's

15 | as far as I know.  I've never seen the order but there may be

16 | one issued, I don't know.

17 | Q    And you're fueling your case for that type of litigation

18 | in state court; is that correct?

19 |        MR. WEISS:  I object.  The witness has already

20 | testified he has no recollection.

21 |        MR. ROBERSON:  Withdraw the question.  Pass the

22 | witness.

23 |        MR. FIBICH:  Two short questions.

24 |        THE COURT:  Is there anybody on the phone who would

25 | like to cross-examine the witness?

1          (No response.)

2          THE COURT:  All right, then we'll have redirect.

3    REDIRECT EXAMINATION

4    BY MR. FIBICH:

5    Q    Mr. Audet, you're familiar with the MDL Zyprexa

6    proceedings in state court in California and Indiana?

7    A    I am very familiar with Indiana because my firm has 52

8    cases in Indiana state court.

9    Q    And in the Indiana state court consolidated proceedings

10   is the Indiana state court judge following the rulings of

11   Judge Weinstein in the federal MDL?

12   A    For the most part the judge has adopted Judge Weinstein's

13   rulings and Peter Woodin's -- excuse me, Special Master

14   Woodin's rulings.  He reads them, talks to us some about them

15   but generally he's adopted them except with -- with the

16   exception of an assessment.

17   Q    When you say with the exception of an assessment, there

18   is no state court assessment on state court cases by either

19   the California judge or the Indiana judge; is that correct?

20   A    I can't speak to the California judge because our cases

21   have all been removed; Indiana, there is no assessment I

22   believe.

23   Q    To your knowledge, are there any proceedings in which

24   there's a request for an assessment on state court proceedings

25   in Indiana?

1    A     Not today.

2            MR. FIBICH:  Pass the witness, Your Honor.

3            THE COURT:  Yes, recross.

4            MR. ROBERSON:  If I may, yes, Your Honor, I'll limit

5    it to this specific topic.

6    RECROSS-EXAMINATION

7    BY MR. ROBERSON:

8    Q     To your knowledge, your local firm in Indiana has not

9    filed any motion for an assessment, isn't that correct?

10   A     I don't believe they have.

11   Q     All right.  To your knowledge, there's no rule within the

12   Indiana state rules or within Indiana state law that would

13   prohibit anyone from proceeding in front of the Indiana state

14   court seeking a common benefit assessment based on work done

15   elsewhere?

16   A     You know what, I honestly don't know the Indiana rule, I

17   don't know.  There may be a rule that doesn't allow -- I don't

18   know what the law is there.

19   Q     And was it your testimony that you have no factual

20   knowledge as to the ongoing proceedings in California?

21   A     With respect to this case, yeah, that's correct.  I

22   believe all of our cases got removed.  I believe your firm may

23   still have some, I don't know.  I remember most of the cases

24   were removed from California and ours included.

25   Q     All right.  All right then, since you don't have any

1  knowledge, I won't ask you about California.

2          MR. ROBERSON:  Pass the witness.

3          THE COURT:  Thank you.

4          Does anybody on the phone wish to examine the

5  witness?  If not, he'll be excused.

6          The witness is excused.  Thank you very much.

7          THE WITNESS:  Thank you, Your Honor.

8          THE COURT:  Is there anything else that the PSC

9  wishes to present?

10         MR. FIBICH:  That completes our evidentiary offer

11  today, Your Honor.  However, the Court has raised an issue

12  with respect to whether or not the PSC intends to seek

13  compensation for the time that has occurred since basically

14  the 1st of this year and I will represent to the Court that I

15  along with Mr. Weiss may be the only members that were

16  involved in PSC I and PSC II so I have a history of

17  understanding the contributions that have been made by the

18  PSC.

19          Since January the 1st of this year PSC II has

20  expended a substantial amount of time and a substantial amount

21  of effort, which the Court I'm sure is aware of, with respect

22  to the challenges to the witnesses of the plaintiffs and our

23  challenges to the witnesses of Eli Lilly and Company under the

24  Daubert standards.   All of the work that was done with

25  respect to our responses to those challenges and our

1   challenges to their experts as well as the depositions of the

2   experts that made declarations as well as the cross-

3   examination of the experts that have been tendered on behalf

4   of Eli Lilly and Company were done substantially in 2007.

5   That amount of work I think has inured to the benefit of the

6   settled cases.

7         If you listen to Mr. Roberson's questions, he seems

8   to be implying that we are seeking an assessment against cases

9   that are not settled because somehow the clients have not

10   accepted those settlements.  If that's the case, then during

11   the period of 2007 for which time has not been collected nor

12   tendered to the Court in support of this assessment, that time

13   as well is inuring to the benefit of those clients and inuring

14   to the benefit of settlements.  If in fact the Plaintiffs'

15   Steering Committee had not been successful with respect to the

16   Daubert challenges and the Court had ruled opposite of what it

17   did rule, then I think we would be in a real difficult

18   position with respect to his trying to settle cases or not

19   settle cases.

20         So, I make this statement to the Court to say that

21   primarily there is a substantial amount of time and a

22   substantial amount of money, I'm not sure Mr. Weiss or

23   Mr. Shaughnessy may know today but I know that we ran out of

24   money to pay experts and I know that those of us on the

25   Executive Committee have out of our own firms paid experts for

1   their time and effort in giving depositions.  So, in addition

2   to the time that's been tendered to the Court in support in

3   Mr. Audet's declaration, I know that there's a substantial

4   amount of time.  Whether or not this assessment is sufficient

5   to cover that, I don't know.  I would tend to think it is not.

6                 THE COURT:  Thank you.

7                 MR. WEISS:  Melvyn Weiss, Your Honor.  In addition,

8   my firm was appointed liaison counsel and as liaison counsel

9   we have continued to function in that role and as an example,

10  today's hearing, we had to disseminate notices to all the

11  interested parties and The Mulligan Firm was among those who

12  benefitted from that work so we anticipate making an

13  application for those services.

14                THE COURT:  Is there anything else the PSC wishes --

15                MR. FIBICH:  No, Your Honor.

16                THE COURT:  Does anybody else wish to be heard?

17                MR. BURTON:  Yes, Your Honor, it is Mark Burton from

18  Hirsch & Hirsch.  I'd just like to point out there were

19  several firms that worked on PSC I and II or that just worked

20  on PSC I who were not fully compensated for their time on

21  PSC I because of the common benefit that was available at that

22  time and The Mulligan Firm doesn't seem to be taking into

23  account the benefit that accrued to them from PSC I even

24  though after PSC I was very successful in litigation when many

25  of the firms such as The Mulligan Firm became involved in the

1   litigation and I ask them -- I certainly want to make sure

2   that PSC II is appropriately compensated for the new work that

3   they did but if there is remaining funds available, that

4   anyone who did not receive compensation for their lodestars in

5   PSC I would potentially be able to recover that money if

6   there's available funds according to the discretion of the

7   magistrate, of course.

8        THE COURT:  I'm not going to rule on that issue,

9   there's no such application before me and I see no point in

10  ruling on it.

11       Does anybody else wish to be heard?

12       Lilly is here, do you wish to be heard on this

13  issue?

14       MR. KING:  No, I do not, Your Honor.

15       MR. ROBERSON:  Your Honor, I don't know if the Court

16  wants to hear from The Mulligan Firm or not and when you ask

17  to be heard --

18       THE COURT:  Excuse me, I will hear from anybody.  I

19  made that clear.  If you wish to be heard, I'll be happy to

20  hear you.

21       MR. ROBERSON:  I guess the question I'd ask is how

22  the Court would wish to proceed?  I obviously can make a

23  factual record on a question and answer basis or, like

24  Mr. Weiss and Mr. Fibich did, I can make arguments which under

25  Rule 11 have to be factually accurate obviously.

1      The Mulligan Firm would point out a few simple
2  items.  First of all, the firm has always been straight up
3  with the PSC II and with this Court in regards to the issues
4  regarding jurisdiction, we have addressed this at every point
5  and we have addressed it up front.  So, we think the
6  jurisdiction issue is properly before the Court and doesn't
7  need to be reargued, doesn't need to be rebriefed, however, we
8  did in our objections include an item to make sure that we
9  didn't waive any things.  In that regard -- I apologize for
10  not turning the microphone on sooner for those on the phone.

11      In that regard, The Mulligan Firm would point out to
12  the Court that I did make one typo, the pinpoint cite for the
13  Harlon case was page 101 which is in the full opinion, not in
14  the concurring opinion.  And also in that regard, The Mulligan
15  Firm would point out that the quote to the In Re: Agent Orange
16  case in the PSC II's response brief was attributed to the
17  Second Circuit, the pinpoint cite wasn't within that, the
18  Second Circuit's ruling, and I finally found the pinpoint
19  cite, it was in Your Honor's district court case and in that
20  case Your Honor actually in addressing the issue that the PSC
21  II brought up said in regards to cases that were not subject
22  to this Court's jurisdiction because they had opted out said
23  there were two items the Court could do, one would be a
24  percentage fee and the other one would be a fee where when
25  someone came to the document repository they were told how

1  much they were going to be charged ahead of time and then they

2  could decide whether or not they wanted to use the repository.

3  The Court said the second option was preferable and in that

4  regards the statement which is accidentally I believe mis-

5  cited has now been placed in full context and that's all The

6  Mulligan Firm ever wanted to do, we wanted to try to get an up

7  front agreement with the PSC II in regards to how we wanted to

8  move forward and we've tried on every occasion to be up front.

9         There are MDLs that this firm participates in and

10  when it does that, it gladly pays the fee.  There are times

11  when our cases are removed from state court where we are in

12  state court because we want to be riding our own horse and

13  when it is our intention to be riding our own horse, in charge

14  of our own claims, we fight to maintain jurisdictional control

15  of our cases and the reason we've done that is because we

16  believe that is the manner in which we want to participate,

17  just as we're participating with Mr. Audet in Los Angeles,

18  California in another mass tort case right now where our

19  firm's case will be the first case to go to trial which is

20  currently set for March 1st.

21         We believe there are three issues in our

22  objections to the Special Master's recommendation; the Court

23  has made it clear that the magistrate judge will review all

24  items and so, therefore, we believe our due process objection

25  for lack of clarity in the Special Master's order has been

1   more than satisfied.  Our second objection in regards to

2   ambiguity was the issue when is a fee received for the purpose

3   of having to be forwarded, the PSC II has clarified that; and

4   the jurisdictional item we just put on the table to make sure

5   that we don't waive it.

6           We understand and we expect the Court to sign either

7   one of the two orders that the PSC and now The Mulligan Firm

8   has forwarded to the Court.  We believe the Court will sign

9   whichever order the Court so desires or make any alterations

10  that it desires and we've tried our best to make the record

11  clear and work in good faith with both this Court and Eli

12  Lilly and the PSC II at all phases despite the fact that at

13  times all sides have vehemently and appropriately tried to

14  move their case forward in the way they saw fit for their

15  particular clients.  Thank you.

16          THE COURT:  Thank you.  Does anybody on the phone

17  wish to be heard?

18          (No response.)

19          THE COURT:  The Court rules that all applications

20  for fees and expenses by PSC II will be ruled on by the

21  magistrate judge in due course with the opportunity of all

22  interested persons to challenge the amounts and to be heard.

23          PSC II may make application for fees and

24  disbursements without any chronological cutoff so long as

25  those fees and disbursements are made on behalf of all of the

42

1   claimants and potential claimants in this Zyprexa case.

2   Holdbacks will come into play only when payments are to be

3   made to the client and to the attorney for fees.  I believe

4   that that was always the understanding.  You can't have a

5   holdback if there's nothing to be paid yet.

6           As I understand it, there is a fund now established

7   for Lilly's payments from which the payments to the clients

8   and the attorneys will be made as individual cases are finally

9   settled with the consent of the individual clients.  The

10  holdback will be one and a half percent from the fee to the

11  attorney and one and a half percent from the payment intended

12  to the client.

13          The parties are reminded that this Court's order of

14  December 5th, 2006, page 26, indicates that the Court's prior

15  ruling on fees remains in effect with respect to all cases now

16  in this Court whether or not a motion to remand has been made,

17  so long as that motion is not decided.

18          My present recollection was that that fee was

19  35 percent or less depending on the arrangement with the

20  individual clients, but you would have to look at the record,

21  I'm depending at the moment on my recollection.

22          Any payment of the one and a half percent from the

23  fee shall not be deducted from the payment to the client.  But

24  I'm not characterizing that one and a half percent in any way

25  because there may be possible tax consequences of the

43

1  characterization and that's not an issue I now want to, or

2  will probably at any time want to, address.

3        The Court is very grateful to the Magistrate Judge

4  and the Special Master and the parties for the professional

5  way they've handled this matter.  Is there any other issue you

6  want me to decide today?

7        MR. FIBICH:  Your Honor, there's another issue, I'm

8  not sure it needs to be decided right now but there is the

9  issue that The Mulligan Firm raises when the issue of

10  assessment comes up and that is their application to seek a

11  writ on account of your failure to remand and there are

12  competing orders.

13        THE COURT:  No, I'm not issuing any order permitting

14  an interlocutory appeal.  I indicated that at a prior meeting

15  when there were some statements by some of the parties and I

16  suggested that there was a possible route through mandamus.  I

17  plan to do nothing to expedite an appeal.

18        MR. ROBERSON:  In that regards, Your Honor, the two

19  dueling orders that were submitted by the PSC II and The

20  Mulligan Law Firm that we spent a lot of time trying to

21  negotiate together so that we could present it as a unified

22  order in which Mr. Audet and I did agree that those

23  negotiations would be termed settlement agreement discussions

24  but we have presented to the Court dueling orders.  Obviously

25  the Court just ruled that my last paragraph will not be part

1    of that order that the Court suggested in our last June

2    meeting but the Court did at that time offer to sign an order

3    so that The Mulligan Firm could seek a mandamus on this issue.

4    I believe the order that The Mulligan Firm submitted without

5    the last paragraph, in its three subparts, the items dealing

6    with the interlocutory order we've presented in good faith

7    with the understanding that the Court believed that this was

8    an item that the Second Circuit should have an opportunity to

9    review at this time and we believe that the order removing the

10   last paragraph which the Court has now obviously ruled on, we

11   believe that that order in good faith presents the idea as I

12   understood it at the time, not that the Court wanted our

13   plaintiffs to be delayed in regards to the undisputed amounts

14   but that the Court didn't want us to be able to pay out the

15   disputed amounts ahead of time and in the context of the

16   Court's statements we've proffered that order to the Court for

17   the Court's signature so that we could seek a mandamus and

18   that order enjoins us from distributing to ourselves or to our

19   clients any funds that would be subject to the Court's order

20   today that those monies have to go to this set aside.

21         THE COURT:  The Court isn't asking you to remove

22   your request for an interlocutory appeal.  Your request

23   remains a request.  The order, however, will deny that request

24   that this Court certify.

25         So, the order should be reframed now by both

1   parties, if possible, in accordance with my rulings today on

2   the understanding that consenting to the form of the order is

3   not consent to the substance of the order.  I think my rulings

4   are clear enough so that the parties can get together and

5   formulate an order.  That order should include the denial of a

6   certificate for an interlocutory appeal and the other items I

7   indicated including what I've said about the fees being

8   subject to this Court's prior orders limiting those fees.

9           So, there are five points that have to be in that

10  order as I visualize it now based on my rulings today.  Is

11  there anything further?

12          Submit that order please, if you can, within

13  48 hours.  I'll modify it if necessary.  Try to agree on the

14  form.  If you can't, you can submit conflicting orders and

15  I'll modify them.

16          MR. ROBERSON:  Your Honor, can I speak with

17  Mr. Audet for a second to see if we --

18          THE COURT:  Yes.

19          (Pause.)

20          MR. ROBERSON:  All right, we think that we want to

21  present two orders, one dealing just with the recommendation

22  and the set aside and the second dealing with the injunction

23  and the question is the plaintiffs represented by The Mulligan

24  Law Firm understand that the Court does not seek to enjoin the

25  ability of The Mulligan Law Firm to actually pay undisputed

1   amounts to our clients.  Is that an accurate understanding of

2   the Court's order?

3           THE COURT:  It is.

4           MR. ROBERSON:  All right.

5           THE COURT:  As long as you deduct from that payment

6   the one and a half percent.  If your fee exceeds what the

7   Court has approved, you can pay any amount that's undisputed

8   by you to the client.  It's not the intention of the Court to

9   harm the client in any way.  The Court has throughout the

10  litigation attempted to expedite in every way possible prompt

11  and full payment to the client.  I think the attorneys, who

12  are highly professional, and the Court fully agree on that.

13  We're here to see that the clients get paid as quickly as

14  possible and as much as possible.

15          So, if there is any dispute, as the attorneys are

16  paid by the Lilly money, they'll put the disputed amounts in

17  an escrow fund or pay it over to the fund for the PSC II,

18  depending on how you work it out.

19          MR. ROBERSON:  Thank you, Your Honor.  I think that

20  clarified the issues that we were discussing.

21          THE COURT:  And you might try to articulate that in

22  your orders too.

23          MR. ROBERSON:  Yes, Your Honor.

24          MR. AUDET:  Your Honor, if I may, I apologize, I

25  know you want to leave.

1          THE COURT:   No.   I don't know why you think I want

2    to leave.

3          MR. AUDET:   I'm sorry.

4          THE COURT:   It is only 11 in the morning.   I have a

5    number of other cases but the attorneys for the other cases

6    are perfectly happy to listen as long as you'd like to speak.

7          MR. AUDET:   Okay.   Thank you, Your Honor.   Could I

8    just make one recommendation?   There is basically the

9    recommendation and proposed order from Special Master Woodin

10   that could be signed by Your Honor whenever Your Honor wishes.

11          With respect to the issues we have in his order

12   that's going to take us 48 hours, the only recommendation

13   would be if the Court is so inclined because it is almost

14   mixing apples and oranges in terms of the issues on his

15   appeal --

16          THE COURT:   I don't care what orders you want.   You

17   want me to sign --

18          MR. AUDET:   The recommendation order --

19          THE COURT:   -- Special Master Woodin's order --

20          MR. AUDET:   Yes.

21          THE COURT:   -- and make it my order?

22          MR. AUDET:   Correct, Your Honor.

23          THE COURT:   I can do that immediately.   If everybody

24   agrees, then we'll take care of whatever the other problems

25   are with a separate order to clarify.   I will do whatever you

48

1   wish or you can put it all in one order, whatever you prefer.
2   What do you want?

3          MR. ROBERSON:  I would request that you not sign
4   Special Master Woodin's recommendation because of the two
5   items that you've added.  I will get together and I will --
6   whether we put it in two orders or one, I don't care, but I do
7   think that if perhaps the Special Master could help me here, I
8   would suggest that the Special Master, if it is allowed by the
9   Court, take the Court's ruling today and add the two items
10  that the Court has added just as new paragraphs since the rest
11  of the document with the objections are on the record and then
12  my order regarding the attorney fees will get to the Court
13  separately within, and I would request 72 hours since I am on
14  vacation.

15         THE COURT:  72 hours is granted.  I'm not going to
16  sign the Special Master's recommendation.  It will have to be
17  put in the form of an order.

18         MR. ROBERSON:  Yes, Your Honor.

19         THE COURT:  And you'll have to either agree or not
20  agree on all of the decisions I've made today.

21         Is there any other party or individual who wishes to
22  be heard?

23         (No response.)

24         THE COURT:  The hearing is closed.  Thank you very
25  much, counsel.

49

1          MR. SHUAGHNESSY:  Thank you, Your Honor.

2          THE COURT:  It is always a pleasure to see you.

3    Thank you very much, counsel.

4          72 hours.  You'll have to order immediate copy

5    because I'll need it within 72 hours.

6          (End of proceedings.)

*IN RE:  ZYPREXA PRODUCTS LIABILITY LITIGATION      8/14/07      1*

**'**

**'05** [1] - 6:21
**'06** [6] - 7:3, 8:1, 8:23, 13:5, 21:16
**'07** [1] - 26:6

**0**

**06-CV-1729** [1] - 1:6

**1**

**1** [2] - 16:24, 17:9
**1.8** [1] - 27:9
**1.8,800** [1] - 27:13
**10.1** [1] - 20:13
**100** [1] - 9:24
**10017** [1] - 2:11
**10038** [1] - 1:16
**101** [1] - 39:13
**10170** [1] - 2:6
**11** [2] - 38:25, 47:4
**11201** [1] - 2:21
**12** [1] - 10:15
**14** [1] - 1:8
**1401** [1] - 1:20
**14th** [1] - 16:10
**1800** [1] - 1:20
**1984** [1] - 5:10
**1987** [1] - 5:14
**1996** [1] - 6:2
**1st** [3] - 35:14, 35:19, 40:20

**2**

**2** [1] - 19:2
**2,000** [1] - 18:17
**20** [1] - 4:8
**2006** [8] - 9:7, 20:10, 20:16, 20:21, 21:7, 22:22, 25:25, 42:14
**2007** [6] - 1:8, 3:8, 20:22, 21:7, 36:4, 36:11
**221** [1] - 1:24
**225** [1] - 2:21
**26** [1] - 42:14
**280** [1] - 2:11
**2911** [1] - 2:1

**3**

**3,000** [2] - 18:18, 19:2
**30** [2] - 17:3, 17:7
**30(b)(6** [2] - 8:19, 9:4
**31st** [7] - 3:8, 9:7, 20:10, 20:15, 20:21, 22:22, 23:7
**35** [1] - 42:19

**4**

**420** [1] - 2:5
**48** [2] - 45:13, 47:12

**5**

**52** [1] - 33:7
**5th** [2] - 7:13, 42:14

**6**

**613-2274** [1] - 2:22
**6th** [1] - 7:13

**7**

**718** [1] - 2:22
**72** [4] - 48:13, 48:15, 49:4, 49:5
**75219** [1] - 2:2
**77010** [1] - 1:21

**9**

**94105** [1] - 1:25
**9:30** [1] - 1:9

**A**

**a.m** [1] - 1:9
**ABA** [2] - 27:9, 27:12
**abilities** [1] - 31:8
**ability** [1] - 45:25
**able** [4] - 10:25, 23:20, 38:5, 44:14
**accept** [5] - 27:19, 27:21, 27:25, 28:4, 29:16
**accepted** [2] - 5:11, 36:10
**accepts** [2] - 28:5, 28:20
**accessed** [2] - 9:16, 9:18
**accidentally** [1] - 40:4
**accommodating** [1] - 13:17
**accordance** [1] - 45:1
**according** [1] - 38:6
**account** [2] - 37:23, 43:11
**accrued** [1] - 37:23
**accurate** [3] - 26:21, 38:25, 46:1
**actions** [4] - 6:8, 6:9, 8:5, 10:17
**active** [2] - 10:11, 10:14
**actual** [1] - 12:9
**add** [1] - 48:9
**added** [2] - 48:5, 48:10
**addition** [4] - 14:20, 19:2, 37:1, 37:7
**additional** [4] - 14:12, 22:6, 31:14, 31:16
**address** [1] - 43:2

**addressed** [2] - 39:4, 39:5
**addressing** [1] - 39:20
**admitted** [1] - 17:17
**adopted** [2] - 33:12, 33:15
**advised** [1] - 6:24
**afield** [1] - 27:4
**Agent** [1] - 39:15
**aggregate** [5] - 26:8, 27:13, 27:17, 28:2, 28:18
**aggressive** [1] - 10:25
**ago** [2] - 22:4, 24:12
**agree** [12] - 12:2, 20:20, 21:5, 27:17, 27:25, 28:1, 28:4, 43:22, 45:13, 46:12, 48:19, 48:20
**agreed** [4] - 13:2, 18:13, 26:10, 32:8
**agreement** [4] - 18:22, 29:3, 40:7, 43:23
**agreements** [2] - 18:25, 27:2
**agrees** [1] - 47:24
**ahead** [3] - 30:22, 40:1, 44:15
**Alexander** [1] - 6:4
**allocated** [1] - 28:17
**allow** [2] - 31:25, 34:17
**allowed** [2] - 30:25, 48:8
**allows** [1] - 23:8
**almost** [1] - 47:13
**alterations** [1] - 41:9
**ambiguity** [1] - 41:2
**amount** [17] - 17:25, 20:11, 22:7, 26:11, 26:19, 26:21, 27:20, 27:21, 28:6, 28:13, 28:14, 28:18, 28:21, 29:17, 35:20, 36:5, 36:21, 36:22, 37:4, 46:7
**amounts** [5] - 41:22, 44:13, 44:15, 46:1, 46:16
**Angeles** [1] - 40:17
**answer** [6] - 20:19, 23:14, 26:13, 29:6, 30:18, 38:23
**anticipate** [1] - 37:12
**apologize** [2] - 39:9, 46:24
**appeal** [5] - 43:14, 43:17, 44:22, 45:6, 47:15
**Appeal** [1] - 5:16
**Appeals** [1] - 11:24
**Appearances** [1] - 2:13
**APPEARANCES** [1] - 1:13
**apples** [1] - 47:14
**application** [4] - 37:13, 38:9, 41:23, 43:10
**applications** [1] - 41:19
**applied** [1] - 28:8
**applies** [1] - 28:1
**apply** [1] - 7:11
**appointed** [4] - 7:14, 7:18, 14:2, 37:8
**appointment** [2] - 7:7, 7:22
**appreciate** [1] - 30:4
**appropriately** [2] - 38:2, 41:13
**approved** [1] - 46:7
**April** [1] - 7:13
**area** [1] - 6:6

IN RE:   ZYPREXA PRODUCTS LIABILITY LITIGATION      8/14/07      2

argued [2] - 24:20, 25:10
arguments [1] - 38:24
arrangement [1] - 42:19
articulate [1] - 46:21
Aside [1] - 16:19
aside [7] - 20:14, 27:5, 28:13, 28:15, 29:23, 44:20, 45:22
aspersions [2] - 30:12, 31:1
assessment [22] - 14:24, 15:22, 15:23, 16:16, 17:2, 18:1, 22:1, 28:7, 29:1, 29:8, 32:9, 33:16, 33:17, 33:18, 33:21, 33:24, 34:9, 34:14, 36:8, 36:12, 37:4, 43:10
assist [1] - 12:20
Assisted [1] - 2:25
associates [1] - 17:4
attempt [1] - 21:24
attempted [1] - 46:10
attendant [1] - 9:9
attended [1] - 14:17
attorney [6] - 5:4, 12:16, 27:18, 42:3, 42:11, 48:12
attorneys [4] - 42:8, 46:11, 46:15, 47:5
attributed [1] - 39:16
AUDET [6] - 1:24, 1:25, 46:24, 47:3, 47:7, 47:18, 47:20, 47:22
Audet [21] - 4:2, 4:14, 5:3, 5:4, 6:4, 6:5, 6:6, 12:19, 15:19, 16:17, 16:18, 16:25, 17:21, 18:9, 19:16, 19:22, 26:15, 33:5, 40:17, 43:22, 45:17
Audet's [3] - 26:23, 27:3, 37:3
August [1] - 1:8
available [3] - 37:21, 38:3, 38:6
Avenue [2] - 2:5, 2:11
avoid [1] - 17:14
avoiding [1] - 27:11
aware [6] - 9:13, 10:16, 26:24, 27:11, 30:24, 35:21

**B**

background [1] - 5:8
Based [1] - 21:8
based [6] - 8:18, 18:16, 28:18, 34:14, 45:10
basis [2] - 20:13, 38:23
became [2] - 6:3, 37:25
become [2] - 6:18, 7:7
BEFORE [1] - 1:10
behalf [5] - 3:20, 10:5, 29:20, 36:3, 41:25
benefit [13] - 11:10, 11:25, 12:19, 15:13, 17:23, 21:10, 31:10, 34:14, 36:5, 36:13, 36:14, 37:21, 37:23
benefited [2] - 10:19, 10:23
benefitted [1] - 37:12
best [2] - 19:4, 41:10
bias [1] - 31:25
big [1] - 11:16

▓ - 19:25, 21:24, 21:25
▓ [1] - 21:19
▓ [1] - 23:21
▓ - 15:10
▓ [1] - 2:16
▓ [1] - 2:1
▓ [3] - 6:12, 6:15, 6:17
▓ [1] - 17:5
▓ [1] - 13:8
▓ [1] - 13:13
▓ [3] - 24:10, 25:11, 25:25, 39:16
▓ [3] - 13:10, 14:13, 24:21
▓ [4] - 11:14, 11:18, 24:21, 25:12
▓ [2] - 5:7, 17:18
▓ [3] - 25:3, 25:21, 25:23
▓ [2] - 1:7, 2:21
▓ [1] - 39:21
▓ - 12:10
▓ [1] - 37:17
▓ [2] - 2:15, 37:17
▓ [1] - 3:7
▓ [6] - 1:16, 1:21, 1:25, 2:2, 2:7, 5:1, 18:18, 24:7, 33:4, 34:7

**C**

▓ [2] - 5:24, 5:25
▓ [1] - 2:21
▓ [17] - 1:25, 5:5, 5:18, 27:12, 27:15, 27:15, 27:19, 31:19, 32:12, 32:13, 33:16, 33:19, 33:20, 34:20, 34:24, 39:1, 40:18
▓ [1] - 7:21
▓ [4] - 23:23, 47:16, 47:24, 48:6
▓ [1] - 24:6
▓ [1] - 9:19
▓ [23] - 3:1, 6:21, 7:6, 9:21, 10:15, 11:17, 14:7, 27:5, 27:17, 27:25, 32:17, 34:21, 36:10, 39:13, 39:16, 39:19, 39:20, 40:18, 40:19, 41:14, 42:1
▓ [3] - 14:12, 30:13, 31:15
▓ [43] - 6:23, 10:23, 10:25, 11:1, 11:23, 12:7, 12:17, 13:4, 18:14, 18:22, 19:3, 20:23, 20:24, 21:5, 21:11, 21:19, 21:21, 22:3, 22:4, 22:5, 24:8, 24:13, 25:6, 29:1, 29:2, 30:14, 31:9, 33:8, 33:16, 33:20, 34:22, 34:23, 36:6, 36:8, 36:19, 36:19, 39:21, 40:11, 40:15, 42:8, 42:15, 47:5
▓ [1] - 21:21
▓ [2] - 30:12, 31:1
▓ - 12:9
▓ [1] - 1:20
▓ [2] - 12:3, 28:17
▓ [1] - 38:1
▓ [1] - 45:6
▓ [1] - 44:24
▓ [1] - 41:22

challenges [5] - 35:22, 35:23, 35:25, 36:1, 36:16
chance [2] - 13:21, 25:11
change [1] - 7:10
changeover [1] - 7:1
characterization [2] - 12:5, 43:1
characterizing [1] - 42:24
charge [2] - 24:15, 40:13
charged [1] - 40:1
chip [1] - 15:18
chronological [1] - 41:24
Circuit [3] - 5:16, 39:17, 44:8
Circuit's [1] - 39:18
cite [3] - 39:12, 39:17, 39:19
cited [1] - 40:5
Civil [1] - 3:2
claimants [2] - 42:1
claims [1] - 40:14
clarified [2] - 41:3, 46:20
clarify [1] - 47:25
clarity [1] - 40:25
class [1] - 6:8
clear [11] - 8:22, 15:1, 15:17, 22:3, 22:9, 29:13, 30:3, 38:19, 40:23, 41:11, 45:4
Clearly [1] - 28:4
clearly [1] - 29:4
CLERK [1] - 3:2
clerk [4] - 5:17, 5:22, 5:23, 24:2
clerked [2] - 5:15, 5:21
client [12] - 27:24, 28:4, 28:5, 28:15, 28:18, 29:15, 42:3, 42:12, 42:23, 46:8, 46:9, 46:11
client's [1] - 28:6
clients [13] - 11:11, 27:3, 28:12, 28:14, 36:9, 36:13, 41:15, 42:7, 42:9, 42:20, 44:19, 46:1, 46:13
clinical [1] - 5:12
close [1] - 16:12
closed [1] - 48:24
collected [2] - 20:9, 36:11
comment [2] - 30:12, 31:1
commitment [1] - 10:15
Committee [21] - 4:3, 7:16, 7:20, 7:23, 8:3, 8:8, 8:22, 10:12, 10:17, 10:23, 11:15, 12:25, 15:8, 15:9, 22:8, 22:11, 29:21, 29:22, 36:15, 36:25
common [7] - 17:23, 22:1, 22:19, 22:20, 22:21, 34:14, 37:21
Company [3] - 9:22, 35:23, 36:4
compel [1] - 30:7
compensated [3] - 22:12, 37:20, 38:2
compensation [7] - 22:7, 23:7, 23:11, 23:25, 24:1, 35:13, 38:4
competing [1] - 43:12
completely [1] - 23:20
completes [1] - 35:10
Computer [1] - 2:25
Computer-Assisted [1] - 2:25

concerned [1] - 22:16
conclusion [2] - 10:22, 11:5
concurring [1] - 39:14
conditional [1] - 28:10
conducted [3] - 3:22, 8:18, 10:2
conference [1] - 12:25
conferences [2] - 3:24, 31:10
confidence [1] - 27:1
confidential [1] - 18:13
confidentiality [1] - 27:2
conflicting [1] - 45:14
conflicts [2] - 27:10, 27:11
connections [1] - 3:6
consent [2] - 42:9, 45:3
consenting [1] - 45:2
consequences [1] - 42:25
consider [1] - 11:8
considering [1] - 3:7
consistent [1] - 14:8
consolidated [1] - 33:9
contacted [1] - 6:22
contains [1] - 16:25
context [3] - 18:13, 40:5, 44:15
contingent [1] - 26:9
continued [1] - 37:9
contractually [1] - 26:25
contrary [1] - 10:16
contrast [1] - 8:12
contributions [2] - 9:12, 35:17
contributor [1] - 6:16
control [1] - 40:14
copies [1] - 24:15
copy [7] - 16:1, 16:2, 16:13, 16:14, 25:9, 25:20, 49:4
cordial [1] - 24:17
core [1] - 25:19
corporate [2] - 8:20, 9:3
Correct [6] - 12:21, 15:4, 16:20, 17:3, 18:20, 47:22
correct [16] - 8:8, 8:9, 10:13, 12:20, 12:24, 13:18, 14:19, 16:19, 17:2, 18:11, 18:12, 25:7, 26:14, 26:17, 32:18, 33:19, 34:9, 34:21
cost [2] - 12:14, 12:16
coughing [1] - 17:13
counsel [7] - 8:7, 18:2, 19:20, 37:8, 48:25, 49:3
country [4] - 8:4, 10:24, 11:2, 11:21
couple [1] - 30:3
course [5] - 3:21, 8:21, 23:8, 38:7, 41:21
court [14] - 6:14, 11:3, 32:18, 33:6, 33:8, 33:9, 33:10, 33:18, 33:24, 34:14, 39:19, 40:11, 40:12
Court [72] - 2:20, 3:24, 4:1, 4:4, 4:5, 4:13, 5:16, 5:18, 7:14, 7:24, 8:5, 8:10, 10:18, 11:4, 11:7, 11:9, 11:23, 14:2, 14:6, 15:20, 15:24, 16:14, 17:5, 18:11, 22:16, 23:8, 23:24, 24:9, 32:9, 35:11,

36:14, 35:21, 36:12, 36:16, 36:20, 37:2, 37:8, 38:22, 39:3, 39:6, 39:12, 39:23, 40:1, 40:22, 41:6, 41:8, 41:9, 41:11, 41:13, 42:16, 43:3, 43:24, 43:25, 44:1, 44:7, 44:10, 44:12, 44:14, 44:16, 44:24, 45:24, 46:7, 46:8, 46:9, 47:2, 47:13, 48:9, 48:10, 48:12
COURT [66] - 1:1, 3:1, 3:4, 3:16, 3:19, 4:3, 4:10, 4:15, 4:17, 4:22, 11:6, 11:8, 11:16, 16:4, 16:6, 16:23, 17:10, 17:12, 17:18, 17:19, 19:8, 19:10, 19:18, 22:15, 23:3, 23:10, 23:14, 23:16, 23:23, 24:5, 25:8, 27:6, 27:23, 29:5, 29:19, 31:25, 32:2, 32:24, 33:2, 34:3, 35:3, 35:8, 36:7, 37:14, 37:16, 38:8, 38:18, 41:16, 42:6, 43:13, 44:21, 45:18, 46:3, 46:5, 46:6, 47:1, 47:4, 47:16, 47:19, 47:21, 48:5, 48:15, 48:19, 48:24, 49:2
Court's [10] - 13:4, 39:22, 42:13, 43:4, 44:16, 44:17, 44:19, 45:8, 46:2,

courtesy [1] - 4:19
courthouse [1] - 1:7
cover [1] - 37:5
credibility [1] - 32:1
critical [1] - 4:20
crucial [1] - 2:1
CROSS [1] - 19:14
cross [5] - 17:16, 19:8, 23:17, 32:25, 33:4
cross-examination [1] - 19:8
CROSS-EXAMINATION [1] - 19:14
cross-examine [1] - 32:25
crucial [1] - 2:20
cure [1] - 8:17
cumbersome [1] - 12:10
cure [1] - 17:7
cutoff [1] - 41:24

D

daily [1] - 8:2
date [1] - 2:2
days [1] - 16:9
Dayvigo [2] - 35:24, 36:16
DAVIS [1] - 2:16
dealing [6] - 8:11, 27:9, 27:13, 44:5, 44:21, 45:22
December [12] - 6:21, 9:7, 20:10, 20:19, 20:21, 21:16, 22:4, 22:22, 23:7, 25:25, 26:6, 42:14
decide [2] - 40:2, 43:6
decided [3] - 9:5, 42:17, 43:8
decision [2] - 22:8, 22:11
decisions [1] - 48:20
declaration [4] - 15:19, 16:2, 16:25, 17:1
dedication [1] - 16:18
dedications [2] - 15:21, 36:2

deduct [1] - 46:5
deducted [1] - 42:23
defendant [1] - 30:7
defendants [2] - 12:2, 12:6
deficient [1] - 14:5
degree [1] - 5:13
delayed [2] - 3:6, 44:13
denial [1] - 45:5
Denver [1] - 9:18
deny [1] - 44:23
deponents [1] - 10:4
depositions [14] - 8:19, 8:20, 8:24, 9:1, 9:3, 9:12, 9:21, 9:23, 9:25, 10:1, 10:2, 36:1, 37:1
depository [3] - 9:14, 9:16, 9:18
describe [3] - 5:7, 7:23, 8:10
designate [1] - 16:21
designated [1] - 9:4
designee [1] - 8:20
desires [2] - 41:9, 41:10
despite [1] - 41:12
different [3] - 8:4, 25:23
difficult [1] - 36:17
DIRECT [1] - 4:25
direct [1] - 9:3
directly [2] - 5:25, 9:11
disagreed [1] - 13:23
disbanded [1] - 22:25
disbursements [2] - 41:24, 41:25
Discovery [1] - 6:12
discovery [9] - 3:9, 6:14, 9:13, 10:7, 13:6, 14:8, 14:10, 14:21, 14:25
discretion [1] - 38:6
discussed [1] - 32:14
discussing [1] - 46:20
discussions [4] - 18:9, 22:12, 30:5, 43:23
dispute [1] - 46:15
disputed [2] - 44:15, 46:16
disseminate [1] - 37:10
distributing [1] - 44:18
district [1] - 39:19
DISTRICT [2] - 1:1, 1:1
District [3] - 1:11, 5:18
document [2] - 39:25, 48:11
documents [6] - 8:16, 8:17, 9:6, 9:14, 18:24
dollars [1] - 20:13
done [13] - 8:15, 17:1, 20:2, 20:23, 21:10, 21:17, 25:13, 30:4, 30:11, 34:14, 35:24, 36:4, 40:15
doubt [1] - 25:22
down [2] - 17:7, 26:21
Driscoll [1] - 2:20
due [5] - 14:6, 30:15, 30:20, 40:24, 41:21
dueling [2] - 43:19, 43:24
during [3] - 8:21, 9:7, 36:10

IN RE:  ZYPREXA PRODUCTS LIABILITY LITIGATION      8/14/07      4

**E**

early [3] - 11:18, 12:8, 24:16
East [1] - 2:21
EASTERN [1] - 1:1
educational [1] - 5:7
effect [1] - 42:15
effort [4] - 30:12, 30:13, 35:21, 37:1
eight [1] - 6:1
either [7] - 3:15, 8:2, 15:16, 16:12, 33:18, 41:6, 48:19
elected [1] - 7:19
Eli [10] - 2:5, 9:22, 14:8, 26:24, 29:3, 30:7, 31:16, 35:23, 36:4, 41:11
Elizabeth [1] - 5:25
elsewhere [1] - 34:15
end [3] - 6:20, 8:23, 22:20
End [1] - 49:6
ended [1] - 21:14
energy [1] - 23:4
enjoin [1] - 45:24
enjoins [1] - 44:18
entered [3] - 21:12, 21:18, 21:23
entire [2] - 25:10, 28:14
entitled [1] - 16:17
equally [1] - 32:8
equitable [1] - 23:22
Eric [1] - 19:20
ERIC [2] - 2:2, 2:18
escrow [1] - 46:17
ESQ [6] - 1:16, 1:17, 1:25, 2:2, 2:7, 2:10
essentially [3] - 8:21, 12:3, 18:7
established [2] - 15:11, 42:6
establishing [1] - 9:21
estimate [5] - 4:8, 17:21, 18:3, 20:13
evidence [1] - 4:1
evidentiary [2] - 3:25, 35:10
exact [1] - 17:25
exaggeration [1] - 8:1
EXAMINATION [4] - 4:25, 19:14, 33:3, 34:6
examination [2] - 19:8, 36:3
examine [2] - 32:25, 35:4
example [4] - 11:9, 20:7, 21:22, 37:9
examples [1] - 12:12
exceeds [1] - 46:6
except [2] - 15:14, 33:15
exception [3] - 18:7, 33:16, 33:17
excess [1] - 18:17
excludes [1] - 20:17
excuse [4] - 7:12, 16:15, 20:18, 33:13
Excuse [1] - 38:18
excused [2] - 35:5, 35:6
Executive [18] - 4:2, 7:16, 7:20, 7:22, 8:3, 8:8, 8:22, 10:11, 10:22, 11:14, 12:25, 15:8, 22:8, 22:11, 29:20, 29:22, 36:25

exhibit [1] - 16:6
exhibit [2] - 16:24, 17:9
existing [1] - 6:25
expect [2] - 22:19, 41:6
expertise [2] - 43:17, 46:10
extended [1] - 35:20
expenses [2] - 18:5, 41:20
themselve [1] - 12:11
expert [2] - 11:17, 11:22
experts [6] - 12:8, 36:1, 36:2, 36:3, 36:24, 36:25
explain [1] - 11:24
extension [3] - 30:20, 31:12

**F**

face [10] - 14:5, 14:9, 14:15, 14:22, 28:8, 30:8, 31:5, 31:12, 36:14, 41:12
face [1] - 21:2
facial [3] - 11:8, 34:19, 38:23
facility [2] - 30:8, 38:25
FACEY [1] - 2:15
facture [1] - 43:11
fact [2] - 23:21, 26:20, 27:20
fact [4] - 30:12, 41:11, 44:6, 44:11
fact [1] - 13:5
factor [6] - 27:9, 27:14, 30:8, 30:19, 33:1, 33:7
fair [6] - 5:8, 15:14, 23:5, 27:4, 32:15
February [2] - 7:5, 7:12
federal [1] - 6:12
federal [3] - 6:14, 32:13, 33:11
fee [2] - 22:18, 39:24, 40:10, 41:2, 42:10, 42:18, 42:23, 46:6
fees [8] - 41:20, 41:23, 41:25, 42:3, 42:5, 45:7, 45:8, 48:12
felt [1] - 29:13
firm [1] - 5:17
field [4] - 6:11, 19:24, 22:4, 39:1
fifth [4] - 3:20, 7:5, 11:15, 38:24
FIFTH [22] - 1:19, 1:21, 3:20, 4:8, 4:14, 4:21, 5:1, 16:10, 16:21, 16:24, 17:1, 19:6, 26:22, 27:22, 28:23, 31:22, 33:3, 34:2, 35:10, 37:15, 43:7
field [1] - 6:7
field [1] - 40:14
figures [1] - 22:23
file [1] - 25:10
filed [11] - 6:21, 6:23, 15:19, 15:21, 16:24, 16:12, 16:14, 24:8, 24:10, 24:12, 24:3
filed [1] - 29:24
finally [2] - 39:18, 42:8
find [37] - 9:8, 9:20, 10:19, 12:15, 14:1, 14:11, 14:18, 15:2, 15:12, 18:6, 18:15, 19:1, 21:6, 21:10, 21:24, 24:4, 24:20, 29:15, 30:9, 30:19, 31:5, 31:1, 37:22, 37:25, 38:16, 39:1, 39:11, 39:5, 40:6, 41:7, 43:9, 43:20, 44:3,

44:4, 45:24, 45:25
firm [27] - 5:24, 6:3, 6:4, 6:5, 11:11, 18:8, 20:7, 22:4, 23:3, 24:12, 24:14, 25:18, 26:15, 29:15, 31:7, 31:14, 31:18, 31:19, 32:6, 33:7, 34:8, 34:22, 37:8, 39:2, 40:9
FIRM [1] - 2:1
firm's [5] - 22:5, 25:19, 31:2, 32:11, 40:19
Firm's [1] - 14:5, 25:10, 30:6
firms [5] - 18:25, 21:6, 36:25, 37:19, 37:25
First [1] - 39:2
first [7] - 5:17, 6:18, 6:21, 20:22, 21:3, 21:7, 40:19
fit [1] - 41:14
Five [2] - 1:20, 15:2
five [2] - 14:23, 45:9
focus [2] - 8:23, 22:13
focused [1] - 14:21
follow [1] - 31:24
follow-up [1] - 31:24
followed [1] - 23:19
following [2] - 27:18, 33:10
follows [3] - 4:24, 8:15, 20:4
footnote [1] - 18:23
force [1] - 27:19
forced [1] - 12:7
form [5] - 3:8, 28:23, 45:2, 45:14, 48:17
formation [1] - 8:25
formulate [1] - 45:5
fortunate [1] - 8:7
forward [3] - 4:5, 40:8, 41:14
forwarded [2] - 41:3, 41:8
foundation [1] - 21:2
frame [2] - 6:3, 6:24
Francisco [1] - 1:25
free [2] - 24:22, 25:12
front [4] - 34:13, 39:5, 40:7, 40:8
fueling [1] - 32:17
full [4] - 28:11, 39:13, 40:5, 46:11
fully [3] - 24:21, 37:20, 46:12
function [1] - 37:9
fund [9] - 22:1, 22:16, 22:19, 22:20, 22:21, 23:7, 42:6, 46:17
funds [4] - 23:1, 38:3, 38:6, 44:19

**G**

Gate [1] - 5:10
gather [3] - 18:5, 20:11, 23:12
gathered [3] - 8:15, 21:16, 23:4
general [2] - 27:15, 27:24
generally [4] - 8:10, 15:8, 15:9, 33:15
Giangarra [1] - 5:19
GIAQUINTA [1] - 2:18
given [7] - 10:14, 13:3, 14:15, 24:21, 26:20, 29:16

**gladly** [1] - 40:10
**Golden** [1] - 5:10
**graduated** [2] - 5:10, 5:14
**granted** [1] - 48:15
**grateful** [1] - 43:3
**group** [2] - 28:12, 28:14
**guess** [4] - 7:18, 10:21, 19:4, 38:21
**guys** [4] - 30:11, 30:14, 30:17, 30:21

## H

**HAHN** [1] - 2:16
**half** [8] - 5:15, 22:17, 22:18, 42:10, 42:11, 42:22, 42:24, 46:6
**HAMILTON** [1] - 2:5
**HAMPTON** [1] - 1:19
**hand** [1] - 8:21
**hand-off** [1] - 8:21
**handled** [1] - 43:5
**Handling** [1] - 6:12
**happy** [4] - 32:4, 32:5, 38:19, 47:6
**hard** [1] - 18:18
**Harlon** [1] - 39:13
**harm** [1] - 46:9
**HARRINGTON** [1] - 2:17
**hate** [1] - 19:4
**Hawes** [1] - 6:4
**hear** [10] - 3:13, 3:15, 3:16, 4:1, 17:13, 32:4, 32:5, 38:16, 38:18, 38:20
**heard** [10] - 3:12, 3:19, 37:16, 38:11, 38:12, 38:17, 38:19, 41:17, 41:22, 48:22
**hearing** [8] - 3:25, 14:11, 14:16, 21:13, 22:16, 30:16, 37:10, 48:24
**hearings** [8] - 3:22, 12:22, 14:3, 14:21, 14:24, 15:2, 17:24
**heavily** [1] - 11:13
**Heimann** [1] - 5:24
**Hello** [1] - 17:12
**help** [3] - 14:1, 25:2, 48:7
**helped** [2] - 13:25
**hesitant** [1] - 16:3
**highly** [1] - 46:12
**Hirsch** [2] - 37:18
**history** [2] - 5:9, 35:16
**holdback** [4] - 26:6, 26:8, 42:5, 42:10
**Holdbacks** [1] - 42:2
**Holly** [1] - 2:20
**honestly** [1] - 34:16
**Honor** [39] - 3:20, 4:9, 4:13, 4:21, 16:8, 16:22, 17:8, 19:6, 19:9, 23:15, 25:14, 26:22, 27:22, 28:24, 29:18, 31:23, 31:24, 34:2, 34:4, 35:7, 35:11, 37:7, 37:15, 37:17, 38:14, 38:15, 39:20, 43:7, 43:18, 45:16, 46:19, 46:23, 46:24, 47:7, 47:10, 47:22, 48:18, 49:1
**Honor's** [1] - 39:19
**HONORABLE** [1] - 1:11
**honored** [2] - 5:16, 7:14

## I

**Iға** [1] - 20:6, 23:25
**Iса** [1] - 12:8
**idea** [3] - 25:17, 25:18, 44:11
**idea** [1] - 1:15, 4:3, 7:8, 7:23, 8:13, 8:25, 9:16, 16:24, 17:22, 20:15, 20:22, 20:23, 21:23, 22:20, 22:24, 23:18, 23:19, 24:10, 24:19, 24:22, 25:6, 25:12, 29:10, 33:11, 35:16, 35:19, 37:19, 38:2, 39:3, 39:11, 40:7, 41:3, 41:12, 41:20, 41:23, 45:19, 46:17
**idea** [1] - 16:18, 17:9, 21:17, 23:25, 24:13, 39:16
**idea** [1] - 16:23
**immediate** [1] - 49:4
**immediately** [1] - 47:23
**implemented** [1] - 22:14
**implying** [1] - 36:8
**important** [1] - 11:16
**improper** [1] - 27:18
**inc** [1] - 1:3
**incentive** [1] - 5:6
**inclination** [1] - 13:4
**inclined** [1] - 47:13
**include** [4] - 14:24, 14:25, 39:8, 45:5
**included** [1] - 34:24
**includes** [1] - 20:15
**including** [4] - 7:4, 11:3, 11:15, 45:7
**incurred** [1] - 17:22
**indefinite** [1] - 28:24
**indiana** [13] - 33:6, 33:7, 33:8, 33:9, 33:10, 33:19, 33:21, 33:25, 34:8, 34:12, 34:13, 34:16
**indicated** [4] - 3:24, 7:9, 43:14, 45:7
**indicates** [2] - 42:14
**individual** [7] - 26:18, 29:24, 29:25, 42:8, 42:9, 42:20, 48:21
**individuals** [4] - 6:23, 9:4, 9:5
**ingested** [1] - 6:23
**injunction** [1] - 45:22
**injury** [1] - 12:10
**inner** [1] - 26:23
**insofar** [2] - 9:14, 10:20
**instructed** [1] - 18:4
**instructor** [1] - 5:12
**intended** [1] - 42:11
**intends** [1] - 35:12
**intention** [2] - 40:13, 46:8

**interest** [2] - 27:10, 27:11
**interested** [2] - 37:11, 41:22
**interlocutory** [4] - 43:14, 44:6, 44:22, 45:6
**interrogatories** [1] - 14:10
**inured** [3] - 11:10, 17:22, 36:5
**inuring** [2] - 36:13
**invited** [3] - 7:2, 7:10, 32:11
**involved** [9] - 6:18, 6:20, 8:2, 9:8, 9:11, 11:13, 13:2:6, 35:16, 37:25
**involvement** [2] - 7:23, 8:1
**involves** [1] - 27:3
**irrelevant** [1] - 28:25
**issue** [22] - 11:16, 13:6, 13:22, 14:4, 14:13, 16:16, 17:25, 21:15, 26:5, 29:7, 35:11, 38:8, 38:13, 39:6, 39:20, 41:2, 43:1, 43:5, 43:7, 43:9, 44:3
**Issued** [3] - 14:6, 28:8, 32:16
**issues** [11] - 10:7, 14:25, 25:3, 25:19, 27:4, 39:3, 40:21, 46:20, 47:11, 47:14
**issuing** [1] - 43:13
**item** [3] - 39:8, 41:4, 44:8
**itemization** [1] - 20:1
**itemized** [1] - 20:1
**items** [8] - 30:6, 39:2, 39:23, 40:24, 44:5, 45:6, 48:5, 48:9

## J

**JACK** [1] - 1:11
**JAMES** [1] - 1:17
**January** [7] - 6:4, 7:2, 7:5, 7:12, 23:4, 26:6, 35:19
**Jim** [1] - 11:15
**journals** [1] - 6:11
**judge** [9] - 23:20, 24:1, 33:10, 33:12, 33:19, 33:20, 40:23, 41:21
**Judge** [9] - 1:11, 3:13, 5:17, 5:20, 5:21, 6:16, 33:11, 33:12, 43:3
**judge's** [1] - 24:2
**judges** [1] - 12:2
**judgment** [1] - 25:20
**July** [1] - 3:8
**June** [1] - 44:1
**jurisdiction** [3] - 39:4, 39:6, 39:22
**jurisdictional** [2] - 40:14, 41:4
**justifies** [1] - 17:1

## K

**KATHRYN** [1] - 2:17
**KENNETH** [1] - 2:7
**kept** [2] - 26:25, 27:1
**KING** [4] - 2:7, 12:5, 17:18, 38:14
**Kirk** [1] - 5:21
**knowledge** [8] - 9:20, 10:8, 18:21, 33:23, 34:8, 34:11, 34:20, 35:1
**KRISTIN** [1] - 2:18

## L

labor [1] - 22:24
labors [1] - 22:21
lack [1] - 40:25
large [1] - 21:5
last [6] - 5:22, 21:6, 43:25, 44:1, 44:5, 44:10
late [1] - 31:5
law [11] - 5:8, 5:13, 5:17, 5:23, 5:24, 6:7, 6:11, 24:2, 29:15, 34:12, 34:18
LAW [1] - 2:1
Law [12] - 5:11, 14:5, 14:18, 21:10, 21:24, 30:6, 30:9, 30:19, 31:5, 43:20, 45:24, 45:25
lay [1] - 21:2
leadership [2] - 7:3, 7:11
learn [1] - 7:6
least [7] - 13:12, 13:14, 14:3, 14:11, 14:16, 14:23
leave [2] - 46:25, 47:2
LEEBRON [1] - 1:19
left [1] - 6:3
legal [2] - 10:21, 11:5
less [1] - 42:19
Lexington [1] - 2:5
liability [4] - 8:24, 8:25, 9:3, 9:21
LIABILITY [1] - 1:5
liaison [2] - 37:8
licensed [3] - 5:4, 5:5, 5:6
Lieff [1] - 5:24
lieu [1] - 14:9
Lilly [11] - 2:5, 9:22, 14:8, 26:24, 29:4, 31:16, 35:23, 36:4, 38:12, 41:12, 46:16
Lilly's [3] - 8:7, 30:7, 42:7
limit [1] - 34:4
limited [1] - 20:4
limiting [1] - 45:8
lines [2] - 9:24, 10:10
listen [3] - 24:6, 36:7, 47:6
litigation [10] - 6:18, 12:20, 13:18, 13:25, 31:20, 32:7, 32:17, 37:24, 38:1, 46:10
Litigation [1] - 3:3
LITIGATION [1] - 1:5
LLM [2] - 5:12, 5:14
LLP [3] - 1:15, 1:19, 2:5
local [1] - 34:8
located [1] - 9:18
lodestars [1] - 38:4
logs [1] - 10:7
Lone [13] - 11:13, 11:21, 11:24, 12:1, 12:3, 24:20, 24:24, 25:2, 25:10, 25:12, 25:19, 25:25, 26:3
look [3] - 10:16, 17:18, 42:20
looking [2] - 5:22, 9:14
Los [1] - 40:17
lucky [1] - 5:21

## M

magistrate [6] - 23:20, 24:1, 24:2, 38:2, 40:23, 41:21
magistrate [1] - 43:3
main [1] - 1:24
main [1] - 3:7
maintain [1] - 40:14
majority [1] - 20:20
malamus [3] - 43:16, 44:3, 44:17
manner [1] - 40:16
march [4] - 7:5, 7:12, 7:13, 40:20
mark [1] - 37:17
mark [1] - 2:15
master [6] - 6:8, 20:24, 21:18, 21:20, 40:10, 40:18
MASTER [1] - 2:10
master [1] - 3:10
matter [35] - 3:22, 8:6, 10:19, 12:19, 13:2, 13:3, 13:6, 13:7, 13:8, 13:14, 13:16, 13:19, 14:2, 14:19, 15:5, 15:13, 16:5, 16:13, 17:25, 18:1, 20:4, 20:9, 21:18, 30:6, 30:22, 30:25, 31:11, 31:16, 33:13, 43:4, 47:9, 47:19, 48:4, 48:7, 48:20
matter's [6] - 21:13, 22:10, 29:12, 40:22, 40:25, 48:16
may [1] - 24:4
mean [4] - 23:3, 23:24, 24:21, 43:5
means [16] - 6:15, 7:24, 8:6, 8:11, 9:6, 9:8, 9:9, 10:18, 13:10, 13:11, 13:13, 14:18, 15:6, 16:25, 24:18
McKinney [1] - 1:20
mean [6] - 7:25, 14:7, 32:13, 33:5, 35:11
means [2] - 14:8, 40:9
mean [2] - 25:1, 27:15
meant [1] - 31:6
mechanical [1] - 2:25
medical [1] - 31:20
melody [1] - 17:4
meeting [7] - 8:3, 12:25, 43:14, 44:2
meetings [1] - 9:11
men [1] - 15:9
Melvyn [2] - 29:20, 37:7
MELVYN [1] - 1:16
member [10] - 4:2, 7:8, 7:22, 10:11, 18:18, 20:5, 20:7, 20:17, 20:18, 22:11
members [16] - 7:3, 7:9, 7:20, 8:4, 9:22, 10:2, 11:14, 17:22, 18:2, 18:5, 24:22, 29:22, 31:13, 31:15, 35:15
men [2] - 5:19, 7:3
Michael [1] - 5:3
microphone [1] - 39:10
might [1] - 8:23
Mike [16] - 12:24, 13:15
Mike [2] - 24:16, 46:21
MILBERG [1] - 1:15
miller [2] - 25:9, 25:18
Miller's [3] - 22:5, 25:4, 25:6
million [1] - 20:13
millions [2] - 8:16, 9:5
mind [1] - 11:13
mine [1] - 25:24
minutes [1] - 4:8
mis [1] - 40:4
mixing [1] - 47:14
modify [2] - 45:13, 45:15
moment [3] - 22:25, 26:4, 42:21
money [15] - 12:15, 12:17, 15:7, 28:9, 28:13, 28:14, 28:21, 29:3, 29:11, 29:15, 29:23, 36:22, 36:24, 38:5, 46:16
monies [1] - 44:20
month [1] - 30:18
months [3] - 21:22, 22:4, 24:12
morning [6] - 3:4, 19:16, 19:17, 19:22, 19:23, 47:4
MOSES [1] - 24:4
Moses [1] - 24:4
most [5] - 10:11, 14:21, 27:15, 33:12, 34:23
Motion [1] - 16:18
motion [6] - 3:2, 10:7, 11:9, 17:17, 30:7, 34:9, 42:16, 42:17
motions [4] - 24:9, 24:11, 24:13, 24:15
move [4] - 13:25, 19:13, 40:8, 41:14
moved [1] - 9:19
MR [60] - 3:20, 4:8, 4:12, 4:21, 5:1, 11:5, 12:5, 16:10, 16:21, 16:24, 17:8, 17:15, 17:18, 19:6, 19:9, 19:13, 19:15, 19:20, 24:4, 24:7, 25:14, 28:22, 27:22, 28:23, 29:18, 29:20, 30:1, 31:22, 31:24, 32:19, 32:21, 32:23, 33:4, 34:2, 34:4, 34:7, 35:2, 35:10, 37:7, 37:15, 37:17, 38:14, 38:15, 38:21, 43:7, 43:18, 45:16, 45:20, 46:4, 46:19, 46:23, 46:24, 47:3, 47:7, 47:18, 47:20, 47:22, 48:3, 48:18, 49:1
Mullgan [42] - 2:1, 9:8, 9:10, 9:20, 10:19, 12:15, 14:1, 14:5, 14:11, 14:18, 15:2, 15:12, 18:9, 18:15, 19:1, 19:21, 21:6, 21:10, 21:24, 24:8, 24:14, 24:20, 25:9, 29:15, 30:9, 30:19, 31:4, 37:11, 37:22, 37:25, 38:16, 39:1, 39:11, 39:14, 40:6, 41:7, 43:9, 43:20, 44:3, 44:4, 45:23, 45:25
MULLIGAN [1] - 2:1
Mulligan's [2] - 11:11, 30:6

## N

N.Y [1] - 1:7
name [7] - 5:2, 11:12, 19:11, 19:18, 24:2, 29:19
NATIONS [1] - 2:14
nature [1] - 26:9
necessary [1] - 45:13
necessity [2] - 3:25, 4:4

need [4] - 4:19, 39:7, 49:5
needed [3] - 14:12, 31:13, 31:16
needs [1] - 43:8
negotiate [1] - 43:21
negotiations [1] - 43:23
never [2] - 9:17, 32:15
NEW [1] - 1:1
new [2] - 38:2, 48:10
New [7] - 1:16, 2:6, 2:11, 2:21
news [1] - 32:10
Ninth [1] - 5:16
nobody [1] - 17:6
Nobody [1] - 4:18
none [1] - 25:23
Northern [1] - 5:18
note [1] - 18:8
nothing [2] - 42:5, 43:17
notice [1] - 13:20
notices [1] - 37:10
number [12] - 3:5, 6:22, 8:16, 8:19, 15:21, 18:14, 18:21, 18:25, 21:5, 25:3, 31:13, 47:5
numerous [2] - 3:23, 12:22

O

oath [1] - 4:19
object [9] - 11:5, 12:5, 23:19, 25:14, 26:23, 28:23, 28:25, 31:22, 32:19
objected [1] - 16:15
Objection [2] - 27:22, 32:3
objection [6] - 14:13, 17:10, 21:13, 29:12, 40:24, 41:1
objections [5] - 18:10, 21:9, 39:8, 40:22, 48:11
obligated [1] - 26:25
obligations [1] - 14:22
obtain [1] - 17:21
Obviously [1] - 43:24
obviously [3] - 38:22, 38:25, 44:10
occasion [1] - 40:8
occurred [2] - 20:21, 35:13
OF [1] - 1:1
offer [4] - 17:8, 28:21, 35:10, 44:2
office [2] - 25:4, 25:6
ON [4] - 3:13, 3:15, 3:17, 3:18
one [37] - 7:9, 11:9, 11:12, 13:19, 14:3, 14:11, 14:16, 15:24, 17:4, 17:24, 18:7, 18:23, 20:4, 21:9, 22:17, 22:18, 25:4, 30:18, 31:5, 31:18, 31:24, 32:16, 39:12, 39:23, 39:24, 41:7, 42:10, 42:11, 42:22, 42:24, 45:21, 46:6, 47:8, 48:1, 48:6
One [1] - 1:15
onerous [1] - 14:15
ones [1] - 24:9
ongoing [1] - 34:20
opinion [4] - 11:22, 13:22, 39:13, 39:14
opportunity [5] - 26:20, 27:21, 29:16,

41:21, 44:8
opposite [1] - 36:16
order [1] - 39:22
own [1] - 40:3
orange [1] - 39:15
outrage [1] - 47:14
other [49] - 3:8, 3:24, 11:13, 12:15, 16:1, 18:10, 20:14, 22:10, 22:14, 24:24, 30:24, 32:13, 32:14, 40:25, 41:9, 42:13, 43:13, 43:22, 44:2, 44:4, 44:6, 44:9, 44:11, 44:18, 44:19, 44:23, 44:25, 45:2, 45:5, 45:10, 45:12, 46:2, 47:9, 47:11, 47:18, 47:19, 47:21, 47:25, 48:1, 48:2, 48:17, 49:4
overed [1] - 24:20
others [12] - 13:23, 24:20, 41:7, 43:12, 43:20, 43:24, 45:8, 45:14, 45:21, 46:22, 47:18, 46:6
otherwise [1] - 17:3
otherwise [1] - 27:19
ought [1] - 11:24
ourselves [1] - 44:18
overruled [4] - 11:6, 25:16, 27:6, 28:3
overruled [1] - 32:3
own [5] - 6:5, 36:25, 40:12, 40:13, 40:14

P

page [4] - 22:1, 28:16, 39:13, 42:14
pages [4] - 8:16, 9:6, 17:4, 17:7
paid [16] - 15:10, 15:12, 22:20, 22:24, 23:1, 36:25, 42:5, 46:13, 46:16
papers [1] - 17:13
paragraph [3] - 43:25, 44:5, 44:10
paragraphs [1] - 48:10
part [1] - 2:11
particular [4] - 10:23, 17:9, 20:24, 25:6, 27:17, 29:11, 33:12, 43:25
participants [1] - 32:8
participate [1] - 40:16
participated [3] - 9:20, 10:6, 15:3
participates [1] - 40:9
participating [3] - 31:19, 32:8, 40:17
participation [1] - 10:5
particular [5] - 3:23, 6:6, 8:12, 28:18, 41:16
particularly [2] - 13:17, 30:7
parties [7] - 13:17, 37:11, 42:13, 43:4, 45:1, 45:1, 45:4
partner [1] - 6:3
PARTNERS [1] - 1:24
partners [1] - 6:5
partnership's [1] - 26:15
parts [1] - 8:4
party [1] - 48:21
pass [1] - 19:6

Pass [3] - 32:21, 34:2, 35:2
Pause [3] - 16:7, 17:11, 45:19
pay [6] - 29:15, 36:24, 44:14, 45:25, 46:7, 46:17
payment [6] - 20:6, 42:11, 42:22, 42:23, 46:5, 46:11
payments [3] - 42:2, 42:7
pays [2] - 15:5, 40:10
pending [1] - 7:24
Pennsylvania [1] - 1:15
people [11] - 3:5, 7:4, 10:25, 11:3, 13:20, 19:11, 19:18, 22:6, 25:2, 25:3, 25:23
people's [1] - 25:21
PEPPER [1] - 2:5
Percent [1] - 16:19
percent [14] - 9:24, 15:22, 17:2, 20:14, 22:14, 22:17, 22:18, 42:10, 42:11, 42:19, 42:22, 42:24, 46:6
percentage [1] - 39:24
perfectly [1] - 47:6
perhaps [2] - 11:24, 48:7
period [2] - 9:7, 36:11
permit [1] - 29:6
permitting [1] - 43:13
person [3] - 19:4, 28:20, 28:22
personnel [1] - 22:24
persons [1] - 41:22
persuading [1] - 11:19
persuasive [1] - 12:13
Peter [3] - 3:9, 12:20, 33:13
PETER [1] - 2:10
ph [1] - 5:22
phases [1] - 41:12
phone [9] - 3:5, 8:2, 13:3, 17:13, 19:11, 32:24, 35:4, 39:10, 41:16
PHONE [4] - 3:13, 3:15, 3:17, 3:18
Pine [13] - 11:13, 11:21, 11:24, 12:1, 12:3, 24:20, 24:24, 25:2, 25:10, 25:12, 25:19, 26:1, 26:3
pinpoint [3] - 39:12, 39:17, 39:18
placed [1] - 40:5
plaintiff [8] - 11:21, 13:7, 14:5, 14:9, 14:22, 26:10, 26:18, 27:19
plaintiff's [1] - 12:16
plaintiffs [11] - 9:22, 10:5, 10:20, 11:17, 12:7, 12:11, 17:23, 19:21, 35:22, 44:13, 45:23
plaintiffs' [5] - 12:14, 18:2, 19:20, 22:18, 30:8
Plaintiffs' [3] - 10:12, 10:17, 36:14
plan [1] - 43:17
play [1] - 42:2
Plaza [2] - 1:15, 2:21
pleasure [1] - 49:2
Plfs [1] - 2:1
plus [3] - 5:12, 5:13, 8:22
point [13] - 7:9, 12:4, 25:21, 30:9, 31:3, 31:8, 32:14, 37:18, 38:9, 39:1, 39:4,

39:11, 39:15
  points [1] - 45:9
  position [7] - 5:24, 10:16, 12:14, 21:17, 22:2, 22:15, 36:18
  possibility [1] - 32:14
  possible [7] - 18:3, 42:25, 43:16, 45:1, 46:10, 46:14
  post [3] - 20:8, 22:22, 23:7
  post-December [2] - 22:22, 23:7
  post-PSC [1] - 20:8
  potential [1] - 42:1
  potentially [1] - 38:5
  practice [2] - 10:7, 25:19
  practitioners [2] - 6:13, 6:14
  prefer [1] - 48:1
  preferable [1] - 40:3
  prepared [3] - 4:1, 4:5, 19:25
  Present [1] - 2:10
  present [4] - 35:9, 42:18, 43:21, 45:21
  presented [2] - 43:24, 44:6
  presents [1] - 44:11
  pretty [1] - 16:12
  prevailed [1] - 11:10
  previously [2] - 5:19, 25:13
  primarily [1] - 36:21
  privilege [1] - 10:7
  problems [1] - 47:24
  proceed [2] - 4:21, 38:22
  Proceed [2] - 17:20, 23:17
  proceeding [1] - 34:13
  Proceedings [1] - 2:25
  proceedings [6] - 33:6, 33:9, 33:23, 33:24, 34:20, 49:6
  process [8] - 8:21, 11:18, 12:8, 12:11, 13:14, 40:24
  produce [1] - 30:25
  produced [2] - 2:25, 30:9
  product [3] - 12:9, 27:3, 31:20
  PRODUCTS [1] - 1:4
  professional [2] - 43:4, 46:12
  proffered [1] - 44:16
  program [3] - 5:12, 5:13
  prohibit [1] - 34:13
  prompt [1] - 46:10
  properly [1] - 39:6
  proposed [1] - 47:9
  protocol [5] - 20:25, 21:11, 21:12, 21:23, 23:18
  protocols [2] - 21:18, 21:20
  prove [1] - 12:8
  provide [3] - 6:13, 14:7, 18:2
  provided [1] - 16:14
  provision [1] - 27:2
  PSC [105] - 1:15, 3:21, 4:3, 6:25, 7:1, 7:3, 7:4, 7:8, 7:9, 7:10, 7:11, 7:15, 7:16, 7:19, 7:20, 7:23, 8:3, 8:4, 8:5, 8:11, 8:12, 8:13, 8:14, 8:15, 8:22, 8:25, 9:9, 9:11, 9:14, 9:15, 10:2, 10:6, 10:22, 11:10, 12:13, 13:7, 15:7, 15:11, 15:18,

16:16, 16:23, 16:24, 17:1, 17:9, 17:22, 18:1, 18:4, 20:5, 20:6, 20:7, 20:8, 20:16, 20:17, 20:18, 20:22, 20:23, 21:17, 21:23, 22:20, 22:24, 23:18, 23:19, 23:25, 24:10, 24:19, 24:22, 25:6, 25:12, 30:10, 29:13, 29:21, 31:10, 31:12, 31:15, 32:11, 35:8, 35:12, 35:16, 35:17, 35:19, 37:14, 37:19, 37:20, 37:21, 37:23, 37:24, 38:2, 38:5, 39:3, 39:10, 38:20, 40:7, 41:3, 41:7, 41:12, 41:21, 41:23, 43:19, 46:17
  PSCs [2] - 10:25, 23:23
  PSC-4 [1] - 16:22
  published [4] - 6:10, 6:11, 21:8
  purpose [1] - 41:2
  pursuant [2] - 20:3, 20:8, 22:10
  pursued [1] - 11:1
  put [5] - 41:4, 46:16, 48:1, 48:6, 48:17

## Q

  qualify [1] - 31:2
  questions [6] - 3:11, 19:24, 26:4, 32:6, 32:23, 36:7
  quickly [3] - 13:10, 18:3, 46:13
  quote [3] - 9:2, 27:12, 39:15

## R

  raise [1] - 30:22
  raised [4] - 14:19, 18:1, 21:16, 35:11
  raises [1] - 43:9
  rather [1] - 36:23
  rather [1] - 27:4
  rating [1] - 17:13
  RE [1] - 1:3
  react [1] - 16:11
  read [2] - 3:3, 39:15
  realigned [1] - 16:11
  realized [1] - 26:16
  really [5] - 10:1, 17:7, 25:22, 30:11
  realm [1] - 33:14
  reason [1] - 36:17
  really [4] - 7:19, 21:25, 23:23, 28:22
  reargued [1] - 39:7
  reason [3] - 22:23, 29:11, 40:15
  reasonable [3] - 23:21, 26:20, 27:20
  reasserted [1] - 39:7
  receive [3] - 7:7, 26:19, 38:4
  received [6] - 5:14, 18:7, 25:1, 25:2, 30:14, 41:2
  recent [1] - 26:14
  recently [1] - 26:14
  recollection [3] - 32:20, 42:18, 42:21
  recommendation [14] - 3:9, 3:21, 22:10, 27:5, 29:12, 40:22, 45:21, 47:9, 47:12, 47:18, 48:4, 48:16
  record [22] - 4:6, 4:11, 5:2, 8:5, 11:23,

13:16, 14:15, 15:1, 15:16, 15:17, 16:22, 17:9, 18:8, 22:3, 22:9, 22:23, 29:14, 30:3, 38:23, 41:10, 42:20, 48:11
  recorded [1] - 2:25
  records [1] - 23:13
  recover [1] - 38:5
  recovery [1] - 22:19
  recross [1] - 34:3
  RECROSS [1] - 34:6
  RECROSS-EXAMINATION [1] - 34:6
  redirect [1] - 33:2
  REDIRECT [1] - 33:3
  reference [4] - 18:24, 31:3, 31:8
  referring [1] - 16:17
  reframed [1] - 44:25
  regard [3] - 39:9, 39:11, 39:14
  regarding [4] - 24:17, 30:5, 39:4, 48:12
  regardless [1] - 30:17
  regards [12] - 19:25, 20:20, 23:18, 24:8, 30:5, 39:3, 39:21, 40:4, 40:7, 41:1, 43:18, 44:13
  reimburse [1] - 20:23
  reject [2] - 27:21, 29:17
  rejects [1] - 28:20
  related [3] - 3:10, 20:24, 31:20
  relationship [1] - 24:17
  release [1] - 28:11
  relevance [1] - 31:22
  relevancy [1] - 27:22
  remaining [1] - 38:3
  remains [2] - 42:15, 44:23
  remand [6] - 24:10, 24:11, 24:13, 24:15, 42:16, 43:11
  remember [9] - 21:12, 21:14, 25:1, 26:2, 26:3, 26:5, 30:14, 30:16, 34:23
  reminded [1] - 42:13
  remove [1] - 44:21
  removed [5] - 31:9, 33:21, 34:22, 34:24, 40:11
  removing [1] - 44:9
  rephrase [1] - 21:1
  Reporter [1] - 2:20
  reports [2] - 11:17, 21:8
  repository [2] - 39:25, 40:2
  represent [1] - 35:14
  representation [1] - 10:20
  represented [1] - 45:23
  reputation [1] - 32:11
  request [9] - 20:4, 20:9, 33:24, 44:22, 44:23, 48:3, 48:13
  requested [1] - 30:19
  requesting [1] - 18:10
  requests [1] - 14:10
  requires [1] - 12:3
  requiring [2] - 13:20, 14:6
  resolved [2] - 18:19, 19:3
  respect [26] - 7:24, 8:6, 9:12, 10:5, 10:7, 10:18, 10:24, 11:16, 12:9, 12:13,

13:22, 14:5, 15:22, 26:24, 28:10, 29:24,
31:7, 31:25, 34:21, 35:12, 35:21, 35:25,
36:15, 36:18, 42:15, 47:11
**respond** [1] - 14:7
**responding** [2] - 12:15, 12:18
**response** [6] - 4:16, 31:2, 33:1, 39:16,
41:18, 48:23
**responses** [1] - 35:25
**rest** [1] - 48:10
**result** [2] - 10:24, 13:5
**review** [5] - 8:14, 8:18, 23:20, 40:23,
44:9
**reviewed** [3] - 8:16, 23:25, 24:1
**reviewing** [1] - 9:5
**rewrite** [1] - 6:15
**riding** [2] - 40:12, 40:13
**ROBERSON** [24] - 2:2, 11:5, 17:15,
19:9, 19:13, 19:15, 19:20, 24:7, 30:1,
31:24, 32:21, 34:4, 34:7, 35:2, 38:15,
38:21, 43:18, 45:16, 45:20, 46:4, 46:19,
46:23, 48:3, 48:18
**Roberson** [2] - 19:20, 31:7
**Roberson's** [1] - 36:7
**role** [1] - 37:9
**rolling** [1] - 30:24
**RONALD** [1] - 2:17
**ROSENKRANZ** [1] - 2:17
**rough** [1] - 18:3
**route** [1] - 43:16
**Rule** [3] - 27:9, 27:13, 38:25
**rule** [8] - 27:12, 27:14, 28:3, 34:11,
34:16, 34:17, 36:17, 38:8
**ruled** [4] - 36:16, 41:20, 43:25, 44:10
**rules** [5] - 27:12, 27:16, 27:19, 34:12,
41:19
**ruling** [7] - 11:19, 11:20, 38:10, 39:18,
42:15, 48:9
**rulings** [6] - 33:10, 33:13, 33:14, 45:1,
45:3, 45:10

---

## S

**San** [1] - 1:25
**satisfied** [1] - 41:1
**saw** [1] - 41:14
**school** [2] - 5:8, 5:14
**School** [1] - 5:10
**scratch** [2] - 24:24, 25:20
**SEAN** [1] - 2:15
**Second** [3] - 39:17, 39:18, 44:8
**second** [4] - 40:3, 41:1, 45:17, 45:22
**secretary** [1] - 18:4
**secured** [1] - 5:23
**see** [8] - 9:22, 17:14, 22:23, 25:21,
38:9, 45:17, 46:13, 49:2
**seek** [6] - 2:6, 35:12, 43:10, 44:3,
44:17, 45:24
**seeking** [4] - 20:23, 29:14, 34:14, 36:8
**seem** [1] - 37:22

---

**[redacted]** [1] - 7:19
**[redacted]** - 6:16
**[redacted]** [1] - 20:5
**[redacted]** [1] - 28:11
**[redacted]** - 20:8, 25:18
**[redacted]** [1] - 47:25
**[redacted]** [1] - 48:13
**[redacted]** [2] - 7:14, 7:20
**[redacted]** [1] - 5:23
**[redacted]** [1] - 37:13
**[redacted]** - 16:19
**[redacted]** [1] - 9:15, 20:14, 27:5, 28:13,
29:23, 31:10, 31:18, 40:20,
45:22
**[redacted]** [8] - 10:25, 22:4, 27:25, 28:13,
36:19
**[redacted]** [6] - 21:6, 22:3, 22:5, 26:14,
26:2, 36:8, 36:9, 42:9
**[redacted]** [31] - 16:15, 16:16, 18:13,
20:6, 20:24, 21:11, 21:12, 21:18,
26:11, 26:17, 26:18, 26:19,
26:23, 27:18, 27:20, 27:25, 28:4,
28:6, 28:10, 28:19, 28:21, 28:22,
29:4, 29:17, 29:24, 43:23
**[redacted]** [9] - 11:2, 20:21, 21:20,
26:9, 26:24, 27:14, 36:10, 36:14
**[redacted]** [1] - 37:19
**[redacted]** [1] - 42:23
**[SHAUGHNESSY]** [1] - 1:17
**[Shaughnessy]** [2] - 11:15, 36:23
**[redacted]** [3] - 14:9, 14:22, 31:5
**[redacted]** [3] - 14:6, 14:16, 30:8
**[redacted]** [1] - 10:14
**[redacted]** [4] - 6:3, 6:24, 18:5, 32:23
**[redacted]** [1] - 9:25
**[SHAUGHNESSY]** [1] - 49:1
**[redacted]** [1] - 41:13
**[redacted]** [7] - 18:11, 41:6, 41:8, 44:2,
47:17, 48:3, 48:16
**[redacted]** [1] - 16:4
**[redacted]** [1] - 44:17
**[redacted]** [2] - 16:11, 47:10
**[redacted]** [2] - 14:12, 20:10
**[redacted]** [1] - 16:12
**[redacted]** [1] - 39:1
**[redacted]** - 10:9, 25:17, 31:4
**[redacted]** [2] - 7:4, 29:21
**[redacted]** [3] - 14:23, 15:2, 17:7
**[redacted]** [1] - 31:6
**[redacted]** [2] - 5:7, 6:16
**[redacted]** [1] - 5:17
**[redacted]** [1] - 11:21
**[redacted]** [1] - 18:8
**[redacted]** [2] - 10:14, 39:25
**[redacted]** [1] - 13:23
**[redacted]** [2] - 12:1, 23:1
**[redacted]** [1] - 39:10
**[redacted]** [3] - 19:5, 21:1, 47:3
**[redacted]** [1] - 14:1

---

**sounds** [1] - 25:14
**South** [1] - 9:19
**speaking** [2] - 19:12, 19:19
**special** [1] - 3:9
**SPECIAL** [1] - 2:10
**Special** [41] - 3:22, 8:6, 10:19, 12:19,
12:22, 13:3, 13:6, 13:7, 13:8, 13:13,
13:16, 13:19, 14:1, 14:19, 15:5, 15:13,
15:25, 16:13, 17:24, 18:1, 20:3, 20:9,
21:13, 21:15, 22:10, 29:12, 30:6, 30:22,
30:25, 31:11, 31:16, 33:13, 40:22,
40:25, 43:4, 47:9, 47:19, 48:4, 48:7,
48:8, 48:16
**specialize** [2] - 6:6, 6:8
**specific** [10] - 11:17, 12:9, 26:10, 27:7,
27:9, 27:21, 28:15, 28:21, 34:5
**specifically** [1] - 12:8
**speculation** [1] - 28:25
**spent** [3] - 17:5, 23:3, 43:20
**staff** [1] - 8:2
**standards** [1] - 35:24
**stands** [1] - 22:24
**start** [4] - 7:2, 7:6, 13:2, 25:20
**started** [2] - 6:5, 26:5
**state** [16] - 6:13, 11:3, 27:15, 29:14,
32:7, 32:18, 33:6, 33:8, 33:9, 33:10,
33:18, 33:24, 34:12, 34:13, 40:11,
40:12
**State** [1] - 5:2
**statement** [3] - 4:18, 36:20, 40:4
**statements** [2] - 43:15, 44:16
**STATES** [1] - 1:1
**States** [3] - 1:11, 5:17, 12:17
**Steering** [3] - 10:12, 10:17, 36:15
**stenography** [1] - 2:25
**sticks** [1] - 11:12
**still** [1] - 34:23
**stipulate** [1] - 29:22
**stipulation** [1] - 30:1
**stopped** [1] - 20:10
**straight** [1] - 39:2
**Street** [1] - 1:24
**strict** [1] - 27:1
**strike** [1] - 17:17
**subject** [10] - 17:17, 21:11, 21:19,
22:16, 24:9, 28:6, 29:4, 39:21, 44:19,
45:8
**submission** [2] - 18:17, 20:8
**Submit** [1] - 45:12
**submit** [1] - 45:14
**submitted** [2] - 43:19, 44:4
**submitting** [1] - 20:22
**subparts** [1] - 44:5
**substance** [1] - 45:3
**substantial** [5] - 35:20, 36:21, 36:22,
37:3
**substantially** [1] - 36:4
**successful** [2] - 36:15, 37:24
**sufficient** [3] - 22:21, 22:25, 37:4

suggest [1] - 48:8
suggested [3] - 13:2, 43:16, 44:1
Suite [1] - 1:20
summarizing [1] - 17:6
summary [1] - 25:20
supplements [1] - 6:16
supplied [2] - 25:9, 25:11
support [5] - 3:21, 24:11, 27:4, 36:12, 37:2
Support [1] - 16:18
supported [1] - 14:15
supposed [1] - 26:4
surprised [1] - 23:1
sworn [2] - 4:15, 4:18

**T**

table [1] - 41:4
talks [1] - 33:14
tax [1] - 42:25
teaching [2] - 5:13
Telephone [1] - 2:13
telephone [1] - 3:23
ten [3] - 11:12, 13:12, 25:22
tend [1] - 37:5
tendered [3] - 36:3, 36:12, 37:2
tentative [2] - 21:19, 26:16
termed [1] - 43:23
terms [5] - 11:20, 22:11, 29:2, 31:10, 47:14
TERRY [1] - 2:18
testified [2] - 4:24, 32:20
testify [3] - 8:15, 15:14, 31:13
testimony [8] - 4:20, 9:3, 16:6, 20:14, 23:1, 25:15, 31:6, 34:19
Texas [2] - 1:21, 2:2
THE [80] - 2:1, 3:1, 3:2, 3:4, 3:13, 3:15, 3:16, 3:17, 3:18, 3:19, 4:7, 4:10, 4:15, 4:17, 4:22, 11:6, 11:8, 11:23, 12:1, 12:6, 16:4, 16:5, 16:6, 16:8, 16:11, 16:23, 17:10, 17:12, 17:16, 17:19, 19:8, 19:10, 19:18, 22:15, 23:2, 23:6, 23:8, 23:10, 23:12, 23:14, 23:15, 23:16, 23:23, 24:5, 25:16, 27:6, 27:23, 29:5, 29:19, 31:25, 32:3, 32:24, 33:2, 34:3, 35:3, 35:7, 35:8, 37:6, 37:14, 37:16, 38:8, 38:18, 41:16, 41:19, 43:13, 44:21, 45:18, 46:3, 46:5, 46:21, 47:1, 47:4, 47:16, 47:19, 47:21, 47:23, 48:15, 48:19, 48:24, 49:2
theoretically [1] - 29:8
theory [2] - 12:2, 12:7
therefore [1] - 40:24
they've [4] - 9:16, 9:23, 19:3, 43:5
thinking [1] - 28:2
thorough [2] - 8:14, 13:24
thoughtful [2] - 13:23, 13:24
Three [1] - 16:19
three [9] - 15:22, 17:1, 18:6, 20:14,

22:14, 22:17, 29:21, 40:21, 44:5
throughout [4] - 12:17, 12:20, 13:14, 46:?
[1] - 2:16
[2] - 30:13, 31:15
[15] - 3:7, 3:10, 6:19, 7:4, 25:17, 31:3, 34:1, 35:11, 36:23, 43:6, 44:20, 45:10, 48:9, 48:20
's [2] - 16:9, 37:10
er [4] - 31:17, 43:21, 45:4, 48:5
s [3] - 18:22, 18:24, 18:25
[1] - 13:1
y [1] - 3:20
ty [1] - 1:21
[1] - 11:18
[1] - 34:5
[ ] - 6:9, 26:8, 40:18
[1] - 14:24
ing [1] - 5:8
script [2] - 2:25, 30:11
script [1] - 2:25
ury [2] - 15:11, 15:15
[1] - 40:19
[4] - 13:4, 40:8, 41:10, 41:13
[3] - 24:14, 24:19, 32:7
y [1] - 45:13
[ ] - 12:2, 13:4, 29:7, 40:6, 46:21
ing [2] - 36:18, 43:20
[2] - 16:3, 26:20
ing [1] - 39:10
[1] - 2:1
ty [1] - 13:12
ce [1] - 13:14
[12] - 13:9, 14:3, 14:11, 18:6, 21:?, 36:23, 41:7, 43:18, 45:21, 48:4, 48:?, 48:9
o [1] - 32:23
[1] - 32:17
[1] - 39:12

**U**

[1] - 1:7
er [8] - 4:19, 21:20, 23:18, 26:18, 27:11, 29:2, 35:23, 38:24
erstood [1] - 44:12
ertake [1] - 12:11
ertook [1] - 10:3
sputed [3] - 44:13, 45:25, 46:7
er [2] - 30:16, 30:17
ortunately [1] - 16:2
ed [1] - 43:21
TED [1] - 1:1
ted [3] - 1:11, 5:17, 12:17
versity [2] - 5:10, 5:11
note [1] - 9:2
gned [1] - 16:3
[21] - 8:11, 9:7, 9:15, 9:25, 11:23, 15:9, 17:4, 21:14, 22:17, 22:20,

22:24, 30:3, 31:10, 31:24, 39:2, 39:5, 39:21, 40:6, 40:8, 43:10
urgency [1] - 13:12
urgent [2] - 13:10, 13:13
useful [1] - 4:10
utilized [1] - 15:13
utilizing [1] - 31:9

**V**

vacation [1] - 48:14
vague [1] - 28:24
vast [1] - 20:20
vehemently [1] - 41:13
version [1] - 16:3
Via [1] - 2:13
view [3] - 21:15, 23:23, 25:22
violates [1] - 27:1
visualize [1] - 45:10
VOICE [4] - 3:13, 3:15, 3:17, 3:18

**W**

wacky [2] - 12:2, 12:6
waive [2] - 39:9, 41:5
wants [1] - 38:16
week [5] - 13:9, 13:14, 20:22, 21:6, 21:7
weekly [3] - 13:2, 13:5, 13:11
weeks [1] - 18:6
WEINSTEIN [1] - 1:11
Weinstein [2] - 5:20, 33:11
Weinstein's [1] - 33:12
Weiss [9] - 7:5, 7:17, 13:1, 15:9, 29:20, 35:15, 36:22, 37:7, 38:24
WEISS [7] - 1:15, 1:16, 25:14, 29:18, 29:20, 32:19, 37:7
Weiss' [1] - 20:7
whichever [1] - 41:9
WILLIAM [1] - 1:25
William [3] - 4:14, 5:3, 16:18
Wisconsin [3] - 5:6, 5:11
wish [9] - 4:15, 35:4, 37:16, 38:11, 38:12, 38:19, 38:22, 41:17, 48:1
wishes [6] - 3:12, 3:19, 35:9, 37:14, 47:10, 48:21
wishing [1] - 4:18
withdraw [1] - 30:1
Withdraw [1] - 32:21
WITNESS [10] - 12:1, 12:6, 16:5, 16:8, 16:11, 23:2, 23:8, 23:12, 23:15, 35:7
witness [13] - 4:24, 19:7, 29:5, 29:9, 29:13, 32:1, 32:19, 32:22, 32:25, 34:2, 35:2, 35:5, 35:6
witnesses [2] - 35:22, 35:23
Woodin [14] - 3:9, 3:22, 8:6, 10:19, 12:20, 12:23, 13:3, 13:6, 14:19, 15:25, 16:13, 17:25, 18:1, 47:9

**WOODIN** [1] - 2:10
**Woodin's** [7] - 20:4, 20:9, 21:15, 33:13, 33:14, 47:19, 48:4
**workings** [1] - 26:23
**writ** [1] - 43:11

## Y

**year** [7] - 5:15, 5:22, 5:23, 6:5, 6:15, 35:14, 35:19
**yearly** [1] - 6:12
**years** [1] - 6:1
**YORK** [1] - 1:1
**York** [7] - 1:16, 2:6, 2:11, 2:21

## Z

**Zyprexa** [7] - 3:3, 6:20, 6:23, 7:24, 10:24, 33:5, 42:1
**ZYPREXA** [1] - 1:4