```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------x
In re: ZYPREXA PRODUCTS LIABILITY
       LITIGATION
----------------------------------------------------------------x
```

| | |
|---|---|
| **THE STATE OF CONNECTICUT,** | **MEMORANDUM AND ORDER** |
| Plaintiff, | |
| -against- | 04-MD-1596 (JBW) |
|  | 08-CV-955 (JBW) |
| **ELI LILLY & CO.,** | |
| Defendant. | |

```
----------------------------------------------------------------x
```

**ROANNE L. MANN, UNITED STATES MAGISTRATE JUDGE:**

By letter dated October 28, 2008, defendant Eli Lilly & Company ("Lilly") seeks an order "dismissing any claims that are based on prescriptions for which no prescription data has been produced" by plaintiff State of Connecticut ("the State"). See Letter from Anthony Vale, Counsel for Lilly, to the Court (Oct. 28, 2008) ("10/28/08 Def. Letter"), ECF Docket Entry ("D.E") # 114, at 1.[1] The State opposes Lilly's motion, contending that it need not produce prescription claims data for any entity other than the Connecticut Department of Social Services ("DSS"), because its claims for civil penalties under the Connecticut Unfair Trade Practices Act ("CUTPA"), Conn. Gen. Stat. §§ 42-110a *et seq.*, do not require proof of loss. See Letter from David S. Nalven, Counsel for the State, to the Court (Nov. 11, 2008) ("11/11/08 Pl. Letter"), D.E. # 120, at 1-3; Letter from Thomas M. Sobel, Counsel for the State, to the Court (Mar. 23, 2009) ("3/23/09 Pl. Letter"), D.E. #102, at 1.

---

[1] Unless otherwise noted, docket entries refer to those in State of Connecticut v. Eli Lilly & Co., No. 08-CV-955 (JBW) (E.D.N.Y.).

For the reasons that follow, this Court adheres to its prior preclusion orders concerning non-Medicaid State payors. Because Lilly has withdrawn that aspect of its motion to dismiss claims for civil penalties based upon Zyprexa prescriptions paid for by private payors, see Letter from Eric Rothschild, Counsel for Lilly, to the Court (Mar. 24, 2009) ("3/24/09 Def. Letter"), D.E. # 195, at 3 n.17, Lilly's motion for sanctions is denied.

## DISCUSSION

**I. Preclusion of Claims Relating to Non-Medicaid State Payors**

Lilly maintains that this Court's prior Orders preclude the State from pursuing claims related to any State payor for which discovery has not been provided. See 10/28/08 Deft. Letter, at 1. According to Lilly, the State has produced prescription claims data in connection with only (1) fee-for-service Medicaid; (2) ConnPACE (pharmaceutical assistance program for the elderly and disabled); (3) SAGA (pre-Medicaid pharmaceutical assistance program); and (4) CADAP (pharmaceutical assistance program for persons with HIV and AIDS). See id.

On October 1, 2008, this Court ruled that "the claims of those States that have failed to produce data, documents and/or information pertaining to non-Medicaid benefits will be limited to Medicaid benefits." Minute Entry & Order (Oct. 1, 2008), D.E. # 94, at 1. To be clear, that Order precludes the State from seeking any relief, including damages and/or civil penalties, in connection with any non-Medicaid State payors as to which discovery has not been produced.[2] Any doubt as to the meaning of this Court's October 1st Order was resolved

---

[2] The State argues that this Court does not have the authority to impose discovery sanctions in the form of dismissal. See 11/11/08 Pl. Letter, at 4. The State may well be correct, but this Court's October 1st Order did not dismiss any of the State's claims for civil penalties; rather,
(continued…)

during a hearing held on October 15, 2008, in which the Court explained that, consistent with its opinion in a related Zyprexa case brought by the State of West Virginia, Lilly is entitled to database discovery for a number of reasons: to enable it to develop its defenses to claims for civil penalties, and to craft arguments concerning the exercise of the trial court's discretion at the penalty phase. See Tr. of Hearing Held on Oct. 15, 2008, D.E. # 125, at 51-53; see also Memorandum & Order (July 31, 2008), State of West Virginia ex rel. McGraw v. Eli Lilly & Co., No. 06-CV-5826 (JBW) (E.D.N.Y.), D.E. # 69, at 3-4 (concluding that the State of West Virginia's narrowing of its case to include only claims for civil penalties did not render its Medicaid database irrelevant).[3]  This Court recently reaffirmed that ruling in connection with a similar motion filed by Lilly in a related Zyprexa case brought by the State of Montana. See Memorandum & Order (Mar. 9, 2009), State of Montana v. Eli Lilly & Co., No. 07-CV-1933 (JBW) (E.D.N.Y.), D.E. # 116, at 2-3.

The State insists that CUTPA does not require proof of loss, and that the discovery that "Lilly complains has not been produced is [therefore] not material[.]" 11/11/08 Pl. Letter, at

---

[2](…continued)
that order narrowed the class of payors for which the State could seek such penalties, due to the State's failure to comply with this Court's discovery orders. See Fed. R. Civ. P. 37(b)(2)(A)(ii); Walton v. Trans Union, LLC, No. 07-CV-372 (RLY) (WTL), 2008 WL 2038598, at *2 (S.D. Ind. May 12, 2008).  The State had the right to object to this Court's October 1st Order; had it done so, it could have raised the referenced argument, and/or asked Judge Weinstein to review this Court's Order de novo, as opposed to for clear error.  The State, however, failed to raise any objections in a timely manner.

[3] The above-referenced Memorandum & Order in the West Virginia case was affirmed by the Honorable Jack B. Weinstein on September 10, 2008. See Order (Sept. 10, 2008), State of West Virginia ex rel. McGraw v. Eli Lilly & Co., No. 06-CV-5826 (JBW) (E.D.N.Y.), D.E. # 90.

3. CUTPA does, however, "vest the trial court with discretion to award relief and impose penalties as it deems appropriate *under the circumstances of each case*[,]" State v. Cardwell, 718 A.2d 954, 964 (Conn. 1998) (emphasis added), and it is in this connection that discovery relating to treatment decisions, such as pharmacy claims data, is most relevant.

Moreover, the State's assertion that CUTPA does not require proof of loss is not entirely accurate. To be sure, CUTPA does not invariably "require the court to consider, in determining whether to assess a penalty, . . . whether anyone was actually harmed by the unfair or deceptive trade practice." Id. at 965. Nevertheless, before a plaintiff may recover a penalty under CUTPA, a finding must first be made that the defendant employed an unfair or deceptive trade practice. See Con. Gen. Stat. § 42-110*o*(b) ("[I]f the court finds that a person is wilfully using or has wilfully used a method, act or practice prohibited by section 42-110b, the Attorney General, upon petition to the court, may recover, on behalf of the state, a civil penalty of not more than five thousand dollars for each violation."). Courts consider three factors in determining unfairness under CUTPA: (1) whether the practice offends established public policy; (2) whether the practice is immoral, unethical, oppressive, or unscrupulous; and/or (3) whether the practice causes substantial injury. See Willow Springs Condominium Ass'n, Inc. v. Seventh BRT Dev. Corp., 717 A.2d 77, 99-100 (Conn. 1998). See also Fink v. Golenbeck, 680 A.2d 1243, 1260-61 (Conn. 1996) ("A practice may be unfair because of the degree to which it meets one of the criteria or because to a lesser extent it meets all three.") (citations omitted). Significantly, to the extent that the State relies in whole or in part on the third factor – whether the alleged unfair practice causes substantial injury – the State will be required to show that the injury (1) is substantial; (2) is not outweighed by any countervailing

benefits to consumers; and (3) could not reasonably have been avoided. See Williams Ford, Inc. v. Hartford Courant Co., 657 A.2d 212, 228 (Conn. 1995) (citations omitted). Understandably, the State has not disclaimed any intention to rely on this line of argument.

Under these circumstances, one may fairly assume that the State is likely to argue that Lilly's unfair marketing caused it substantial injury, and that a showing of loss (i.e., injury) would then be required; the degree of that loss would thus be highly relevant. In preparing its defense against this extant theory of liability, Lilly is entitled to use pharmacy claims data relating to non-Medicaid State payors to show that any loss sustained by those payors was not substantial. In addition, Lilly is entitled to rely in part on pharmacy claims data in arguing that (1) the benefits of Zyprexa outweigh any injury that resulted from Lilly's alleged unfair marketing of that drug; and/or (2) third-party payors (including non-Medicaid State payors) could have avoided injury by refusing to reimburse or otherwise pay for Zyprexa after the widespread publicity surrounding the Zyprexa Multidistrict Litigation. In this regard, pharmacy claims data relating to non-Medicaid State payors are highly relevant to Lilly's defenses against the State's claims for CUTPA penalties in connection with those payors.

In opposing Lilly's preclusion motion, the State alternatively contends that it does not possess data relating to non-Medicaid State payors, because management of those programs has, in large part, been subcontracted to managed care organizations ("MCOs"). See 11/11/08 Pl. Letter, at 3. Earlier in this litigation, the State represented to Lilly that it was not seeking civil penalties for Zyprexa prescriptions paid for by the MCOs. See Letter from Eric Rothschild, Counsel for Lilly, to the Court (Nov. 21, 2008) ("11/21/08 Def. Letter"), D.E. # 128, Ex. J, at 1 ("In response to your . . . question concerning whether the State of

Connecticut seeks civil penalties associated with Zyprexa prescriptions paid for or reimbursed by [MCOs], the answer is . . . no."). Since making those representations, however, the State's views on this subject have apparently shifted. See 11/11/08 Pl. Letter, at 3. Whatever the State's position, Lilly has cogently demonstrated that the contracts between DSS and the MCOs require the MCOs to maintain claims data and produce it to DSS upon request. See 11/21/08 Def. Letter, at 4-5 & Exs. F, G, H, & I. Having reviewed those contracts, this Court concludes that while data maintained by subcontracting MCOs may not be within the State's possession, they surely are within the State's custody or control. See Fed. R. Civ. P. 34(a)(1); cf. In re Zyprexa Prods. Liab. Litig., 254 F.R.D. 50, 56-58 (E.D.N.Y. 2008) (concluding that the State's authority to obtain Medicaid patient medical records from Medicaid providers rendered those records within the State's control within the meaning of Rule 34 of the Federal Rules of Civil Procedure). The State therefore was capable of producing that data by the court-ordered deadline for doing so.

Finally, the State suggests that Lilly never sought encounter data from the MCOs. See 3/23/09 Pl. Letter, D.E. # 192, at 2. That suggestion, however, is belied by a Status Report, *joined by the State*, in which Lilly claims to have done exactly that. See Joint Status Report (Oct. 10, 2008), D.E. # 99, at 2 ("To the extent that Connecticut is permitted to maintain any claims for any remedies, including statutory remedies, on behalf of other programs, it is Lilly's position that Lilly is entitled to full discovery from those other programs, including claims data. Lilly has requested this discovery, but it has not been produced."). In any event, this Court ordered the State to produce discovery relating to any non-Medicaid State payor as to which it intended to seek civil penalties, and the State failed to do so.

In sum, the rationale for this Court's decisions in the West Virginia and Montana cases applies with equal force to *any* State payor.[4] If the State intended to seek civil penalties in connection with certain non-Medicaid State payors, it should have either (1) produced encounter data for those payors, equivalent to the Medicaid database produced in the case; or (2) timely objected to this Court's October 1st Order.

The State did not file any objections, and the time for doing so has long since passed. Accordingly, this Court adheres to its prior ruling that the State's failure to provide discovery related to certain non-Medicaid State payors within the court-imposed deadline for doing so precludes it from seeking *any* relief in connection with those payors.

**B. Dismissal of Claims Relating to Private Payors**

Originally, in connection with the instant motion, Lilly sought dismissal of "any claims, whether for reimbursement of the price, damages for medical expenses, or civil penalties, for any prescriptions falling outside the[] four [above-mentioned] programs." 10/28/08 Def. Letter, at 1. Lilly now represents that its motion is limited to State payors, without waiving its position that the State cannot seek civil penalties for prescriptions paid for or reimbursed by private payors. See 3/24/09 Def. Letter, at 3 n.17.

To be clear, this Court's October 1st Order was never intended to prevent the State from seeking civil penalties in connection with Zyprexa prescriptions paid for or reimbursed by private payors. See Memorandum & Order (Mar. 9, 2009), State of Montana v. Eli Lilly &

---

[4] Significantly, the State of New Mexico has construed this Court's October 2008 rulings to mean exactly that. See Stipulation of Dismissal (Dec. 2, 2008), State of New Mexico *ex rel.* Madrid v. Eli Lilly & Co., No. 07-CV-1749 (JBW) (E.D.N.Y.), D.E. # 91, at 1.

Co., No. 07-CV-1933 (JBW) (E.D.N.Y.), D.E. # 116, at 3-7. From the outset, the State signaled its intention to seek penalties in connection with Zyprexa prescriptions not paid for by the State. See, e.g., Compl., D.E. # 1, ¶¶ 158-99; Tr. of Hearing Held on Apr. 28, 2008, D.E. # 21, at 20. Therefore, Lilly cannot blame the State for Lilly's failure to timely commence discovery of private payors in Connecticut. And given that discovery pertaining to this category of Zyprexa prescriptions is not within the State's custody, possession, or control, the State is not responsible for producing such discovery. See Fed. R. Civ. P. 34(a)(1).

## CONCLUSION

For all of the foregoing reasons, this Court adheres to its prior rulings concerning preclusion of claims relating to non-Medicaid State payors. Lilly's motion for sanctions is denied.

Any objections to these rulings must be filed with the Honorable Jack B. Weinstein on or before **May 4, 2009**. Failure to file objections in a timely manner may waive a right to appeal the District Court order.

SO ORDERED.

Dated: Brooklyn, New York
April 24, 2009

                                           **ROANNE L. MANN**
                                           **UNITED STATES MAGISTRATE JUDGE**