**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-------------------------------------------------------------x
*In re:* **ZYPREXA PRODUCTS LIABILITY**
           **LITIGATION**
-------------------------------------------------------------x
**THE STATE OF CONNECTICUT**                    **MEMORANDUM**
                                                **AND ORDER**
          **Plaintiff,**
                                                **04-MD-1596 (JBW)**
                                                **08-CV-955 (JBW)**
    **-against-**

**ELI LILLY & CO.,**

          **Defendant.**
-------------------------------------------------------------x

**ROANNE L. MANN, UNITED STATES MAGISTRATE JUDGE:**

By letter dated March 26, 2009, plaintiff State of Connecticut ("the State") seeks an order compelling defendant Eli Lilly & Company ("Lilly") to produce documents in response to the State's Second Set of Requests for Production.[1] See 3/26/09 Pl. Letter, at 1. Lilly opposes the State's motion, contending that the State's requests are overly broad, untimely, and in violation of this Court's prior orders. See Letter from Anthony Vale, Counsel for Lilly, to the Court (Mar. 30, 2009) ("3/30/09 Def. Letter"), D.E. # 200, at 1-2. This Court agrees.

Accordingly, and for the reasons that follow, the State's motion is denied, except to the limited extent described below.

---

[1] The State's Second Set of Requests for Production is attached as Exhibit A to the State's letter dated March 26, 2009. See Letter from Lauren Guth Barnes, Counsel for the State, to the Court (Mar. 26, 2009) ("3/26/09 Pl. Letter"), ECF Docket Entry ("D.E.") # 196, Ex. A. Unless otherwise noted, docket entries refer to those in State of Connecticut v. Eli Lilly & Co., No. 08-CV-955 (JBW) (E.D.N.Y.).

**DISCUSSION**

**I. Requests Outside the Scope of CMO 1**

When discovery commenced in this case, the Court, after extensive briefing and oral argument, entered Case Management Order ("CMO") 1, setting forth the parties' respective discovery obligations. See CMO 1, D.E. # 41. The State is correct that CMO 1 was not intended set absolute limits upon discovery. Nevertheless, CMO 1 did impose certain limitations, which some of the State's document demands blithely ignore.

Specifically, the State has requested (1) documents produced to the United States Department of Justice ("DOJ") and/or the United States Attorney's Office in connection with federal investigations into Lilly's marketing of Zyprexa; and (2) documents reflecting communications between Lilly and the Food and Drug Administration ("FDA") subsequent to the Zyprexa label change in October 2007. See State's Second Set of Requests for Production Nos. 15 & 16. The Court ruled on these issues in CMO 1, and the States' demands fall well outside the scope of what was permitted in the Court's prior ruling. See CMO 1, D.E. # 41, at 2.

Furthermore, with respect to documents relating to the DOJ investigation, this Court on other occasions denied similar requests, both in this case and in a related Zyprexa case brought by the State of West Virginia;[2] the State's pending request is not materially distinguishable

---

[2] See Memorandum & Order (May 4, 2009), D.E. # 211, at 9-10 (denying the State's motion for an order compelling Lilly to produce for deposition, pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure, the Lilly agent or agents most knowledgeable about the scope and extent of discovery produced by Lilly in connection with the DOJ investigation into Lilly's marketing of Zyprexa); Memorandum & Order (Feb. 18, 2009), State of West Virginia

(continued...)

from those requests. And with respect to communications between Lilly and the FDA following the Zyprexa label change in October 2007, this Court has repeatedly limited discovery on that subject to documents dated through October 2007 and/or relating to the October 2007 change.[3] Nevertheless, despite this Court's prior rulings, the State continues to relitigate these issues.

Accordingly, the State's requests for production numbered 15 and 16 are denied. The State, on pain of sanctions, shall refrain from making any further requests of this nature.

The State has also requested Zyprexa-related marketing materials distributed by Lilly to

---

[2](…continued)
ex rel. McGraw v. Eli Lilly & Co., No. 06-CV-5826 (JBW) (E.D.N.Y.), D.E. # 136 (granting Lilly's motion for a protective order precluding West Virginia from deposing, pursuant to Rule 30(b)(6), the Lilly agent or agents most knowledgeable about the terms of a guilty plea that Lilly recently entered into with the United States Attorney's Office for the Eastern District of Pennsylvania), aff'd, Order (Apr. 7, 2009), State of West Virginia ex rel. McGraw v. Eli Lilly & Co., No. 06-CV-5826 (JBW) (E.D.N.Y.), D.E. # 153; Memorandum & Order (Feb. 2, 2009), State of West Virginia ex rel. McGraw v. Eli Lilly & Co., No. 06-CV-5826 (JBW) (E.D.N.Y.), D.E. # 128 (denying West Virginia's motion to compel Lilly to respond to interrogatories and document demands related to the DOJ investigation and Lilly's guilty plea); CMO 1, D.E. # 41, at 2 ("Lilly is not required to produce to the States documents simply because such documents were made available to the [DOJ] . . . .").

[3] See Tr. of Hearing Held on Sept. 16, 2008, at 24 ("This issue was in fact addressed at the June 13 hearing and at that time, the ruling was that [Lilly] would produce documents up until the [October 2007] label change and any additional ones to the extent that they were produced in prior litigation . . . . [Lilly was] not obligated otherwise to produce post-October 200[7] documents relating to the previous label change."); CMO 1, D.E. # 41, at 2 ("In response to a request by a State for documents of a type previously produced, Lilly must supplement its MDL production with post-2004 documents *through October 2007*.") (emphasis added); id. ("Lilly will produce all communications with the FDA regarding the October 2007 label change."). Also cf. Memorandum & Order (Jan. 23, 2009), D.E. # 166, at 7 (limiting production of documents in the possession of Lilly sales representatives to documents dated through October 2007); CMO 1, D.E. # 41, at 1 (limiting production of call notes to notes dated through October 2007).

the United States Department of Health and Human Services ("HHS"). See State's Second Set of Requests for Production No. 4. In the State's view, "Lilly documents acknowledge that influencing one governmental or public payor program affects many others." Letter from Thomas M. Sobol, Counsel for the State, to the Court (Mar. 31, 2009) ("3/31/09 Pl. Letter"), D.E. # 204, Ex. A, at 3. Following that logic, however, the State would be entitled to discover not only marketing materials distributed to HHS, but marketing materials distributed to analogous agencies in all 50 states.

The State made a similar request, nearly one year ago, prior to the entry of CMO 1. See State's Proposed CMO 1 (May 9, 2008), D.E. # 18, at 4 (requesting "[a]ll documents concerning communications with *any* government offices . . . .") (emphasis added). As is apparent from CMO 1, the Court, having balanced the interests, rejected that request. See CMO 1, D.E # 41, at 1 ("Lilly shall expeditiously identify and produce documents . . . that reflect interactions with the P[harmacy] &T[herapeutics] Committee and/or the State's Medicaid agency."). Moreover, the State has already obtained exhaustive discovery on this issue, including call notes and other documents in the possession of Lilly sales representatives, depositions of those representatives, P&T Committee related discovery, and marketing materials directed towards the State – all on top of the millions of pages of documents already produced by Lilly in connection with the Zyprexa MDL.

This case concerns Lilly's alleged illegal marketing activities directed towards agencies of the State of Connecticut, not agencies of the United States. Accordingly, the State's request for production numbered 4 is denied.

**II. Requests Related to Lilly Sales Representatives**

Two of the State's requests seek documents relating to Lilly sales representatives. See Second Set of Requests for Production Nos. 6 & 10. Like the requests discussed above, these requests largely exceed the scope of that permitted by this Court's prior rulings.

Discovery of Lilly sales representatives has been limited to call notes, depositions, and Zyprexa-related documents in the possession of the sales representatives noticed for deposition. See Memorandum & Order (Jan. 23, 2009), D.E. # 166, at 4-7; Minute Entry & Order (Dec. 22, 2008), D.E. # 154, at 3; Memorandum & Order (Dec. 9, 2008), D.E. # 140, at 1-2; CMO 1, D.E. # 41, at 1-2. To the extent that, as the State claims, Lilly "never searched the files of the fourteen sales representatives originally selected by the State for deposition in this case[,]"[4] 3/31/09 Pl. Letter, Ex. A, at 4, Lilly is directed to do so forthwith and produce responsive documents. Other than those documents, additional documentary discovery relating to Lilly sales representatives is not warranted at this late date. See Fed. R. Civ. P. 26(b)(2)(C)(i)-(ii) (directing courts to limit the frequency or extent of discovery where, as here, the discovery sought is unreasonably cumulative or duplicative and could have been obtained at an earlier date). Accordingly, the State's requests for production numbered 6 and 10 are denied, except to the limited extent indicated above.

**III. Remaining Requests**

The remaining requests in the State's Second Set of Requests for Production are

---

[4] The State is reminded that the Court authorized *nine* sales representative depositions. See Memorandum & Order (Jan. 23, 2009), D.E # 166, at 6-7; Memorandum & Order (Dec. 9, 2008), D.E. # 140, at 2.

duplicative of, and in some cases literally identical to, requests made in the State's First Set of Requests for Production,[5] which was served on June 27, 2008, nearly one year ago. Compare Second Set of Requests for Production 1,[6] 2, 3, 5, 8, 9-13,[7] 14, 16 and 17, with First Set of Requests for Production 1, 5, 6, 8, 9, 10, 16, 20, and 22. Lilly represents that, in an attempt to compromise, it asked the State to narrow those requests, but that the State refused to do so. See 3/30/09 Def. Letter, at 2. The State counters that it provided Lilly with examples of responsive documents, and characterizes the requests in its Second Set of Requests for Production as "*slightly* broadened" yet "targeted," see 3/26/09 Pl. Letter, at 3 (emphasis added) – a characterization that is belied by the exhaustive scope of those requests.[8]

The State had ample opportunity to review Lilly's production in response to its First Set of Requests for Production, but instead waited until near the end of fact discovery to raise its objections with both Lilly and the Court. Notably, the State's Second Set of Requests for Production expressly identifies few, if any, categories of documents that Lilly failed to produce in response to the State's First Set of Requests for Production. To be sure, the State, in its

---

[5] The State's First Set of Requests for Production is attached as Exhibit G to Lilly's letter dated March 30, 2009. See 3/30/09 Def. Letter, Ex. G.

[6] The State has now substantially broadened its first demand, and seeks all communications between Lilly and State representatives, and not just those involving employees of the State's Medicaid agencies.

[7] The language employed by the State in its Second Set of Requests for Production makes clear that requests numbered 10, 11, 12, and 13 are in fact subcategories of request numbered 9 in that document.

[8] The State's citation to examples of the kind of information that it was demanding, see 3/31/09 Pl. Letter, at 1; 3/26/09 Pl. Letter, at 3, was not the functional equivalent of offering to narrow the scope of its demands.

reply to Lilly's letter in opposition, has now narrowed a handful of requests – in "proposed orders" relegated to a column in an attached chart, which identifies specific unproduced documents that the State believes are responsive.[9] See 3/31/09 Pl. Letter, Ex. A. As the State had not previously served Lilly with those narrowed requests, it did not satisfy its obligation to meet and confer in good faith with opposing counsel on this issue. Furthermore, as the Court does not allow sur-replies, see Order (Mar. 9, 2009), D.E. # 177, Lilly has not had an opportunity to be heard on those issues.

The time for making such broad discovery demands has long since passed. If the State was dissatisfied with Lilly's response to its First Set of Requests for Production, it should have sought supplementation from Lilly (in the form of targeted demands) or relief from this Court at an earlier date.[10] See Fed. R. Civ. P. 26(b)(2)(C)(ii) ("[T]he court must limit the frequency or extent of discovery otherwise allowed by these rules or by local rules if it determines that . . . the party seeking discovery has had ample opportunity to obtain the information by discovery in the action[.]"); FLOORgraphics, Inc. v. News Am. Mktg. In-Store Servs., Inc.,

---

[9] To take an example, request numbered 1 in the State's Second Set of Requests for Production seeks "[a]ll communications between Lilly and employees, agents or representatives of the State of Connecticut or its agencies or subdivisions concerning atypical and/or conventional antipsychotics." Second Set of Requests for Production No. 1. In its belatedly proffered proposed order, however, the State requests that this Court order Lilly to produce the custodial files for eight discrete points of contact. See 3/31/09 Pl. Letter, Ex. A, at 1. Had the State presented requests of this nature to Lilly, the parties perhaps could have reached a compromise. And even if compromise proved unattainable, the issue would at least have been properly framed for resolution by this Court.

[10] Significantly, similarly situated State Attorneys General did exactly that. See Tr. of Hearing Held on Oct. 15, 2008, D.E. # 125, at 57-78 (discussing challenges by the States of Louisiana, Mississippi, and Montana to Lilly's post-CMO 1 production).

Civil Action No. 04-3500 (AET), 2007 WL 1613217, at *3 (D.N.J. June 1, 2007) (granting defendants' motion for a protective order where the subpoena issued by plaintiff was duplicative, outside the scope of discovery permitted by court, and issued near the end of fact discovery); Maldonado v. Invensys Bldg. Sys., Inc., No. 01-C-50433, 2004 WL 1080191, at *2 (N.D. Ill. May 13, 2004) (denying plaintiff's request for certain documents where defendant had previously responded to a similar request, and plaintiff had "never raised any issue regarding [defendant's] production" despite ample opportunity to do so); see also Rafano v. Patchogue-Medford Sch. Dist., No. 06-CV-5367 (JFB) (ARL), 2009 WL 789440, at *12 (E.D.N.Y. Mar. 20, 2009) (affirming magistrate judge's denial of plaintiff's request to reopen discovery where plaintiff had over a year to conduct discovery, was granted multiple extensions of the discovery period, and failed to explain why the discovery at issue was not sought at an earlier date); Brown v. James, Civil No. 4:CV-03-0631, 2009 WL 743321, at *4 (M.D. Pa. Mar. 18, 2009) (denying *pro se* plaintiff's request for certain documents where plaintiff "had ample opportunity to obtain th[e] information during the long period of discovery that ha[d] ensued in th[e] action."). To quote the court in Maldonado: "This case is in the twilight of discovery. It is now time for the sun to set." 2004 WL 1080191, at *1.

Accordingly, State's remaining requests for production are denied.

## CONCLUSION

For all of the foregoing reasons, the State's motion for a compulsion order is denied, except that Lilly shall forthwith produce the custodial files of those sales representatives that have been or will be produced for deposition.

    **SO ORDERED.**

**Dated:**     **Brooklyn, New York**
               **May 8, 2009**

                          **ROANNE L. MANN**
                          **UNITED STATES MAGISTRATE JUDGE**