**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
---------------------------------------------------------------x
*In re:*  **ZYPREXA PRODUCTS LIABILITY**
        **LITIGATION**
---------------------------------------------------------------x
**THE STATE OF CONNECTICUT**

                **Plaintiff,**

      -against-

**ELI LILLY & CO.,**

                **Defendant.**
---------------------------------------------------------------x

**MEMORANDUM AND ORDER**

**04-MD-1596 (JBW)**
**08-CV-955 (JBW)**

**ROANNE L. MANN, UNITED STATES MAGISTRATE JUDGE:**

      By letter dated May 13, 2009, defendant Eli Lilly & Company ("Lilly") sought an order extending the Zyprexa Multidistrict Litigation ("MDL") protective order, see Case Management Order ("CMO") 3 (Aug. 3, 2004), In re Zyprexa Prods. Liab. Litig., No. 04-MD-1596 (JBW) (E.D.N.Y.), ECF Docket Entry ("D.E.") # 61,[1] to apply to documents produced by, and deposition testimony taken from, non-party Anthem Blue Cross and Blue Shield of Connecticut ("Anthem"). See Letter from Eric Rothschild, Counsel for Lilly, to the Court (May 13, 2009) ("5/13/09 Def. Letter"), D.E. # 216, at 1. Plaintiff the State of Connecticut ("the State") did not object to the entry of a protective order; rather, the State insisted on including additional language in the order, to which Anthem objected. See Letter from Thomas M. Sobol, Counsel for the State, to the Court (May 15, 2009) ("5/15/09 Pl. Letter"), D.E. # 218; Letter from Michael G. Durham, Counsel for Anthem, to the Court

---

[1] Unless otherwise noted, docket entries refer to those in State of Connecticut v. Eli Lilly & Co., No. 08-CV-955 (JBW) (E.D.N.Y.).

(May 18, 2009) ("5/18/09 Anthem Letter"), D.E. #221. In view of the impending fact discovery deadline, on May 18, 2009, this Court entered a protective order similar to CMO 3, and indicated that an opinion would follow; the protective order issued by the Court omits the language advocated by the State. See Order (May 18, 2009), D.E. #224.[2] This opinion sets forth the Court's reasons for rejecting the State's proposed language.

## DISCUSSION

At the outset, the Court notes its displeasure with the manner in which the State delayed the resolution of this dispute by failing to communicate with Lilly. In an attempt to resolve the issue Lilly contacted the State, via email, on both April 23, 2009 and May 1, 2009, see 5/13/09 Def. Letter, at 1-2 & Exs. B-C, but the State responded only to the May 1st email, at which time it requested additional time to consider Lilly's proposed stipulation. See id. Ex. D. Despite the State's offer to disclose its position early the following week, see id., Lilly heard nothing further as of May 13, 2009, when Lilly sought judicial intervention. In the interim the State had, for an entire week, exchanged emails with Anthem – without copying Lilly – in a dispute over how documents produced by Anthem should be retained. See 5/15/09 Pl. Letter, Ex. 2. Significantly, Anthem "repeatedly urged the State to accept Lilly's Stipulation," to which Anthem consented provided the stipulation was so-ordered by the Court. See 5/13/09 Def. Letter, at 2.[3]

---

[2] The May 18th Order also covers documents produced by non-party Health Net of Connecticut. See Order (May 18, 2009).

[3] Anthem understandably objected to the State's insistence that its documents be treated as public records under Connecticut's librarian statutes. See 5/18/09 Anthem Letter, at 1
(continued...)

CMO 3 has been used by various parties, during various phases of the Zyprexa MDL, for over four years. The Honorable Jack B. Weinstein discussed at length both the validity and utility of CMO 3 in connection with earlier phases of the Zyprexa MDL. See In re Zyprexa Injunction, 474 F.Supp.2d 385, 421-23 (E.D.N.Y. 2007). The State nevertheless objected to Lilly's proposed order incorporating CMO 3, on the ground that one provision of CMO 3, which provides for the destruction of Confidential Discovery Materials within ninety days after the final conclusion of the litigation, see CMO 3 ¶ 15, conflicted with the State's document-retention obligations under Connecticut law. See 5/15/09 Pl. Letter, at 1.[4] Specifically, the State, citing a Records Retention Schedule from the Connecticut State Library Public Records Administration, see id., Ex. 3, argued that its librarian statute requires the State Attorney General's Office to maintain all litigation files in that office until after the expiration of any appeal period, and for an additional five years in an approved off-site facility thereafter. See id. at 1-2.[5] According to the State, the "State's policy" on records retention is mandated by

---

[3](…continued)
(arguing that if the State's position was adopted, "the protections afforded [in CMO 3] to confidential third-party documents would be potentially lost following the termination of this lawsuit. Specifically, for five years, Anthem's confidential records would be exposed to being treated as public records under the State Librarian statutes and the State's records retention program, which do not provide for confidential treatment of records.").

[4] The State also raised a premature concern about the possibility that Anthem might overdesignate the documents produced. See 5/15/09 Pl. Letter, at 1.

[5] The statute in question provides, in pertinent part:

    The state librarian may require each such state agency . . . to inventory all books,
(continued…)

-3-

Connecticut law. However, the statutory provision relied on by the State permits but does not require the state librarian to establish retention schedules. Moreover, the referenced statute permits an "agency head to notify the state librarian of any changes in the administrative requirements for the retention of any . . . document subsequent to the approval of retention schedules by the state librarian." Id. Surely, compliance with a federal court order constitutes a permissible "change" in the administrative requirements for retaining litigation documents.

In any event, this Court agrees with Anthem that discovery such as that subpoenaed from Anthem in connection with this litigation is not covered by Connecticut's librarian statute. See 5/18/09 Anthem Letter, at 1. Significantly, the Connecticut Supreme Court has construed the statutory scheme cited by the State to apply only to *public* books, records, papers or documents. See Lieberman v. State Bd. of Labor Relations, 579 A.2d 505, 508 & n.6, 513-14 (Conn. 1990). Documents produced during discovery do not fall into any of these categories. Cf. Joy v. North, 692 F.2d 880, 893 (2d Cir. 1982) ("Protective orders are useful to prevent discovery from being used as a club by threatening disclosure of matters which will never be used at trial. Discovery involves the use of compulsory process to facilitate orderly

---

[5](…continued)
> records, papers and documents under its jurisdiction and to submit to him for approval retention schedules for all such books, records, papers and documents, or he may undertake such inventories and establish such retention schedules, based on the administrative need of retaining such books, records, papers and documents within agency offices or in suitable records centers. Each agency head, and each local official concerned, shall notify the state librarian of any changes in the administrative requirements for the retention of any book, record, paper or document subsequent to the approval of retention schedules by the state librarian.

Conn. Gen. Stat. § 11-8a(b).

preparation for trial, not to educate or titillate the public.").

Accordingly, the Court holds that documents subpoenaed from Anthem in connection with this litigation are not subject to Connecticut's librarian statute. To conclude otherwise would produce an absurd result, and would require the State to retain not only the documents produced by Anthem, but every document relating to this case – including every document produced by Lilly – that has been or is in the possession of the law firm representing the State in this case. In other words, the State's argument contravenes the letter and spirit of CMO 3, which was so-ordered by Judge Weinstein in 2004.

## CONCLUSION

It was for the foregoing reasons that the Court declined to enter a protective order requiring that discovery produced by Anthem be retained in accordance with the State's records retention policies and procedures.

Any objections to this Memorandum and Order and/or to the Court's Order of May 18, 2009, must be filed with Judge Weinstein on or before May 26, 2009.

**SO ORDERED.**

**Dated:**     Brooklyn, New York
              May 20, 2009

                                        **ROANNE L. MANN**
                                        **UNITED STATES MAGISTRATE JUDGE**