UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

IN RE: ZYPREXA
PRODUCTS LIABILITY LITIGATION

THIS DOCUMENT RELATES TO:

ALL ACTIONS

MDL No. 1596

NO.  1:04-MD-01596-JBW-RLM

EXECUTIVE COMMITTEE
MEMBER WILLIAM M. AUDET'S
APPLICATION FOR ISSUANCE OF
AN ORDER TO SHOW CAUSE RE
STATE COURT COMMON BENEFIT
CLAIM OF RICHARD ALEXANDER

## I.     NATURE OF THE REQUEST

Court-appointed member of the Executive Committee of the PSC II, William M. Audet submits this application for an Order to Show Cause.  Since mid-2006, Attorney William M. Audet has faithfully served (and continues to serve) this Court and the MDL litigation in his Court-appointed role as an Executive Committee Member of the Zyprexa Plaintiffs' Steering Committee II.  The vast majority of Mr. Audet's time and expense, dedicated to the Zyprexa MDL Common Benefit work, was incurred after Audet's former partner, Attorney Richard Alexander (hereafter, "Alexander"), unilaterally dissolved the firm of Alexander, Hawes, & Audet, LLP (hereafter, "AHA"), in late December 2006.

Unfortunately, Mr. Alexander notified Audet on August 4, 2010, that he filed a motion to compel discovery in a state court "accounting" case that seeks information relating to Audet's common benefit work for this Court over the past three plus years, with the ultimate goal of "re-allocating" this Court's past and future award of attorneys'

fees.[1]  By application to this Court, Mr. Audet seeks to prevent satellite litigation, enforce this Court's prior fee Orders, and prohibit Alexander from collaterally attacking the Court's prior (and future) rulings in this MDL.

To be clear, Mr. Audet is not requesting that this Court intervene, or in any way rule, on the personal injury fees recovered by Audet & Partners, LLP after Alexander dissolved the firm.  Instead, the sole issue subject to the Application is related to the common benefit work contribution by Audet since dissolution of the firm of AHA.   As this Court has recognized (consistent with the United States Supreme Court's directives), the assessment and allocation in a mass tort arises out of the common benefit doctrine, an equitable concept that recognizes "that persons who obtain the benefit of a lawsuit without contributing to its cost are unjustly enriched at the successful litigant's expenses." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980). *See Mulligan Law Firm v. Zyprexa MDL Plaintiffs' Steering Comm. II (In re Zyprexa Prods. Liab. Litig.)*, 594 F.3d 113 (2d Cir. N.Y. 2010) (Kaplan, Judge)(concurring opinion) (discussion of equity as framework for common benefit doctrine in mass tort cases).   That equity is now subject to attack by Alexander in a state court proceeding.

The present matter does not only concern a state court action over a "partnership" dispute.  In sum, it is an improper effort to override this Court's MDL authority and supervision - akin to an attorney using the state court process to "nullify" the Court's assessment orders.  In fact, Alexander's fee reallocation and declaratory relief claim are an effort to "re-litigate" the Court's past (and future) findings and rulings on fees and

---

[1]  See, *Declaration Of William M. Audet In Support Of Executive Committee Member William M. Audet's Application For An Order To Show Cause Re State Court Common Benefit Claim Of Richard Alexander* ("Audet Decl."), Ex. 1 (Excerpts from Alexander Complaint); Ex. 2 (Excerpts from Alexander's Zyprexa Common Benefit Discovery); Ex. 3 (Excerpts from Audet Objections) and Ex. 4 (Notice of Motion to Compel).

related issues, all of which are subject to this Court's jurisdiction. *Moore v. Permanente Med. Group, Inc.*, 981 F.2d 443, 445 (9th Cir. 1992) ("[I]t is clear that an award of attorney's fees is a collateral matter over which a court normally retains jurisdiction even after being divested of jurisdiction on the merits"); *In re Air Crash Disaster at Florida Everglades*, 549 F.2d 1006 (5th Cir. 1977) ("In a practical sense [the MDL transferee court] was the only tribunal that could effectively handle the fee matter.")

Absent issuance of the requested relief, Alexander's state court Zyprexa common benefit discovery and 'accounting' claim will directly interfere with this Court's jurisdiction by retroactively reallocating attorneys fees awarded to Attorney William Audet by this Court and by seeking to obtain "declaratory relief" that would directly contravene this Court's orders with respect to any prospective attorneys' fee awards in this MDL. In seeking to reallocate funds that this Court awarded to Mr. Audet as a common benefit applicant, Alexander is improperly attempting to circumvent the Court's continuous supervision over the 'res' and collaterally attacking the basis for the award of the funds paid to Audet. With respect to the declaratory claim, Alexander is seeking, in state court, a declaratory ruling that would essentially nullify the Court's future orders. The declaratory claim, along with the pending discovery, directly impacts this Court's supervision and control over the MDL. Accordingly, in view of the direct impact Alexander's claim has on the MDL, this Court needs to issue an Order to Show Cause that protects the Court's ongoing oversight of the MDL.

## II.     HISTORY

### A.     Summary of Audet's Work and Contribution to the Zyprexa MDL

On May 8, 2006, Mr. Audet was appointed by this Court to the Plaintiffs' Steering Committee.  On August 21, 2006, pursuant to this Court's Case Management Order, Mr. Audet was elected to serve on the then three-person Plaintiffs' Executive Committee.  On or about December 29, 2006, without notice to Attorney Audet, Attorney Richard Alexander unilaterally fired all the attorneys and staff working with Attorney Audet in the San Francisco office of Alexander, Hawes & Audet, LLP, which, simultaneously, resulted in the calculated dissolution of the law firm by Alexander.

After the firm was dissolved, Mr. Audet continued his work for the Executive Committee in the Zyprexa MDL under his new firm, Audet & Partners, LLP,[2] and took immediate steps to protect his Zyprexa personal injury clients' interests.  Notably, Mr. Audet re-hired every attorney and staff member that Alexander had previously fired in order to provide uninterrupted legal services to Audet's almost three hundred Zyprexa clients.  He also immediately responded to a host of critical common benefit issues in the Zyprexa MDL litigation.  From a litigation standpoint, the dissolution understandably could not have come at a more inconvenient time for Mr. Audet and his clients, where in early 2007, Audet's Zyprexa cases and three other plaintiffs' firms' cases were placed in a trial pool and the Zyprexa plaintiffs faced an onslaught of critical motions that needed extensive briefing and significant expert work.[3]  As the record reflects, Mr. Audet was the "point person" for the coordination of all the MDL plaintiffs' filings and the ongoing

---

[2]   After the dissolution, the MDL Court issued a revised case management order and updated the firm reference to "Audet & Partners, LLP," in its *Order* of March 2, 2007.

[3]   Ultimately, with the assistance of the Court and the Special Master, Mr. Audet was able to resolve his clients' individual cases by June 2007.

MDL discovery issues, including presenting to the Court Plaintiffs' position on *Daubert* and Summary Judgment motions, Plaintiffs' expert reports and other common benefit issues.

In mid-2007, after resolution of the majority of the then-pending Zyprexa personal injury cases, this Court declined to establish a new PSC II or Executive Committee, but requested that the then current Executive Committee members (including Mr. Audet) continue to perform common benefit work for the remaining (and any later) filed Zyprexa cases.[4]   Since then, Mr. Audet, on behalf of the Plaintiffs' Steering Committee II, has opposed objections to this Court's assessment orders and successfully briefed and personally argued before the Second Circuit (on March 12, 2009) the Mulligan Firm's appeal of this Court's assessment Order.[5]   In addition, Attorney Audet has spent (and continues to spend) countless hours: (i) coordinating discovery for the later filed Zyprexa personal injury cases, (ii) litigating a number of *pro bono* cases and establishing a *pro se* process and (iii) working with this Court and the Special Master regarding a host of common benefit issues.

By early 2010, the Court and the Special Master had issued a number of orders regarding the Court's continuing jurisdiction over the litigation, including establishment and oversight of the application process for reimbursement of common benefit fees and expenses, and creation of an Allocation Committee, with oversight by Special Master Peter Woodin. *See* Order of April 16, 2010.  As has been reported (confidentially) to the

---

[4]  Today, Mr. Audet remains the only active, titled "Executive Committee" Member.

[5]  As a result of Mr. Audet's work, the Second Circuit denied the appeal of the assessment Order (594 F.3d. 113 (2d Cir. 2010)).

Special Master, the Allocation Committee work continues to this day, including final collection and distribution issues, along with other related work.[6]

## B.   Alexander's Belated Complaint and Discovery

Almost three years after Mr. Alexander dissolved AHA, Alexander threatened to file a lawsuit against Audet unless Audet agreed to pay Alexander essentially 50% of the post-dissolution revenue for the personal injury and other cases that Alexander had abandoned years ago.  Audet, who by then had, as the founder and sole supporter for Audet & Partners, LLP, spent millions of dollars in unreimbursed fees in Zyprexa II for common benefit work and expenses, refused to cave in.  On March 13, 2009, Alexander sued Audet and served the complaint, for "an accounting" and declaratory relief in California state court, on Audet during his 50th birthday party at his family home.

In the past few months, Alexander has dramatically expanded his claim for accounting and declaratory relief.  On May 24, 2010, Discovery Referee Charles Dyer issued a verbal ruling at a meet and confer conference that Alexander was required to propound discovery specific to the PSC issue.  In June 2010, Alexander propounded a set of discovery requesting, *inter alia*, the Zyprexa common benefit information (Audet Decl., Ex. 2 (Alexander Discovery)).  Audet timely objected to the requests, noting again that the requests were overbroad, sought confidential information and contained issues which were subject to the Zyprexa MDL Court's jurisdiction.[7] (Audet Decl., Ex. 3 (Audet

---

[6]  Under the Special Master's guidance, the Allocation Committee has, based on individual application by Executive Committee Members, PSC II Members, Liaison counsel and individual common benefit applicants, and after a review of the applicant's time and expense report, partially reimbursed all common benefit applicant based on their respective contribution to the MDL litigation as whole.  *See* Court's Order of April 16, 2010.  As has been reported to the Special Master, based on the current lodestar and expense reports, as compared to the PSC II Escrow Account balance, common benefit applicants, including Mr. Audet, will never be fully reimbursed for their past (or future) common benefit fees and expenses.

[7]  Alexander is well aware of this Court's orders, as he has been closely monitoring this Court's docket and

Objections)).  On August 4, 2010, Alexander filed a motion to compel in state court for this discovery (Audet Decl., Ex. 4), even though Audet has advised Alexander (and the state discovery referee) that, absent Alexander's withdrawal of this discovery, Audet would seek the assistance of this MDL Court by way of the instant application for relief.

At this juncture, with the motion to compel filed by Alexander now looming, and the state claim's potential impact on the MDL litigation, Audet has no choice but to ask this Court to intervene and issue an order that is extremely limited in scope.  Otherwise, Alexander's satellite state court claim and just-filed motion to compel will interfere with Audet's obligations to this Court and the Zyprexa litigation as a whole, and, at the same time, Audet will have to retroactively reallocate, to Alexander, half of the fees awarded by this Court to Audet for his past (and any future) work.

## III.   ARGUMENT

### A.   The Court's Reimbursement for Common Benefit Work is Based on Audet's Contribution to the MDL Court, an Issue That Only This MDL Court is Able to Oversee and Reallocate.

"The Supreme Court...and the Second Circuit have squarely endorsed the proposition that 'where exclusive jurisdiction exists, only the federal courts can provide affirmative relief'" *Alkoff v. Golf*, 611 F. Supp. 63, 65 (S.D.N.Y. 1985).  The  principle of a federal court asserting jurisdiction, even where a state court action might directly interfere, is clear:

> It has long been recognized that when a federal court is properly appealed to in a case over which it has by law jurisdiction, it is its duty to take such jurisdiction.  It has also been considered to be the rule that when a federal court is presented with a case of which it has cognizance it

---

referred a number of Zyprexa personal injury cases to other firms.

> may not turn the matter over for adjudication to the state
> court.

*Movielab, Inc. v. Berkey Photo, Inc.*, 321 F. Supp. 806, 811 (S.D.N.Y. 1970), *aff'd*, 452 F.2d 662 (2d Cir. 1971).

Consequently, a federal court with jurisdiction over a matter is exclusively required to hear any and all claims before it.

In the present action, Audet's compensation for his tireless work under the Executive Committee in the Zyprexa MDL falls squarely within the federal court's exclusive jurisdiction. How much a PSC attorney is compensated is a matter for the MDL Court and any subsequent reallocation of a "common fund" award is ultimately subject to the MDL Court's jurisdiction. *In re Synthroid Marketing Litigation*, 325 F.3d 974, 977 (7th Cir. 2003); *In re Air Crash Disaster at Florida Everglades*, 549 F.2d 1006 (5th Cir. 1977). Moreover, the MDL Court has the power to impose fee limitations and otherwise ensure that (i) excessive fees are not recovered by any attorneys, and (ii) any attorney fee award is consistent with the Court's own review of the attorney's work product. THE MANUAL FOR COMPLEX LITIGATION (4TH) at Section 22.927; *Smiley v. Sincoff*, 958 F.2d 498, 501 (2d Cir. 1992) ("District courts have exercised this power to establish fee structures designed to compensate members for their work on behalf of all plaintiffs involved in consolidated litigation.") *Walitalo* v. *Iacocca,* 968 F.2d 741, 747 (8th Cir. 1992) ("the district court did not err in specifying how the originating trial courts should calculate the amount of lead and liaison counsel's fees in those cases").[8]

---

[8] Furthermore, Alexander's reallocation is without any "rational" relationship to the actual contribution by Mr. Alexander, and as such this court may "refuse to recognize an attorney fee-sharing agreement if it does not provide equitable division of fees in accordance with the Disciplinary Rules or another substantial requirement governing conditions of compensation." *Kronfeld v. TWA*, 129 F.R.D. 598, 612 (S.D.N.Y. 1990).

Consequently, as a result, any attacks or disputes challenging Audet's common benefit work contribution must be litigated before this MDL Court. Alexander, by way of his state court proceeding and recently served discovery, is seeking to directly circumvent this MDL Court's appointment and reimbursement process, and to unilaterally "reallocate" fees earned by Audet over the past three years. Accordingly, as only this Court has the right to reallocate attorneys' fees awarded by this Court to Mr. Audet, the issuance of the requested Order is appropriate.

**B.    Alexander's Discovery Warrants this Court's Intervention**

As Courts have noted, the mere service of discovery in a state court action for an accounting of MDL fees "triggers" the federal court's jurisdiction over a state court fee dispute. *In re Linerboard Antitrust Litig.*, 2008 U.S. Dist. LEXIS 80594 (E.D. Pa 2003) (writ issued). *See also*, *Marino v. Pioneer Edsel Sales*, 349 F.3d 746 (4th Cir. 2003) (writ issued to prevent an attorney from seeking court-awarded attorneys' fees in a state court proceeding).

In *In re Linerboard Antitrust Litig.*, 2008 U.S. Dist. LEXIS 80594 (E.D. Pa. 2008), the MDL court issued a writ to cease state court proceedings related to a common fund award. Similar to this case, a disgruntled attorney with a case in the state court sought information (through interrogatory requests) regarding the fee awarded by the MDL Court to the defendant, as part of the state plaintiff's effort to obtain funds due under a purported "agreement" with the defendant. *Linerboard*, 2008 U.S. Dist. LEXIS 80594 at page 9. The *Linerboard* Court issued a writ, noting that any "re-division" in a state court proceeding on fees, even between two parties, impacted the entire fee structure and the overall supervision by the District Court of the management of the litigation. *Linerboard*, 2008 U.S. Dist. LEXIS 80594 at page 9. ("Accordingly, reinstatement of the

All Writs Act Injunction is appropriate to prevent re-litigation of the overall Linerboard counsel fee allocation in state court and to protect this Court's ongoing jurisdiction over the MDL *res*").

Similarly, in *Marino v. Pioneer Edsel Sales*, 349 F.3d 746 (4th Cir. 2003), the Fourth Circuit, in affirming issuance of a writ by Judge Motz in the *Honda* MDL case, discussed at length the fact that the MDL District Court is the only court with jurisdiction to hear disputes arising out of attorneys' fees associated with common benefit awards. In *Marino*, an attorney at a law firm that had been one of the court-appointed lead law firms in *Honda* filed a lawsuit in state court <u>after</u> the MDL Court had distributed attorneys' fees to the lead counsel. By application of the law firm, the state court proceedings were subject to a writ issued by *Honda* MDL Judge Motz, preventing the attorney in the state court proceedings from seeking to "reallocate" the Court-approved distribution of common benefit attorneys' fees in the *Honda* MDL. In upholding the writ, the Fourth Circuit noted that the claim is "an attorneys' fee dispute arising from the *Honda* class action and therefore it is incumbent upon Judge Motz to resolve the dispute." *Marino* 349 F.3d at 753. As the Fourth Circuit ruled, if the attorneys' fee dispute was allowed to proceed in state court, it would deprive the MDL Court of its jurisdiction, as well as "thwart Judge Motz' ability to manage the *Honda* class action." As the Court noted, "[w]e harbor no doubt that Judge Motz has jurisdiction to decide whether Marino was entitled to any attorneys' fees from Pioneer Honda for work she allegedly performed in the *Honda* class action." [9]

---

[9] Mr. Alexander knows all too well that an MDL Court is in fact the exclusive forum to resolve fee issues related to an MDL fee award:  In 1991, Mr. Alexander's two former partners, Attorneys Mark Rapazzini and Elizabeth Graham, left his predecessor firm, taking with them one client – the class representative in the *In re Honda* MDL.  Alexander waited until a class action settlement was announced and class fees were

In the present case, Alexander's discovery and just-filed motion to compel in state court has triggered the need for this Court's intervention to prevent duplicative and unnecessary satellite litigation.

## C.    Alexander's Declaratory Relief Directly Impacts the MDL

In view of the declaratory claim asserted by Alexander, the Court must issue an order that protects this Court's continuing jurisdiction over the subsequent fee awards. As previously noted, the MDL fee reimbursement process is still in progress:  funds are still due and owing to the PSC II, and the allocation process of the funds in the PSC II account remains ongoing.  Common benefit work by Audet and others continues, and the depository still remains available as required by the Court's prior orders.   Liaison Counsel, the Executive Committee and the Allocation Committee have ongoing, almost weekly, common benefit work that, even if only partially paid due to the lack of full PSC II funding, will be subject to a reimbursement request and, ultimately, a court awarded fee.

Alexander's declaratory claim would essentially 'override' this Court's own rulings and efforts to reimburse Audet for this ongoing work.  Indeed, the existence of the declaratory claim, by itself, is such that Alexander is essentially attempting to contravene the judgment of this Court and the allocation process set in place by this Court. Alexander seeks to improperly collaterally attack the rulings and past, present and future orders of this Court, a form of relief that contravenes this Court's jurisdiction. "[F]ederal courts must hear claims within their exclusive jurisdiction, for otherwise the right alleged would never be fully adjudicated."  *Levy v. Lewis*, 635 F.2d 960, 967 (2d Cir. N.Y. 1980).

---

about to be awarded, and then Alexander filed his own application for attorneys' fees with the MDL Judge handling the *In re Honda* MDL.

*Cf. In re Prudential Insurance Company of America Sales Practice Litigation*, 314 F.3d 99, 105 (3d Cir. 2002) (affirming District Court injunction under All Writs Act where "continued litigation of the claims would 'unsettle' what had thought to be settled").

As this Court itself recognized in this very case, a party such as Alexander cannot use a state court process to evade this Court's rulings. *In re Zyprexa Prods. Liab. Litig.*, 467 F.Sup.2d 256 (E.D.N.Y. 2006); *see also, Marino v. Pioneer Edsel Sales*, 349 F.3d 746 (4th Cir. 2003); *In re Agent Orange Product Liability Litig.*, 818 F.2d 216 (2d. Cir. 1987); *In re Linerboard Antitrust Litig.*, 2008 U.S. Dist. LEXIS 80594 (E.D. Pa 2008). Accordingly, based on the nature of Alexander's declaratory claim, the application should be granted.

## IV.  CONCLUSION

Before this Court is a straightforward application for an Order to Show Cause as to why Attorney Richard Alexander seeks to pursue an MDL common benefit claim in state court.  In accordance with prior Orders of this Court, and the general authority of this MDL Court, Applicant Audet is requesting, to the extent Mr. Alexander believes he has a viable "claim" for common benefit work, that Mr. Alexander apply to this Court for reimbursement.  Unfortunately, absent issuance of an order by this Court, Alexander will continue to seek, in state court, an unfair royalty payment on all past, present and future payments to Executive Committee Member William Audet, and file discovery motions in the state satellite litigation.

Respectfully submitted,

AUDET & PARTNERS, LLP

By: _____
        William M. Audet
        AUDET & PARTNERS, LLP
        221 Main Street, Suite 1460
        San Francisco, CA 94105
        Phone: 415.568.2555
        Fax: 415.568.2556